**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>        Defendant. | Civil Action No. 91-6785 |

**ORDER**

AND NOW, this _____ day of _____, 2011, upon consideration of Defendant CIGNA Worldwide Insurance Company's Motion to Compel Discovery and the responses thereto, it is hereby:

ORDERED that the Motion to Compel Discovery is DENIED;

It is further ORDERED that, pursuant to request by the Notice by the United States, this Court FINDS that the Republic of Liberia is not the real party in interest; and

It is further ORDERED that discovery is stayed for the United States to determine whether, pursuant to 28 U.S.C. § 517, it will submit a statement of interest or a suggestion of immunity.

BY THE COURT:

_____
JOHN P. FULLAM, SENIOR JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION, | Civil Action No. 91-6785 |
| Plaintiff, | |
| v. | |
| CIGNA WORLDWIDE INSURANCE COMPANY, | |
| Defendant. | |

### NON-PARTY RESPONDENTS FODAY SESAY, JOSIE SENESIE, AND SAMUEL M. LOHMAN, ESQUIRE'S JOINT BRIEF IN OPPOSITION TO DEFENDANT CIGNA WORLDWIDE INSURANCE COMPANY'S MOTION TO COMPEL DISCOVERY

Non-party Respondents, Josie Senesie ("Senesie"), Foday L. Sesay ("Sesay"), and Samuel M. Lohman, Esquire ("Lohman") (collectively, "Respondents"), by and through their counsel, hereby jointly respond to Defendant Cigna Worldwide Insurance Company's ("CWW") Motion to Compel Discovery (the "Motion"). Respondents request that this Court deny CWW's Motion for the following reasons:

First, the sole issues which should be addressed by this Court at this time, pursuant to the Notice by the United States, dated January 21, 2011 (the "Notice by U.S.") and the judgment of the United States Court of Appeals for the Third Circuit (the "Third Circuit) dated August 20, 2010 is the capacity in which the Respondents have been sued by CWW, and whether the Republic of Liberia is the real party in interest in these contempt proceedings.

In its Motion, CWW confirms that (i) it has sued the Respondents as individuals acting as or on behalf of the "receivers of the estate of CWW's Liberian Branch", but not as official

representatives of Liberia, and (ii) Liberia is not the party it intended to bring a contempt action against and, thus, is not the real party in interest.[1]

Respondents agree that Liberia is not the real party in interest and that the Respondents have been sued individually in their capacities as representatives of the estate of CWW's Liberian Branch.[2] That being the case, the threshold determination requested by the United States in the Notice by U.S. can be made without dispute, and the Court should issue an Order which (a) states that Liberia is not the real party in interest in the instant contempt proceedings and (b) asks that the United States determine, pursuant to 28 U.S.C. § 517, whether it will submit a statement of interest or suggestion of immunity as to Respondents.

It follows that no discovery is necessary for this Court to answer the questions posed by the United States. Accordingly, consistent with immunity jurisprudence which says that immunity includes immunity from the litigation process itself,[3] all discovery should be stayed pending a final recommendation on immunity by the U.S. Department of State (the "State Department"), and any decision regarding the scope of discovery should accordingly be deferred

---

[1] Indeed, CWW argues that it is the receivership estate and not the Republic of Liberia that would be responsible for any contempt sanctions. See CWW Br. at 7 fn. 1. Regardless, this Court has no power to order contempt sanctions against the Republic of Liberia. See Af-Cap v. Republic of Congo, 462 F.3d 417, 428-29 (5th Cir. 2006) (vacating contempt order against the Republic of Congo because contempt orders are unenforceable against a foreign state under the FSIA). In this sense, the Republic of Liberia is clearly not the real party in interest.

[2] Although it is noted that under Liberian law, only the Commissioner of Insurance can be appointed as the receiver of the insolvent estate of a foreign insurance company. Section 5.13 of the Insurance Law of the Republic of Liberia 1973.

[3] See, e.g., Smith v. Kenny, 678 F.Supp.2d 1093, 1105 (D.N.M. 2009) ("The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"); Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001) (quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)). When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 818-20 (2009). The qualified immunity privilege is "'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " Id. at 200-01 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).)

pending the issuance of such recommendation. A proposed form of order reflecting this approach is attached hereto.

