

Stephen A. Cozen
Richard J. Bortnick
COZEN O'CONNOR
1900 Market Street
Philadelphia, Pennsylvania 19103
(215) 665-2000

*Attorneys for Defendant CIGNA Worldwide Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------- X

THE ABI JAOUDI AND AZAR TRADING CORP.,

        Plaintiff,

        -against-

CIGNA WORLDWIDE INS. CO.,

        Defendant.

-------------------------------------------------------------- X

**FILED**

MAR 1 4 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Civil Action No. 91-6785

**MEMORANDUM OF LAW
IN FURTHER SUPPORT
OF MOTION
TO COMPEL DISCOVERY**

## PRELIMINARY STATEMENT

One thing is clear from Respondents' opposition brief: Respondents are desperate to avoid any examination of the facts underlying their claim of common law immunity.

On September 23, 2010, almost six months ago, this Court ordered that discovery proceed in this case without waiting for the State Department to decide whether it might express a view on Respondents' immunity claim. At that time, Respondents vigorously asserted as the basis for that claim that the Republic of Liberia was the real party in interest, having argued to the Court of Appeals that "the underl[y]ing lawsuit here, which seeks to stop the state's claim recovery effort, is the quintessential 'official-capacity' lawsuit – one directed not against the allegedly injury-causing conduct of a state official,

U.S.M.S.
X-RAY

but against the state for authorizing the continued pursuit of that recovery effort . . . ." Appellants' Joint Brief Regarding *Samantar v. Yousef*, dated June 23, 2010. Supplemental Declaration of Richard J. Bortnick ("Bortnick Supp. Decl."), Ex. H, at 4-7. Notwithstanding this Court's ruling, as a courtesy to the State Department, CWW agreed to suspend discovery to afford the Department an opportunity to meet with the parties, receive written submissions, and consider whether it would express a view. The Department has now declined to do so, asking instead that this Court go forward with factfinding relevant to Respondents' immunity claim.

At this point, surely, discovery should proceed. However, rather than cooperate in providing discovery, Respondents do a complete about-face and disavow their contention that Liberia is the real party in interest. Respondents do *not*, however, withdraw their assertion of immunity as a consequence. Remarkably, they instead ask the Court to use *their* reversal of position to disregard the State Department's request that this Court proceed, and instead to stay these proceedings so that they can return to the Department to make immunity arguments that they either made or should have made the first time they were there. (Opp. at 7; Diplomatic Note (Ex. A to Respondents' Supplement)).

The Court should not indulge this kind of gamesmanship. If Respondents are not prepared to withdraw their claim of immunity, CWW should be permitted to proceed promptly with discovery into the facts underlying those claims. Further, CWW is entitled to have this Court and the Court of Appeals consider any claim of common law immunity

by Respondents on a full factual record, to avoid any prospect of yet another round of argument before this Court can turn to the merits of Respondents' contempt.

## ARGUMENT

I.  <u>Respondents' Concession That Liberia Is Not the Real Party in Interest Provides No Reason For the Court To Revisit Its Decision to Allow Discovery to Go Forward</u>

Respondents rest their request for a stay of discovery entirely on the ground that their concession that Liberia is not the real party in interest supposedly justifies deferring discovery until the State Department is given another opportunity to consider their application for common law immunity.  (Opp. at 6-9).  It does not.

*First,* this Court has already rejected Respondents' argument that discovery should be stayed until the State Department decides whether it wishes to submit a statement of interest in response to Respondents' request for a suggestion of common law immunity.  In response to this Court's September 15 Order scheduling a status conference, Respondents argued that "[a]s to common law immunity . . . we suggest that the Court issue a Request for a Statement of Position from the Department of State and await a response before taking any further action."  Letter from Henry F. Reichner (Bortnick Supp. Decl., Ex. I).  This Court instead decided that discovery could commence anytime after October 22, 2010.  Respondents provide no justification for what is in reality an untimely and unfounded request for reargument of the Court's decision that discovery should proceed, without waiting for a statement from the State Department.