Second, assuming *arguendo* that the Court were to allow any discovery to proceed, CWW's discovery by its own admission goes to the merits of its complaint and is not narrowly limited to the questions of (i) in what capacity were Respondents sued; and (ii) whether Liberia is the real party in interest. Simply stated, CWW's discovery requests are both premature and grossly overbroad, in that they seek information and documents outside the issues identified for discovery by the Third Circuit, namely the questions of common-law immunity, real party in interest, and potential immunity for Liberia. Instead, the discovery requests are designed to identify as many people or entities as possible to be targeted by CWW (as a stalking horse for ACE Limited) for alleged contempt. [4] Third, the discovery is also overbroad because it seeks information and documents specifically identified as related to litigations and other matters that have no relation to the Anti-Suit Injunction.

Finally, as to Mr. Lohman, the discovery requests directed to him run afoul of Swiss law, including Swiss criminal law. As such, Mr. Lohman would be at risk of facing criminal sanctions in Switzerland if he were to respond to CWW's discovery requests, and there is no basis for this Court to require Mr. Lohman to face such sanctions.

## I. <u>RELEVANT BACKGROUND</u>

On January 12, 2009, this Court issued an Order concluding that it had personal jurisdiction over Mr. Lohman, an attorney working out of Switzerland, as well as for Mr. Lohman's client, the Commissioner of Insurance for the Republic of Liberia and Court-

---

[4]       CWW, by bringing these contempt proceedings, is itself acting in willful defiance of the order of the Liberian Civil Law Court dated April 24, 2007 which appointed Mr. Senesie as Receiver of the estate of the Liberian branch of CWW. The order provides, in relevant part: "THIS COURT ORDERS that no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court."

Appointed Receiver for the Liberian Branch of CIGNA, who, at that time, was Mr. Senesie.  In addition, this Court also concluded, on the assumption that the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1601, *et seq.* ("FSIA") applies to individuals (which assumption has subsequently been negated by the Supreme Court in <u>Samantar v. Yousuf</u>, --- U.S. ---, 130 S. Ct. 2278 (2010), discussed below), that the activities of Mr. Lohman and Mr. Senesie constituted commercial activity.  As a result, this Court held that the actions of Mr. Senesie and Mr. Lohman were not entitled to protection under the FSIA due to their commercial activity.

Following this decision, Mr. Senesie and Mr. Lohman filed an interlocutory appeal.  Oral argument was held on March 9, 2010.  Between the time of the oral argument and the Third Circuit issuing its decision, the United States Supreme Court, in <u>Samantar</u>, held, in relevant part, that the FSIA did not apply to individuals, but that individuals may still be entitled to common law immunity.  130 S. Ct. at 2292.  In addition, the Supreme Court held that in cases where "the foreign state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has 'an interest relating to the subject of the action' . . . the district court may have to dismiss the suit regardless of whether the official is immune or not under the common law." <u>Id.</u>

As a result, on August 20, 2010, the Third Circuit vacated this Court's January 12, 2009 Order and remanded the case for further proceedings to determine if Messrs. Sesay,[5] Senesie, and Lohman are entitled to common law immunity, and whether Liberia is the "real party in interest" and, thus, the case may potentially need to be dismissed under the FSIA.  <u>The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co.</u>, 391 Fed. Appx. 173, 179-80 (2010).  The purpose of the remand was to "permit the parties to make the related arguments and

---

[5]      Mr. Sesay succeeded Mr. Senesie as Commissioner of Insurance and the Receiver while this matter was on appeal.

engage in discovery, **if necessary**." Id. at 179 (emphasis added). In addition, this remand would also "allow the Executive Branch to weigh in with its views (if any) on the appellants' claims to common-law immunity." Id. at 179-80.

On September 24, 2010, this Court stayed proceedings for one month in order to allow the State Department time to "weigh in with its views (if any) on the" issue of common-law immunity for Messrs. Sesay, Senesie, and Lohman. After the one month period expired, on October 25, 2010, CWW served the far-reaching discovery requests at issue. In addition to the discovery requests, CWW served deposition notices to: Mr. Senesie for December 17, 2010; Councillor Thompson Jargba for December 15, 2010; Councillor Oswald Tweh for December 14, 2010; Mr. Sesay for December 16, 2010; and Mr. Lohman for December 13, 2010.[6] The discovery requests and deposition notices are attached to the Affidavit of Richard Bortnick that accompanies the Motion as Exhibit A-1 through A-11.

Prior to the responses being due, this Court, having been informed the State Department was reviewing the common-law immunity issue, extended the date for responses to the discovery requests by two months. As such, the depositions were scheduled for a period during which discovery was suspended. To date, CWW has not issued new deposition notices with dates outside of this suspended period.[7]

On January 21, 2011, the U.S. Department of Justice (the "DOJ") issued its "Notice by the United States." In this Notice, the DOJ requested that this Court make the "threshold determination[] . . . as to the capacity in which the Respondents are being sued and, in

---

[6]     All of these depositions were scheduled for CWW's counsel's office in Philadelphia, despite all of these individuals being overseas and two of the individuals not even being alleged as contemnors by CWW.