*Second,* given that at this point the State Department has already had an opportunity to consider the matter, there is even less reason to stay discovery now than

there was when Respondents first made the request. The State Department remains under no obligation to do anything in response to any application by Respondents, and operates pursuant to no timetable. It may do nothing; it may consider issues but remain silent; or, as it did last time, it may eventually issue a statement that does not offer a conclusive view on any issue and request further fact-finding by the Court. Meanwhile, the Court of Appeals has directed this Court "to consider the effect of *Samantar*" on remand, including the possible availability of common law immunity (the only basis for immunity that Respondents continue to pursue) (Bortnick Decl., Ex. C, at 14); the underlying motion for contempt remains undecided after over two and a half years; and we still do not know all the parties involved in violating Judge O'Neill's Order and contributing to Respondents' contempt.

*Third*, Respondents identify no argument that they now want to make to the State Department that they could not have made previously. It is, after all, *Respondents* who have disavowed their assertion that Liberia is the real party in interest. To state the obvious, Respondents' retreat on the point does not open up new grounds on which they might assert immunity; it forecloses reliance on the principal ground so far asserted. Respondents should not be allowed to further delay discovery just because they want to repeat an argument that the State Department has already heard or put forth an argument that they have just thought of.

*Fourth*, Liberia does not need a stay of discovery against the Respondents – who do not include Liberia, and none of whom any longer claim to be, in effect, Liberia – in order to approach the State Department. As Liberia's Diplomatic Note illustrates (Ex. A

to Respondents' Supplement, the first communication between Liberia and the State Department to which CWW has been privy), Liberia is free to have whatever diplomatic discourse with the State Department it wishes. Meanwhile, the State Department has not asked the Court to postpone decision of any issue, or to defer to the State Department in any respect, and there is no reason why this Court should do so.

*Finally*, Respondents are simply wrong when they contend that "[i]t is the State Department – and not this Court – which is responsible for making the initial determination" whether Respondents are entitled to common law immunity. (Opp. at 11-12). The State Department has no obligation to weigh in on every claim of immunity, and it frequently does not do so. *See, e.g., Heaney v. Spain*, 445 F.2d 501 (2d Cir. 1971) (evaluating common law sovereign immunity claim without receiving the State Department's views); *Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354 (2d Cir. 1964) (same). This Court cannot have an obligation to await the State Department's views when the State Department may never express any.

CWW's motion for contempt has been pending for two and a half years. Because the Court of Appeals chose to forgive Respondents' waiver of their claim of common law immunity after rejecting their reliance on the Foreign Sovereign Immunities Act, (Bortnick Decl., Ex. C at 15-17), the case remains at a preliminary stage, with the prospect of another interlocutory appeal if, as CWW fully expects, the Court rejects Respondents' immunity claim. Discovery to test Respondents' immunity claim should commence promptly.

5

II.   **CWW's Discovery Requests Are Directly Relevant to the Common Law Immunity Issue Raised by Respondents**

Respondents contend that CWW's discovery requests are irrelevant to "whether or not Respondents are entitled to common law immunity." (Opp. at 13-16, 9-11). To the contrary, CWW's discovery requests are directly relevant to the arguments concerning common law immunity that CWW intends to raise with the Court.

CWW contends that Respondents are not entitled to common law immunity because (among other things) (i) commercial receivers, when marshalling the assets of an estate on behalf of private creditors, are *never* entitled to immunity; (ii) Senesie, in particular, performed purely commercial functions that private parties could perform, and hence falls within the commercial exception to common law immunity; and (iii) Senesie was uniquely motivated purely by private commercial interests and private commercial gain, since, beginning with his request for appointment, he has acted only at the behest of private creditors and their counsel, rather than in the service of any good-faith, objective governmental process. In support of the last point, CWW is entitled to discovery in order to determine whether (i) Senesie was in contact with private creditors before seeking his appointment, and only sought appointment as receiver because of their influence and (possibly) promises of future remuneration; (ii) Lohman was responsible for arranging Senesie's participation in the scheme to pursue the Liberian Judgments in violation of Judge O'Neill's Order, and was in contact with Senesie and other contemnors in advance of and after Senesie's appointment; and (iii) private parties (some of whom may be