[7]     CWW makes a reference that Respondents are in default as to the deposition notices without specifying any relief sought. (Mot. 6) To the extent that the Motion seeks relief related to the depositions, Respondents were not in default and not under any obligation to respond to their depositions since discovery was stayed during the period the depositions were scheduled and CWW has failed to attempt to re-schedule or issue new deposition notices with valid dates.

particular, whether the Republic of Liberia is the real party in interest." (Notice by U.S. (Doc. 230) at 1.) The DOJ concluded that "[o]nce the Court has made a determination as to the real party in interest, the United States will then be in a position to determine whether, pursuant to 28 U.S.C. § 517, to submit a statement of interest or, if appropriate, a suggestion of immunity." (Notice by U.S. at 2.)

On January 24, 2011, Respondents served their individual responses to the discovery requests. The responses to the discovery requests are attached to the Bortnick Affidavit accompanying the Motion as Exhibits B-1 through B-6.

## II. ARGUMENT AS TO ALL RESPONDENTS

### A. In Light Of CWW's Statement That Liberia Is Not The Real Party In Interest, Discovery Is Unnecessary To Conclude This Threshold Determination And This Matter Should Be Sent Back To The Executive Branch For Its Final Determination.

As discussed above, the DOJ stated in the Notice by U.S. that the "threshold determination" which must be made by this Court is "the capacity in which the Respondents are being sued and, in particular, whether the Republic of Liberia is the real party in interest." (Notice by U.S. at 1.) Until this determination is made, the DOJ represented that "the United States is not in a position in this case to determine whether to submit its views on any issues, such as Respondents' immunity." (Notice by U.S. at 1-2.) The DOJ also stated that once this Court has made the threshold determination on whether Liberia is the "real party in interest", "the United States will then be in a position to determine whether, pursuant to 28 U.S.C. § 517, to submit a statement of interest or, if appropriate, a suggestion of immunity." (Notice by U.S. at 2.)

In light of CWW's representations in its Motion, the question of in "what capacity in which the Respondents are being sued and, in particular, whether the Republic of Liberia is the

6

real party in interest" is no longer at issue. In footnote 1 of the Motion, CWW states "the estate of the 'Liberian Branch' of CWW and its creditors, and not the Liberian government, are the real parties in interest." (Mot. 7 n.1.) Similarly, CWW states that "all Respondents are named as contemnors in their individual capacities." (Mot. 8.)[8] CWW does not dispute that, under Liberian law, only the Commissioner of Insurance may be appointed as the receiver of the insolvent branch of a foreign insurance company. Because CWW and the Respondents agree as to the capacity in which the Respondents are being brought before this Court and whether Liberia is a real party in interest, the need for discovery on this threshold determination has been eliminated.[9] Furthermore, Respondents anticipate Liberia will, based upon CWW's representations, make a formal statement, through a Diplomatic Note, that Liberia is not the real party in interest in the present contempt proceeding. Liberia, through this official Diplomatic Note, will also request that the State Department decide the issue of common-law immunity as to Respondents in favor of granting immunity.

This Court can therefore accommodate the DOJ and the state of Liberia, which is obviously very concerned about the outcome of this proceeding, and rule on this threshold determination, and no discovery on the merits of the underlying action should be conducted until the State Department has communicated its position (if any) on the immunity of the

---

[8]      It bears pointing out that Mr. Sesay has not been served and is only involved in this matter as Mr. Senesie's successor in office.

[9]      CWW asserts that the State Department and the Respondents were aware of CWW's position, (Mot. 9), but this statement is contradicted by Respondents' request for such a statement and the request by the DOJ for such clarification. If CWW's position had been made clear previously, Mr. Lohman and the State Department would not have requested clarification. Furthermore, CWW implies that the fact that the State Department asked for such a clarification is not a basis for providing the State Department additional time because it already knew CWW's position, but this argument flies in the face of the fact that Respondents and the DOJ were unsure and sought clarification. CWW's delay in providing a clear position on this threshold determination should not be a basis for depriving the State Department of the time needed to fully analyze the common-law immunity issues involved in this contempt proceeding.

Respondents. As such, this Court should stay all further proceedings in this action until the State Department has had sufficient time in which to consider whether the issuance of a statement of interest or a suggestion of immunity would be appropriate.