American citizens) have been orchestrating Senesie's actions from the beginning in an effort to collect on the Liberian Judgments in violation of Judge O'Neill's Order.[1]

CWW believes that it should prevail on these arguments without the benefit of discovery – indeed, given Respondents', and now Liberia's, concession that Liberia is not the real party in interest, it should be clear as a matter of law that Respondents are not immune on any grounds. But to provide a full record in the event of another appeal or a decision by the State Department to review the case, and to lay to rest any possible claim of common law immunity that Respondents may make, CWW also seeks discovery relating to these arguments. CWW has already had to wait over two and a half years since it initiated these contempt proceedings; it would be extraordinarily prejudicial to CWW if it were subject to a further multi-year delay if, in a subsequent appeal, the Court of Appeals were to determine that it was unable to conclusively resolve this matter because the factual record was incomplete in some respect that that Court deemed relevant.

---

[1] Respondents incorrectly claim that the commercial activity exception to common law immunity does not apply to individuals carrying out "official" duties. (Opp. at 9-11). That claim ignores the threshold issue that the receiver of a commercial enterprise is not performing any "official" act in any relevant sense, but merely acting for private creditors. Moreover, individual officials have been denied common law immunity under the commercial activity exception. *See, e.g., Cole v. Heidtman* (S.D.N.Y. 1968) (No. 62), in *Sovereign Immunity Decisions of the Dep't of State, May 1952 to January 1977*, 1977 DIG. U.S. PRAC. INT'L L. 1017, 1062 (M. Sandler, D. Vagts, & B. Ristau eds. 1977). Individual officials engaged in commercial activity have only been granted immunity where parties sought to hold them liable for official acts, there was no claim that they acted on behalf of private interests, and the state itself was available (under the commercial activity exception) to satisfy a claim. *See Greenspan v. Crosbie* (S.D.N.Y. 1976) (No. 97), 1977 DIG. U.S. PRAC. INT'L L. at 1076. None of these factors is present here: CWW seeks to hold Respondents liable as individuals and as representatives of an estate, not as state officials; CWW alleges that Respondents have acted for private interests throughout; and as all parties now agree, Liberia is not the real party in interest.

Accordingly, CWW seeks documents and interrogatory responses from Senesie, Sesay and Lohman as follows, to demonstrate that they have been acting from the start purely at the behest of private interests, that their activities constitute commercial activity, and that they have acted solely in an individual capacity or in the capacity as a representative of the private creditors of CWW's Liberian "branch":

- Communications between Senesie or Sesay and the private parties interested in violating Judge O'Neill's Order before Senesie's appointment as receiver, and between Senesie or Sesay and Lohman at any time. (Sen. Doc. Req. 6, 7; Sesay Doc. Req. 6-7; Loh. Doc. Req. 1).

- The "international arbitration proceedings" initiated by AJA and Lohman's other clients to determine their rights to the claims eventually pursued by Senesie. (Loh. Doc. Req. 5; Loh. Interrog. 9).

- The "investigation" of CWW that, according to Senesie, purportedly led to his appointment as receiver.[2] (Sen. Doc. Req. 1-3; Sesay Doc. Req. 1-3).

- Senesie's appointment as receiver and retention of Lohman (AJA's former counsel) as his attorney. (Sen. Doc. Req. 4; Sesay Doc. Req. 4; Loh. Doc. Req. 3).

- Senesie's and Sesay's actions as receiver of CWW. (Sen. Doc. Req. 5, 8; Sesay Doc. Req. 5, 8; Loh. Doc. Req. 2).

- The ownership of the Liberian claims and who is paying to pursue them, in violation of Judge O'Neill's Order. (Sen. Doc. Req. 9, 10; Sen. Interrog. 1-8; Sesay Doc. Req. 9-10; Sesay Interrog. 1-8; Loh. Doc. Req. 4, 6-7; Loh. Interrog. 1-8, 10).