Such an approach would also be consistent with the instruction of the Third Circuit in this matter. The Third Circuit specifically stated that remand for further proceedings was necessary to "allow the Executive Branch" an opportunity to "weigh in with its views (if any) on the [Respondents'] claims to common-law immunity." Abi Jaoudi and Azar Trading Corp., 391 Fed. Appx. at179-80. In fact, the Executive Branch has weighed in, by the DOJ asking this Court to answer the threshold questions of the capacity in which the Respondents have been sued by CWW, and whether Liberia is the real party in interest. This Court is now in a position to make the threshold determinations requested by the Executive Branch and stay this matter pending the final analysis by the State Department.

Issuing a stay of discovery and allowing the issue of immunity to be decided prior to any further discovery on the merits of the claim finds support in Abi Jaoudi and Azar Trading Corp. and other precedent. See id. at 179 (stating that the parties should only "engage in discovery, *if necessary*") (emphasis added); In re Mushroom Direct Purchaser Antitrust Litig., 621 F. Supp. 2d 274, 280-81 (E.D. Pa. 2009) (using "phased discovery" to determine questions of immunity before proceeding with full discovery). In light of CWW's admissions that Liberia is not the "real party in interest" and that Respondents are being brought before this Court in their individual and representative capacities, no further discovery should be conducted before the State Department "weighs in" on its position. Therefore, the Motion should be denied, this Court should find that the Respondents have been sued in their individual and representative capacities

and Liberia is not the real party in interest, and discovery should be stayed pending the State Department's communication of its position.

**B.**     **The Doctrine Of Common-Law Sovereign Immunity Offers A Broader Scope Of Protection To Foreign Officials Than The FSIA Offers To Foreign States.**

As the initial issue which must be determined in this action is whether or not the Respondents are immune from suit and discovery under the common law doctrine of foreign sovereign immunity, the Court should note that in most (if not all) instances, the common law provides broader immunity for officials of foreign states alleged to have conducted "commercial activities" than the FSIA offers to the states themselves.  This is because the FSIA focuses on the transaction in question without regard to its purpose, while the common law recognizes that a governmental purpose is a factor in the immunity analysis.  <u>Compare</u> the post-FSIA case of <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 614 (1992) ("because the Act provides that the commercial character of an act is to be determined by reference to its 'nature' rather than its 'purpose,' the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives.  Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.") (citations omitted), <u>with</u> the pre-FSIA case <u>Victory Transport, Inc. v. Comiseria General de Abastecimientos y Transportes</u>, 336 F.2d 354, 359 (2d Cir. 1964) (suggesting that commercial contracts to buy bullets for armed forces or to rent a house for an embassy are acts entitled to immunity).

The FSIA recognizes an exception to the immunity of a foreign state when "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state

elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . . " 28 U.S.C § 1605. But under the Supreme Court's <u>Samantar</u> decision, this exception applies to the state itself, and not to the individual officials and agents of the state.

Courts have also recognized a "commercial activity" exception to the immunity of foreign states under common law. Under the common law "restrictive theory" of foreign sovereign immunity, which was adopted by U.S. courts following the issuance of the "Tate Letter" in 1952,[10] a sovereign state was recognized as immune from suit arising out of its sovereign or public acts (*jure imperii*), but it was not found immune with respect to private acts (*jure gestiones*). See <u>Heaney v. Government of Spain</u>, 445 F.2d 501, 504 (2d Cir. 1971) ("absent waiver (footnote omitted), the only recognized exceptions to the 'restrictive' theory of sovereign immunity appear to involve suits concerning (1) 'commercial activity'. . . and (2) certain actions to obtain possession or to establish an interest in movable or intangible property, or immovable property located in the forum state. ALI, Restatement (Second) of Foreign Relations Law of the United States §§ 65, 68, 69 and comments thereto (1965).").

However, under common law, the "commercial activity" exception to foreign sovereign immunity does not apply to individual officials and agents of the foreign state who acted in furtherance of those "commercial activities," even when the state itself has been found not to be immune from suit for damages arising out of the same activities. The individual officials and agents of the state are personally immune from suit arising out of those "commercial activities" provided that they acted within the scope of their official duties. <u>Greenspan v. Crosbie</u>, 1976 WL 841 (S.D.N.Y. 1976) (State Department recommended that the sellers of government-held

_____

[10]     Letter from Jack B. Tate, Acting Legal Adviser, Department of State, to Acting Attorney General Philip B. Perlman (May 19, 1952), *reprinted in* 26 Dep't of State Bull. 984-985 (1952), and in <u>Alfred Dunhill of London, Inc. v. Cuba</u>, 425 U.S. 682, 711, 96 S.Ct. 1854, 1869, 48 L.Ed.2d 301 (1976) (Appendix 2 to opinion of Justice White).