- Claims brought against CWW by other Liberian claimants represented by Lohman, which were also recognized by Senesie and Sesay as receiver. CWW believes that evidence concerning these purported claims will further illuminate Senesie's and Lohman's scheme. These issues are

---

[2] Contrary to Respondents' suggestion, CWW emphatically disputes that its withdrawal from Liberia, in the midst of a civil war, was improper in any way, or provided any excuse for Senesie's decision, more than fifteen years later and after making contact with Lohman, to seek appointment as CWW's Liberian receiver and recognize claims against its estate.

raised in CWW's discovery requests through the definition of "Liberian Judgments" to include claims brought against CWW by a group of twenty-two Liberian claimants also represented by Lohman.

Bortnick Decl., Ex. A.

CWW has also sought depositions, based on this discovery, of Senesie, Sesay and Lohman, as well as two witnesses who have submitted affidavits on their behalf, Cllrs. Jargba and Tweh, both of whom claim that Respondents' actions were consistent with Liberian law, rather than secured at the behest of private parties violating Judge O'Neill's Order. CWW requests (as reflected in the form of order submitted with this motion) that the Court order Senesie, Sesay, and Lohman to respond to this discovery within 15 days of the Court's entry of this Order, and to provide dates for their depositions, and those of their witnesses, Jargba and Tweh, to be taken within the Eastern District of Pennsylvania not later than 45 days thereafter.

III.  **Lohman, a U.S. Citizen, Should Immediately Be Ordered To Comply With Discovery, Regardless of the Purported Consequences Under Swiss Law**

Respondent Lohman is a U.S. citizen and a member of the Oregon Bar. He is not a Swiss citizen; his clients are not Swiss; the judgment he is seeking to enforce was not rendered by a Swiss court; he is not seeking to enforce the judgment in a Swiss court; and Swiss law does not apply to either the motion for contempt or the action in the Cayman Islands.

In these circumstances, it is simply frivolous for Lohman to argue that he "would have to violate Swiss law" as a ground for being excused from responding to CWW's discovery requests. (Opp. at 16-19). To the contrary, even if all of his wholly unsupported allegations about his status as a member of the Swiss Bar and the content of

9

Swiss law were accepted as true, he still could not use Swiss law to conceal both his own violations of Judge O'Neill's Order and the identities and conduct of others whose violations he is aiding and abetting.

When a party to a U.S. proceeding seeks to be relieved of an obligation to provide discoverable information because the party is prohibited from doing so under foreign law, the District Court must conduct a "balancing test" of the relative interests of the countries involved. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 n.28 (1987) ("*Aerospatiale*"). That test points overwhelmingly in favor of enforcing Lohman's discovery obligation here.

On the one hand, the U.S. interests are fundamental. The U.S. has a "strong interest in enforcing its judgments." *Richmark Corp. v. Timber Falling Consultants*, 959 F. 2d 1468, 1478 (9th Cir. 1992); *see First Nat'l Bank v. Reinhart Vertrieb's AG*, 116 F.R.D. 8, 9 (N.D. Ill. 1986) ("[T]he United States has a vital interest in the integrity of its judicial system"). That interest is especially compelling here, where the underlying judgment was the result of an action affirmatively brought in this Court by the parties who, with their aiders and abettors, are now acting in contempt, and that action occupied some seven years of the judicial resources of the United States, from the District Court to the Court of Appeals to the Supreme Court. The interest is also particularly compelling where the contemptuous acts are committed by a U.S. citizen and member of the Bar of a U.S. state, who, as an officer of the Court, has a professional obligation, as well as a legal one, to comply with lawful U.S. court orders. On the other hand, Switzerland's interests are negligible. As just pointed out, Lohman is not a Swiss citizen; his clients are not

Swiss; the judgment he is seeking to enforce was not rendered by a Swiss court; he is not seeking to enforce the judgment in a Swiss court; and Swiss law does not apply either to the motion for contempt or the Cayman Islands action. As discussed further below, he has not even established that he is licensed to practice in Switzerland.