securities to third parties were entitled to immunity, even though the government itself was not immune, because "although it is alleged that the defendant officials . . . acted in excess of their authority, it is not alleged that these officials acted other than in their official capacities and on behalf of the Province"); see also, Waltier v. Thompson, 189 F. Supp 319 (S.D.N.Y. 1960) (State Department issued a Suggestion of Immunity for a Canadian consular agent who had made false statements to a U.S. citizen "in the course of, or in connection with, his official duties"); cf. Cole v. Heidtman (S.D.N.Y. 1968) (State Department recommended that British West Indies Central Labour Organization and its liaison officer were not entitled to immunity because the actions complained of – arranging and servicing labor agreements - involved private, commercial activities).

### C. Under The Doctrine Of Common Law Sovereign Immunity, The State Department Is The Determiner Of The Immunity Of Individual Foreign Officials.

During the modern era of common-law sovereign foreign immunity, from the adoption of the restrictive theory of sovereign immunity in 1952 to the effective date of the FSIA in 1976, the State Department was responsible for issuing suggestions of immunity for individual officers sued for acts taken on behalf of a foreign state. Samantar, 130 S. Ct. at 2284. Federal courts determined the immunity of a party only if the State Department did not issue any suggestion of immunity. It is likely that the Supreme Court expects that, following the denial of individual immunity under the FSIA as set forth in Samantar, the State Department will again become the arbiter of sovereign immunity as it relates to foreign officials. "We have been given no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determination regarding individual official immunity." Id. at 2291.

The immunity of the foreign sovereign has been held to be absolute under U.S. common law, subject only to the aforementioned exceptions imposed by the restrictive theory, and the

immunity of its agent is qualified only to the extent that the agent is carrying out his official duties. See, e.g., Spalding v. Vilas, 161 U.S. 483, 498 (1896) ("But if he acts, having authority, his conduct cannot be made the basis of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals").[11]

As the Respondents have asserted and confirmed that all of their actions have been taken within the scope of their mandates under the Liberian Insurance Law and as ordered by the Liberian Civil Law Court, the State Department must be provided with the opportunity to issue a statement of interest or a suggestion of immunity before this Court may compel compliance with CWW's discovery requests. It is the State Department – and not this Court – which is responsible for making the initial determination as to whether the Respondents are immune from suit under the common law doctrine of foreign sovereign immunity.

---

[11] Thus, motive is irrelevant to the analysis. For example, in Chuidan v. Philippine Nat's Bank, 912 F.2d 1095 (9th Cir. 1990), the plaintiff argued that the defendant was not acting in an official capacity because he acted out of malice and pursuant to a private arrangement with an enemy of the plaintiff. The Ninth Circuit rejected this argument: "Here, however, while Daza may or may not have acted with an individual *motive*, it is clear that in ordering the payment not be made he purported to act as an official, not as an individual. Indeed, only his authority as a member of the Commission enabled him to prevent the payment. Thus, his actions, far from being "completely outside his government authority," *id.*, were entirely dependent upon it." Id. at 1106 (emphasis in original). "Under Chuidan's view, every otherwise proper sovereign action would be subject to judicial examination to ensure that the acting officer did not derive some personal satisfaction from the commission of his official duty. There is no authority to support such a radical expansion of the exceptions to sovereign immunity. Id. at 1107. "The most Chuidan can allege is that Daza experienced a convergence between his personal interest and his official duty and authority. Such a circumstance does not serve to make his action any less an action of his sovereign. Therefore, we hold that the district court did not err in dismissing the claims against Daza in his individual capacity." Id. While CWW has not claimed and cannot claim that Mr. Sesay has any improper motive, it has suggested it believes that Mr. Senesie has a personal interest in the outcome of the Cayman Island Litigation (despite the fact that Mr. Senesie has twice sworn under oath that he does not have any personal interest in these matters). More fundamentally, however, CWW has never seriously argued that it did not violate Liberian law in the manner in which it ceased doing business in Liberia, that such a violation does not support a court-supervised receivership proceeding under Liberian law, that Mr. Senesie was not obligated by Liberian law to solicit proofs of claims in the receivership, or that Mr. Senesie was not obligated by Liberian law to pursue the Cayman Island Litigation.