Lohman concedes that this Court may "ignore foreign disclosure and similar laws." (Opp. at 17). Given the overwhelming interest of U.S. courts in enforcing their judgments, especially in the face of contempt by a U.S. citizen and member of a U.S. Bar, and the absence of any significant Swiss interest, the result of a balancing of the specific *Aerospatiale* factors is foreordained. 482 U.S. at 544 n.28; *see* Opp. at 18-19. The rest of the *Aerospatiale* factors point to the same conclusion: (i) the information requested is directly relevant to the immunity defense that Lohman himself continues to assert; (ii) the requests (as described above) are specifically focused on the matters at issue; and (iii) it is doubtful that there is any alternative means of securing this information, given Lohman's central coordinating role in the efforts to defy Judge O'Neill's Order. Further, Lohman has not even attempted to make a showing that any of the information sought would have originated in Switzerland, as opposed to Liberia or some offshore tax haven or other jurisdiction. Hence, this factor, too, weighs in favor of enforcing CWW's discovery requests.

Unsurprisingly, in circumstances presenting far greater foreign interests than those here, U.S. courts, including courts in this District, have refused to defer to foreign blocking statutes. *See, e.g., U.S. v. First Nat'l City Bank*, 396 F.2d 897 (2d Cir. 1968) (compelling U.S. bank to disclose documents located in Germany despite violation of

German secrecy law); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 2275531, at *4 (E.D. Pa. May 13, 2008) (compelling a Swiss defendant to produce documents despite Swiss blocking statute). Much less should this court defer to Swiss law here, when Lohman has failed to show any remotely pressing Swiss interest.

In short, even accepting Lohman's unsupported allegations as to his status under and the content of Swiss law, his attempt to evade his discovery obligations by recourse to Swiss law should be rejected. But in any event, there is no reason to accept those unsupported allegations.

*First*, so far as can be determined from public sources, Lohman is not a member of any Swiss bar.[3] His Swiss "credentials" appear to amount to nothing more than paying a fee to a Swiss bar association.[4] The only connection between Switzerland and this case is that Lohman, perhaps with an interest in attempting to shield non-Swiss clients from the scrutiny of U.S. courts, has decided to locate his office there. Given his failure to make any showing of his bar status under Swiss law, there is no basis on which this Court might find that the statutes he invokes even apply to him.

*Second*, Lohman does not address whether the Swiss statutes he cites even apply to a "foreign lawyer," much less that they would apply here, where the U.S. interest is so

---

[3] Lohman does not appear in the database of lawyers maintained by the Commission of the Bar of Geneva. Republique et Canton de Genève, Pouvoir Judicaire, Justice et Tribunaux, *at* http://justice.geneve.ch/tdb/avocats (last visited Mar. 9, 2011).

[4] Lohman does appear to be a member of the Geneva Bar Association. But that organization is merely a professional association like the ABA, not a regulated bar entitling members to appear as attorneys in the courts of Switzerland. Lohman's biography on this organization's website states only that he is admitted to practice in Oregon. *Ordre des Avocats de Genève*, *at* https://www.odageneve.ch/dbsearch/fiche.php?id=58&type=E&eid=10438 (last visited Mar. 9, 2011).

overwhelming. He has made no effort to show that Article 321, which governs the confidentiality obligations of lawyers, applies to a non-Swiss lawyer who is not licensed to practice law in Switzerland, or that Section 271, which prohibits persons from taking evidence within Switzerland for foreign proceedings without resort to Swiss process, would prohibit him from *responding* to a discovery request issued from this Court. Indeed, the D.C. Circuit has concluded that Article 271 did *not* prevent a party properly before a U.S. tribunal from complying with its discovery orders. *See In re Sealed Case*, 832 F.2d 1268, 1283 (D.C. Cir. 1987) (overruled on other grounds).