**D.    The Discovery Requests Seek Information Far Beyond The Proper Scope Of Discovery On The Question Of Immunity.**

A review of CWW's discovery requests make it abundantly clear that these requests are not an attempt to "seek information relating to the issues identified by the Third Circuit", as CWW argues (Mot. 5), or to resolve the threshold determination posed by the DOJ, but a broad-based strategy to seek information which assists ACE Limited, not CWW, in the Cayman Islands litigation, as well as fabricate yet more parties for CWW to allege should be held in civil contempt by this Court. In fact, CWW itself reveals this very effort by noting that the discovery it seeks includes "the identity of the individuals and/or entities funding and directing the receiver's actions or claiming an interest in any recovery." (Mot. 5.) CWW attempts to justify this discovery by claiming it will reveal "the real parties in interest behind Respondents' actions in the Cayman Islands," (Mot. 5.), which shows CWW's misunderstanding of the threshold determination before this Court. Noticeably absent from CWW's Motion is any case law or reference to the actual discovery requests that justify their position on what discovery should be allowed.

Furthermore, the questions before this Court on remand are the issues raised in <u>Samantar</u> concerning common-law immunity and whether the real party in interest in this contempt proceeding (not in the Caymans Island litigation), is the Republic of Liberia. <u>See</u> <u>Samantar</u>, 130 S. Ct. at 2292 (discussing that individuals not protected by FSIA may still be granted common-law immunity or be entitled to be dismissed from a case where "the foreign state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has 'an interest relating to the subject of the action.'"); <u>Abi Jaoudi and Azar Trading Corp.</u>, 391 Fed. Appx. at179 ("[A] remand is appropriate here to permit the District Court to consider the effect of <u>Samantar</u> in the first instance. This will permit the parties to make the **related arguments**

**and engage in discovery, if necessary**.") (emphasis added).  The issues presently before the

Court do not include identifying <u>other</u> individuals or entities who may have an "interest" in the

Cayman Islands litigation (in which CWW has no interest), but rather whether or not

Respondents are entitled to common-law immunity and whether Liberia is the real party in

interest in the instant action.

None of the discovery requests address either of these two issues.  Instead, the discovery

requests are designed to identify as many people or entities as possible to be targeted by CWW

and ACE for alleged contempt.  The requests further a trial strategy of harassment and

intimidation intended to deprive the Receiver of his ability to enforce a Liberian judgment in the

Cayman Islands court.  By way of example of the overreaching nature of the discovery requests,

here are some of the Interrogatories directed to Mr. Lohman:

> 1.      Identify all persons, natural or otherwise, who have, claim or assert
> any interest, legal or equitable, in; or who have, claim or assert a right to
> any part of a recovery from, any claims of The Abi Jaoudi and Azar
> Trading Corp. ("AJA") against CWW.
>
> 3.      Identify all persons, natural or otherwise, who have, claim or assert
> any interest, legal or equitable, in; or who have, claim or assert a right to
> any part of a recovery from, the action commenced in the Grand Court of
> the Cayman Islands by a Statement of Claim filed by the Receiver against
> ACE Ltd. on July 9, 2008.
>
> 4.      Identify all persons, natural or otherwise, to whom AJA sold,
> assigned, or transferred any right or interest, legal or equitable, in, or a
> right to any part of a recovery from, any claim of AJA against CWW,
> including the AJA Liberian Judgment, and describe the terms of any such
> transaction.
>
> 7.      Identify all persons, natural or otherwise, who own, control, or
> otherwise have any interest, direct or indirect, in CC International Ltd.
>
> 8.      Identify all persons, natural or otherwise, who own, control, or
> otherwise have any interest, direct or indirect, in St. Cleer LLC.

(Mot. Ex A-9 *passim*.)

The other discovery responses include similarly broad requests for documents entirely unrelated to whether Respondents are entitled to common-law immunity or whether Liberia is the "real party in interest." Instead, this discovery is the very epitome of a fishing expedition and CWW's requests entirely avoid the limited issues related to immunity. Therefore, this Motion should be denied.

**E.      CWW's Discovery Requests Include Requests Entirely Unrelated To This Action.**

Even under the ostensible reasoning of CWW that they are entitled to know all parties involved in the alleged contempt of aiding and abetting a violation of the Anti-Suit Injunction, these requests are overbroad. By way of example, Interrogatories 2 and 5 directed to Mr. Senesie and Mr. Sesay; Document Requests 6, 8, and 9 directed to Mr. Senesie and Mr. Sesay; Interrogatories 2, 5, and 6 directed to Mr. Lohman; and Document Requests 1, 2, 4, and 6 directed to Mr. Lohman all seek information or documents related to the "judgment entered August 22, 2005, against CWW and in favor of a group of 22 claimants, by the Court for the Sixth Judicial Circuit, Montserrado County, Liberia." In other words, CWW is not content with just seeking discovery for the claim stemming from the Liberian Judgment that allegedly violated the Anti-Suit Injunction, but also seeks additional discovery related to other judgments which have never, and can never, be alleged to have violated the Anti-Suit Injunction.