*Third,* Lohman has failed to make even a colorable showing that he is at risk of prosecution under Swiss law in the event that he is ordered by the Court to respond to CWW's pending discovery. *See Devon Robotics v. DeViedma*, No. 09-cv-3552, 2010 WL 3985877, at *6 (E.D. Pa. Oct. 8, 2010) (ordering disclosure where respondent "makes nothing more than a blanket assertion that any disclosure could violate Italian law"). A party to a US litigation seeking to invoke the protection of a foreign blocking statute must submit evidence as to "how frequently the law is enforced and what, if any, penalties have been imposed for its violation." *Id.* Again, Lohman has not so much as attempted to make the requisite showing. He does not point to a single instance in which a non-Swiss attorney has ever been penalized under Swiss law for responding to a foreign document request from the courts of his own country. While Lohman should be compelled to respond to CWW's pending discovery requests even in the face of a credible risk of Swiss retribution, he has failed to establish that such a risk exists.

*Finally*, Lohman states that he could provide the requested discovery if he received permission from "the Commission of the Bar" to do so, but that "he has not received that permission." Opp. at 17. Yet he does not suggest that he has made a good-faith attempt to secure such permission. His failure to do so in the six months that discovery has been pending provides further basis for discounting any purported Swiss law consequences of responding to this Court's Orders. *U.S. v. Vetco*, 691 F.2d 1281, 1287 (9th Cir. 1981) (requiring a foreign corporation asserting a blocking statute as a defense to production to make an affirmative showing of good faith in seeking permission to disclose); *Richmark Corp.*, 959 F. 2d at 1479 (finding absence of good faith where Respondent had not sought a waiver of secrecy statute before refusing to comply with District Court Order).

**CONCLUSION**

For the foregoing reasons, and those expressed in all preceding papers, CWW

respectfully requests that Respondents be Ordered to respond to the pending discovery

served on them, as provided in the form of order submitted with the instant motion.

Dated: March 14, 2011
      Philadelphia, Pennsylvania

COZEN O'CONNOR

By: _Richard J. Bortnick_
    Stephen A. Cozen
    Richard J. Bortnick
    1900 Market Street
    Philadelphia, Pennsylvania 19103
    (215) 665-2000

OF COUNSEL:

DEBEVOISE & PLIMPTON LLP

Donald Francis Donovan
Donald W. Hawthorne
Matthew S. Hackell
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Attorneys for Defendant CIGNA Worldwide Insurance Company*

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------x

THE ABI JAOUDI AND AZAR TRADING CORP.,    :

        Plaintiff,    :   Civil Action No. 91-6785

    -against-    :

CIGNA WORLDWIDE INS. CO.,    :

        Defendant.    :

-----------------------------------------------------------------------x

**FILED**

MAR 1 4 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## SUPPLEMENTAL DECLARATION OF RICHARD J. BORTNICK, ESQUIRE

RICHARD J. BORTNICK, ESQUIRE, hereby declares as follows:

1.      I am a member of the Bar of the Commonwealth of Pennsylvania and of this Court. I am also a member of the firm of Cozen O'Connor, counsel in this action for Defendant CIGNA Worldwide Insurance Company ("CWW"). I submit this Declaration in further support of CWW's Motion to Compel Discovery.

**Supporting Exhibits**

2.      Annexed as Exhibit H hereto is a true and correct copy of the supplemental brief filed jointly by Respondents in the U.S. Court of Appeals for the Third Circuit, titled Appellants' Joint Brief Regarding Samantar v. Yousuf, dated June 23, 2010.

3.      Annexed as Exhibit I hereto is a true and correct copy of a letter to the Court from Henry F. Reichner, Esquire, counsel for Respondents Senesie and Sesay, dated September 22, 2010.

4.      I declare under penalty of perjury that the foregoing is true and correct.

Executed at Philadelphia, Pennsylvania this 14th day of March, 2011.

RICHARD J. BORTNICK, ESQ.

2

# CERTIFICATE OF SERVICE

I, Richard J. Bortnick, do hereby certify that on March 14, 2011, I served a true and correct copy of CIGNA Worldwide Insurance Company's Memorandum of Law in Further Support of Motion to Compel Discovery & Supplemental Declaration on the following persons via hand delivery.

Henry F. Reichner, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Mark Gottlieb, Esquire
Offit Kurman
1801 Market Street, Suite 2300
Philadelphia, PA 19103

/s/ Richard J. Bortnick
Richard J. Bortnick