These broad requests demonstrate that CWW is not actually seeking to enforce the Anti-Suit Injunction, but is utilizing this Court and the discovery proceedings to undermine litigation in the Caymans Island to which CWW is not a party. Such an abuse of the discovery process is

highly inappropriate[12] and CWW should not be allowed to serve as a stalking horse for ACE Ltd.

Therefore, the Motion should be denied.

## III.    ARGUMENT AS TO MR. LOHMAN ONLY

### A.    Responding To CWW's Discovery Requests Would Require Mr. Lohman To Violate Swiss Law.

In order to respond to CWW's discovery requests, Mr. Lohman would have to violate

Swiss law.  Specifically, two Swiss criminal statutes at are issue.  First, Article 321 (Breach of

Professional Confidentiality) of the Swiss Criminal Code states, in relevant portions:

> 1.      Any person who in his capacity as a member of the . . . lawyer . . . discloses confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession shall be liable to a custodial sentence not exceeding three years or to a monetary penalty.

The Geneva Bar Association provides details as to what constitutes confidential

information.  Article 3 of the Geneva Bar Association Ethical Rules states:

> The lawyer should scrupulously maintain confidentiality attached to everything learned in the exercise of his profession or entrusted to him as counsel.

> The lawyer must not give evidence on a fact learned personally, even from or about the opponent, in the exercise of his profession.

> The lawyer will reveal a secret, at his discretion, following express consent of the client, given freely, or authorization from the Commission of the Bar.

> In the latter case, the lawyer will speak first to the president of the bar who will forward the application to the Commission with notice of the Bar.

> A lawyer shall not request permission for disclosure unless interests of the public or private interests require . . .

> The privilege survives the termination of the mandate, and the divestiture of the lawyer.  It extends to all personnel of the office . . .

---

[12]  *See, e.g.*, <u>U.S. v. Michelle's Lounge</u>, 39 F.3d 684 (7th Cir. 1994), which discusses, in *dicta*, "the potential for abuse of discovery . . . by using discovery obtained in one proceeding in the other." <u>Id</u>. at 701.

Given that Mr. Lohman has obtained all of the information requested in his "professional capacity" as a foreign lawyer with the Geneva Bar of Switzerland, requiring Mr. Lohman to respond would expose him to criminal sanctions unless his clients consent, which they have not, or he receives authorization from the Commission of the Bar, which he has not received

Similarly, Swiss Criminal Code Article 271, paragraph 1, sometimes called a "blocking statute", states, in relevant portion:

> Whoever, without authorization, performs acts on behalf of foreign State concerning matters within the competence of a public authority or public official on Swiss territory,

> * * *

> Whoever aids and abets such acts,

> Shall be sentenced to imprisonment for up to three years or a fine . . .

In Swiss civil proceedings, the collection of evidence, including document production, is a judicial function and, thus, deemed an act "within the competence of a public authority or public official."  As such, Mr. Lohman would run afoul of this section of the Criminal Code as well if her were to respond to CWW's discovery requests.[13]

While it is true that American courts can ignore foreign nondisclosure and similar laws, such as Articles 321 and 271, "American courts should . . . take care to demonstrate special care . . . for any sovereign interest expressed by a foreign state."  <u>Societe Nationale Industrielle Aerospatiale v. United States District Court for the District of Iowa</u>, 482 U.S. 522, 544-546 (1987).  Furthermore, district courts should not simply ignore a legitimate fear of prosecution, but recognize that "it is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing

---

[13]     CWW could have avoided this "Blocking Statute" by following the Hague Convention.  As with service, CWW flaunts the accepted international protocols and simply seeks to utilize this Court and its contempt power to circumvent those rules.

compliance are those of a foreign sovereign." Societe Internationale Pour Participations v.

Rogers, 357 U.S. 197, 211 (1958); see also In re Sealed Case, 825 F.2d 494, 498-99 (D.C. Cir.

1987) ("We have little doubt, for example, that our government and our people would be

affronted if a foreign court tried to compel someone to violate our laws within our borders. The

legal expression of this widespread sentiment is found in basic principles of international

comity.")

　　　　Recognizing that deference to foreign nations and abiding by basic principles of

international comity is important, the United States Supreme Court concluded that several factors

are relevant in determining whether a trial court should require discovery in defiance of a foreign

law:

> (1) the importance to the . . . litigation of the documents or other
> information requested; (2) the degree of specificity of the request; (3)
> whether the information originated in the United States; (4) the availability
> of alternative means of securing the information; and (5) the extent to
> which noncompliance with the request would undermine important
> interests of the United States, or compliance with the requests would
> undermine important interests of the state where the information is
> located.

Aeropspatiale, 482 U.S. at 544 n.8 (quoting what is now Restatement (Third) of Foreign

Relations § 442(1)(c) (1987)); see also Devon Robotics v. Gaspar Deviedma, 2010 U.S. Dist.

LEXIS 108573, at *11 (E.D. Pa. Oct. 8, 2010) (quoting the same language).

　　　　A review of these factors show they weigh heavily against requiring Mr. Lohman to

produce any documents. First, the information and documents requested do not pertain to the

actual determination of whether Mr. Lohman should be held in contempt, but support CWW's

attempt to find additional parties to bring before this Court. Such requests have very little

importance and are, at best, tangential to the issues of common law immunity before this Court.

The disproportion between the relevance of the information sought by CWW in this action and

the criminal penalty which would be triggered by Mr. Lohman's compliance with CWW's document production requests is especially manifest.

Second, the discovery requests are incredibly broad and lack any degree of specificity. In fact, as discussed above in subsection II.E, CWW seeks confidential information related to attempts to enforce judgments that have not even been alleged to have violated the Anti-Suit Injunction, which is the sole reason we are before this Court.

Third, none of the information requested originated in the United States. All of the transactions involved occurred overseas and Mr. Lohman himself practices in Switzerland, not the United States. Furthermore, the ultimate alleged contemptuous act, the litigation in the Cayman Islands, is also outside of the United States.

Fourth, to the extent CWW is entitled to any of the information and documents requested, which Mr. Lohman disputes, CWW can obtain these documents through other means, including the 1970 Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("HC70"). If compelled to produce, Mr. Lohman would likely only be providing duplicative information and exposing himself to criminal sanctions.

Fifth, and finally, the need to protect confidentiality of communications with attorneys and the attorneys work product is an important interest in both Switzerland and the United States. Under Swiss law, the wide scope of pre-trial discovery which is lawful under Federal civil procedure, Fed. R. Civ. P. 26(b)(1), would likely be characterized as an impermissible "*fishing expedition*," see Hickman v. Taylor, 329 U.S. 495, 507 (1947). As such, the important interests of both relevant nations favor denying the requested discovery and the Motion should be denied.

## IV.    CONCLUSION

For the foregoing reasons, CWW's Motion should be denied, this Court should issue an

Order in the form provided finding that Liberia is not the real party in interest in this contempt

proceeding, and staying the matter pending the Executive Branch's determination of common-

law immunity.

Dated: March 2, 2011

Respectfully submitted,

/s/ William H. Pillsbury_____    /s/ Henry F. Reichner_____
Mark E. Gottlieb, Esquire    Henry F. Reichner, Esquire
William H. Pillsbury, Esquire    REED SMITH LLP
OFFIT KURMAN, P.A.    500 One Liberty Place
1801 Market Street    1650 Market Street
Suite 2300    Philadelphia, PA  19103-7301
Philadelphia, PA  19103    215-851-8100
267-338-1321    215-851-1420 (facsimile)
267-338-1335 (facsimile)

Paul E. Breene, Esquire
Jennifer D. Katz, Esquire
REED SMITH LLP
599 Lexington Avenue
New York, NY  10022
212-205-6052
212-521-5450 (facsimile)


*Attorneys for Non-Party*    *Attorneys for Non-Parties Foday Sesay and*
*Samuel M. Lohman, Esquire*    *Josie Senesie*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Non-Party Respondents

Foday Sesay, Josie Senesie, and Samuel M. Lohman, Esquire's Joint Brief In Opposition to

Defendant CIGNA Worldwide Insurance Company's Motion to Compel Discovery was filed

electronically, which constitutes service on all parties, and e-mailed on this date to:

> Richard J. Bortnick, Esquire
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA 19103
>
> Donald W. Hawthorne, Esquire
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY 10022
>
> Henry F. Reichner, Esquire
> REED SMITH LLP
> 500 One Liberty Place
> 1650 Market Street
> Philadelphia, PA 19103-7301

Dated: March 2, 2011

> Respectfully submitted,
>
> /s/ William H. Pillsbury
> William H. Pillsbury, Esquire
> OFFIT KURMAN, P.A.
> 1801 Market Street
> Suite 2300
> Philadelphia, PA 19103
> 267-338-1321
> 267-338-1335 (facsimile)
>
> *Attorneys for Non-Party*
> *Samuel M. Lohman, Esquire*