Stephen A. Cozen
Richard J. Bortnick
COZEN O'CONNOR
1900 Market Street
Philadelphia, Pennsylvania 19103
(215) 665-2000

Donald Francis Donovan
Donald W. Hawthorne
Matthew S. Hackell
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
(212) 909-6000

*Attorneys for Defendant CIGNA Worldwide Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------x

THE ABI JAOUDI AND AZAR TRADING CORP.,

    Plaintiff,

  -against-

CIGNA WORLDWIDE INS. CO.,

    Defendant.

------------------------------------------------------------------------X

Civil Action No. 91-6785

**MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS'
MOTION TO DECLARE THE DISCOVERY REQUESTS MOOT OR,
<u>IN THE ALTERNATIVE, AN EXTENSION TO RESPOND TO DISCOVERY</u>**

Respondents' disrespect for this Court reaches new heights.  Starting in 1991,

Plaintiff The Abi Jaoudi and Azar Trading Corporation ("AJA") spent over 5 years

litigating a claim from this Court, to the Court of Appeals, to the Supreme Court, and

then, unhappy with the outcome, filed a duplicative action in the courts of Liberia, whose

entry of a conflicting judgment (the "Liberian Judgment") prompted this Court to enter an anti-suit injunction prohibiting attempts to enforce it (the "Anti-Suit Injunction"). Since Petitioner CIGNA Worldwide Insurance Company ("CWW") sought contempt sanctions for violation of the Anti-Suit Injunction in 2008, Respondent Samuel Lohman and his confederates have spent more than two years litigating their claims of sovereign immunity and lack of personal jurisdiction in this Court and the Court of Appeals, and have even gone so far as to induce the Government of Liberia to engage the State Department in the hope that an assertion of immunity would shield their contempt from this Court's reach.

Now, when this Court has unequivocally ordered that discovery into the background of the contempt and the identity of all perpetrators finally commence, Respondents appear to think that they can negotiate with the Court by motion. Without the slightest evidence that they have actually taken any steps to withdraw with prejudice the action in the Caymans, Respondents effectively concede their violation of the Anti-Suit Injunction by stating that they will "abandon" their action in the Cayman Islands relating to the barred Liberian Judgment and will "not pursue or enforce" it. On the basis of this sudden shift, Respondents ask that they be excused from complying with the Court's discovery order because, they claim, "discovery is now moot."

This Court should have none of it. Since at least 2006, a group of international investors has sought to enforce the Liberian Judgment against CWW and ACE Ltd. ("ACE"). Aware that their actions violated a U.S. Court Order, the investors operated initially through a pair of shell companies represented by Respondent Lohman, and then

by co-opting the Liberian-appointed "receiver" for CWW (who is also represented by Lohman).  In November 2008, CWW brought this contempt action against AJA, Lohman and others, including the unidentified individuals who are funding and directing their activities (named in CWW's contempt motion as Does 1-50, or the "Investors").  For more than two years, Respondents Lohman, Josie Senesie and Foday Sesay have concealed the identities of these Investors, allowing their principals to continue to violate this Court's orders with impunity and ignoring discovery requests and the Court's orders that they identify the parties ultimately responsible for their contemptuous conduct.  Now, faced with the unambiguous order of this Court that they provide a "full and complete" response to CWW's discovery requests, which would include identifying the Investors, they try to turn tail and run.

    Notwithstanding this latest about-face, this proceeding and the discovery the Court has ordered remains essential to vindicate this Court's authority and CWW's interest.  *First,* CWW is entitled to compensation for the substantial expenses it has incurred as a result of Respondents' contempt, and it is entitled to seek that compensation from *all* the contemnors, including those not yet identified.  *Second*, there is not the slightest evidence here that Respondents have actually taken any steps to cure their contempt.  There is not even the most minimal showing that Mr. Senesie or Mr. Sesay have purported to withdraw the Caymans action with prejudice, and CWW is aware of no such attempt.  *Finally*, CWW is entitled to the discovery this Court has ordered so that it may identify all contemnors so that this Court may put the contempt fully to rest.  Until

the Investors are identified, CWW can have no assurance that they will not simply take up their contemptuous conduct through other agents and collaborators.

This Court should grant no extension and should afford Respondents no other relief. It should order – again – that discovery proceed immediately.

## FACTS

In 1995, after a two-month jury trial, the Court (O'Neill, J.) entered judgment as a matter of law in favor of CWW in this action. *Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 899 F. Supp. 1385, 1395 (E.D. Pa 1995).

AJA thereafter brought an identical lawsuit in Liberian court. *See Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 167 F. Supp. 2d 743, 744 (E.D. Pa. 2001). In 2000, the Liberian court, refusing to recognize the U.S. judgment, awarded a judgment in favor of AJA for more than $65 million.

On April 10, 2001, at the request of CWW, Judge O'Neill entered an injunction prohibiting AJA and those acting in concert with it from taking "any actions that conflict with, constitute an attack upon, or seek to nullify this Court's final Order dated September 15, 1995," or "any action to enforce in any jurisdiction" the Liberian Judgment. *Id.*

On July 9, 2008, Respondent Senesie violated the Anti-Suit Injunction by initiating an action against ACE in the Cayman Islands, in the name of CWW, seeking to enforce the Liberian Judgment based on the indemnification provisions of a 1999 agreement between ACE and a parent of CWW, under which ACE acquired certain assets

from CWW.  *See* Acquisition Agreement, dated January 11, 1999 (CWW Motion for Contempt (Dkt. #174), Ex. 11).

On November 18, 2008, CWW brought by Order to Show Cause a Motion for Contempt and to Enforce the Court's Anti-Suit Injunction Order, seeking to hold AJA and those acting in concert with it in civil contempt for violating the Anti-Suit Injunction for their actions taken to enforce the Liberian Judgment in the Cayman Islands Respondents' Motion to Declare the Discovery Requests Moot  (Dkt. #241) ("Resp. Mot."), Ex. A (the "Contempt Motion").  In addition to AJA, which has not appeared, CWW named as respondents:

- CC International Ltd. and St. Cleer, LLC, the purported assignees of AJA's right and title to its claim against CWW, including the Liberian Judgment (the "Assignees");

- Josie Senesie, who acting as the Liberian-appointed receiver for the "Liberian branch and business" of CWW, brought suit to enforce the Liberian Judgment against ACE in the Cayman Islands.[1]

- Samuel Lohman, who as attorney for AJA and the Assignees and then as one of the receiver's lawyers has been involved in efforts to enforce the Liberian Judgment against CWW and ACE since at least 2006; and

- Other as-yet-unidentified investors (named as Respondent Does 1-50, or the "Investors") who CWW believes have acquired an interest in the Assignees or in the Liberian Judgment, or who are funding enforcement efforts in return for a share of any money recovered.

Only Lohman, Senesie and his successor, Sesay, have appeared to date.

---

[1] On October 12, 2009, according to Senesie and Sesay, Senesie ceased to act as receiver for CWW's "Liberian branch," and was replaced in that capacity by his deputy, Sesay.  Sesay has since stated that he intends to continue his predecessor's contemptuous conduct.  This action continues against the office of the receiver – now represented by Sesay – and against Senesie in his individual capacity.

Together with its Motion to Compel, CWW served on the Respondents interrogatories that called for each of them to identify all parties who have an interest in, or who are funding or directing the enforcement of, the Liberian Judgment. Defendant's Interrogatories, dated November 18, 2008 (Declaration of Donald W. Hawthorne, dated May 25, 2011 ("Hawthorne Decl."), Ex. C) ("2008 Interrogatories"). On November 19, 2008, Judge O'Neill entered an Order to Show Cause requiring each Respondent to provide responses to these interrogatories. Hawthorne Decl., Ex. D ("2008 OTSC"). No Respondent has complied with this order.

On October 25, 2010, in accordance with an order of Judge Fullam entered September 24, 2010, CWW served discovery requests on Respondents Senesie, Sesay and Lohman. CWW Motion to Compel Discovery (Dkt. #231), Ex. A (the "Requests"). Upon learning that the State Department was considering whether it should submit a statement of interest, the parties agreed to extend Respondents' time to respond to the Requests to January 24, 2011.

CWW moved to compel responses to the Requests on February 16, 2011. In an Order dated May 10, 2011 (the "May 10 Order"), this Court granted CWW's motion, and ordered that "Respondents Senesie, Sesay and Lohman shall, by **May 20, 2011**, provide **full and complete** responses to Defendant's October 25, 2010 Interrogatories and Requests for Production of Documents." (emphasis in original).

Instead of complying with the Court's order, Respondents filed the instant motion, seeking dismissal of the Court's May 10 Order or, alternatively, an extension of their time to respond. Before filing, Respondents asked CWW if it would consent to a

two-week extension of their deadline to respond to the Requests.  CWW agreed, on the condition that Respondents would commit to providing full and complete responses, as required by the May 10 Order, on the new deadline.  Shortly before they filed this motion, counsel for Respondents informed CWW that Respondents would not agree with the condition that they comply with the Court's order.  Hawthorne Decl. ¶¶ 8-9.  Respondents' motion followed.

## ARGUMENT

I. **Respondents' "Agreement" Not to Pursue the Liberian Claims Does Not Cure Their Contempt or Moot This Proceeding.**

Respondents appear to suggest that discovery is not warranted here because their lawyers' unsworn assertions that Respondents will at some point cure their contempt somehow moots this proceeding.  That suggestion is meritless:  For three independent reasons, this proceeding must continue, and Respondents must be required to provide the discovery ordered by the Court, in order for CWW to obtain relief.  *First,* CWW is entitled to an order requiring Respondents to compensate CWW for the millions of dollars in attorneys' fees that have been spent in prosecuting this contempt.  *Second,* Senesie, Lohman and Sesay have done nothing to show that they have cured their contempt in any respect.  *Third,* Senesie, Lohman and Sesay have not disclosed the identities of the owners of the Liberian Judgment, and thereby continue to aid and abet ongoing efforts to enforce the Liberian Judgment.

### A. CWW is Entitled to Compensation for the Expenses It Has Incurred to Defend its Judgment as a Result of Respondents' Acts.

Contrary to Respondents' claims, this action cannot be mooted by Respondents' eleventh-hour attempt at compliance, because CWW is entitled to compensation for the millions of dollars of attorneys' fees and other expenses that it has incurred to enforce the Anti-Suit Injunction and to defend its U.S. judgment against Respondents' attacks.

A party resisting a contemnor's acts has the right to recover attorneys' fees expended in that effort. A party aggrieved by a civil contempt of a District Court's injunction is entitled to compensatory, as well as coercive, sanctions. *Latrobe Steel Co. v. United Steelworkers of Am.*, 545 F.2d 1336, 1344 (3d Cir. 1976). Compensatory sanctions are intended "to ensure that the innocent party receives the benefit of the injunction," and are designed "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). Compensatory sanctions typically include attorneys' fees. *See, e.g, Robin Woods*, 28 F.3d at 400 ("Only with an award of attorneys' fees can [plaintiff] be restored to the position it would have occupied had [defendants] complied with the district court's injunction."); *AMG Nat'l Trust Bank v. Ries*, 319 Fed. Appx. 90, 92 (3d Cir. 2008) (sanctions for civil contempt may include costs incurred "in uncovering and establishing" the contempt, as well as lost revenue attributable to the contemnor's wrongful acts). CWW has sought compensatory sanctions for Respondents' violation of the Anti-Suit Injunction. CWW Proposed Form of Order (Hawthorne Decl., Ex. E) at ¶¶ 7-10; Contempt Motion (Resp. Mot., Ex. A) at 30

(requesting that the Court "Order[] AJA, Lohman and the Assignees to pay CWW's attorneys' fees and costs").

Unlike coercive sanctions, a contempt action seeking compensatory sanctions does not become moot once the circumstances giving rise to the contempt are no longer relevant. *See N.Y. Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91-92 (2d Cir. 1998) ("[V]oluntary cessation of misconduct does not engender mootness where the cessation resulted from a coercive order and a threat of sanctions."); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987) (compensatory contempt action not mooted by "termination of the underlying action out of which the contempt hearing arose"); *Brown v. Kelly*, No. 05 Civ. 5442, 2007 WL 1573957, at *6 (S.D.N.Y. May 31, 2007) (awarding attorney's fees and costs where NYPD complied with injunction prior to imposition of coercive sanctions). Respondents' eleventh-hour compliance, even if it were established (and it has not been here), would not redress the losses incurred by CWW in prosecuting this contempt proceeding and in defending its U.S. judgment in multiple jurisdictions.

The losses suffered by CWW here are substantial. CWW (and ACE, pursuant to its indemnification obligations under the Acquisition Agreement), have litigated in four different jurisdictions in order to defend CWW's U.S. judgment against the efforts of Respondents and their co-conspirators to enforce the Liberian Judgment.[2] Hawthorne

---

[2] Pursuant to the Acquisition Agreement between CWW's parent and ACE, ACE is indemnifying CWW for its Losses (including attorneys' fees) arising out of its former Liberian business, and is therefore paying CWW's legal fees relating to this matter. § 9.4(a). The Acquisition Agreement also obliges CWW to "use its Reasonable Best Efforts to mitigate to the fullest extent practicable the amount of any Loss for which it is entitled to seek indemnification." § 9.5(c). That CWW is

9

Decl. ¶¶ 3-6.  As a result, CWW and ACE have incurred and paid legal fees and other costs in excess of $3 million, that would not have been incurred but for Respondents' actions.  Hawthorne Decl. ¶ 7.  They are entitled to be made whole for these losses, *Robin Woods*, 28 F.3d at 400-01, regardless of whether Respondents cease their contemptuous conduct going forward.

### B. Senesie, Sesay and Lohman Have Not Cured Their Own Contempt.

Sensie, Sesay and Lohman have *not* cured their contempt.  On the contrary, Respondents appear to be trying to negotiate with the Court by motion, suggesting that they "shall withdraw" their claims in the Cayman Islands, and "agree not to pursue or enforce the AJA Claim," if the Court spares them the obligation to respond to the Court's May 10 Order.[3]  Resp. Mot. at 3.

In fact, Respondents have done nothing to demonstrate that they have made any serious effort to cure their contempt, or that they ever will.  In particular:

- Mr. Sesay, as receiver for the "Liberian branch and business of CWW" has not discontinued the Cayman Islands Action in a manner such that it cannot be reasserted.  Among other things, Mr. Sesay has not provided notice to the Grand Court of the Cayman Islands that "CWW" withdraws all claims against ACE, with prejudice.

- Mr. Lohman has not withdrawn from his representation of the receiver and all other parties involved in the efforts to enforce the Liberian Judgment, nor submitted to the Court a sworn affidavit attesting that he shall not

---

indemnified for its Losses makes no difference to its right to an order imposing compensatory sanctions, particularly in view of its contractual obligation to mitigate. *See, e.g., Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 83 (3d Cir. 1983) ("Under the collateral benefit rule, payment which a [party] receives for his or her loss from another source is not credited against the [wrongdoer's] liability for all damages resulting from its wrongful or negligent act.").

[3]  There also appears to remain some uncertainty as to whether Respondents' counsel has authority to act for Mr. Senesie in his personal capacity.

- represent, advance the interests of, counsel or otherwise assist any person or entity in seeking to enforce the Liberian Judgment outside of Liberia.

- Neither Mr. Sesay, Mr. Senesie, nor Mr. Lohman has submitted to this Court a sworn affidavit attesting that he disavows any right to, and shall not (1) seek to enforce the Liberian Judgment in any jurisdiction outside of Liberia, or assist in or fund efforts to do so; (2) otherwise initiate, maintain, continue or take any action that conflicts with, constitutes an attack upon, or seeks to nullify the 1995 judgment of this Court in favor of CWW; (3) have or receive any interest in any recovery in or relating to the Liberian Judgment; or (4) receive any fees, payment, or other financial or non-financial benefit as a result of his or any other person's efforts to enforce the Liberian Judgment.

- Mr. Sesay and Mr. Senesie have not produced anything to show that any future successor as receiver will be bound not to seek to enforce the Liberian Judgment.

Unsworn and unsupported statements in a lawyer's brief that suggest that their clients "shall" or "agree to" take certain actions do not come close to establishing that Senesie, Sesay or Lohman have cured their contempt.

> C.  **By Refusing To Identify the Current Owners of the Liberian Judgment, Respondents Are Facilitating Their Continuing Contempt.**

Since the beginning of this action, CWW has named the current owners of the Liberian Judgment as Respondents, and the relief sought by CWW has included an order that Senesie, Sesay and Lohman identify them. Contempt Motion (Resp. Mot., Ex. A) at 30 (requesting that the Court order "discovery . . . to establish the identity of the Investors"); *see* 2008 Interrogatories (Hawthorne Decl., Ex. C); 2008 OTSC (Hawthorne Decl., Ex. D). The reason why CWW sought to hold the owners of the claims in contempt, as well as their agents is obvious: an order of contempt against only the instruments of the contempt provides no assurance that CWW will not have to begin this entire process again as soon as the owners of the claims find new agents.

The parties who are funding and directing the efforts to enforce the Liberian Judgment have managed to avoid being named in this proceeding only because the named Respondents have refused to disclose their identities. After two years of litigation, CWW has a right to know who is funding and guiding the efforts to deprive it of the benefit of the judgment of the District Court, and of the Anti-Suit Injunction it obtained from the same Court. CWW also has a right, more than twenty years after this action began, to finality, which cannot be achieved unless all of the parties seeking to undermine this Court's judgment are held accountable for their contempt.

Respondents' motion does not even hint that their "agree[ment] not to pursue or enforce the AJA Claim" would extend to their principals. In other words, Respondents ask that the Court withdraw its May 10 Order in order to leave the parties who actually own the Liberian Judgment free to continue their efforts to enforce it, by other means or through other intermediaries. Senesie's, Sesay's and Lohman's contempt cannot be cured, or this action mooted, while they continue to facilitate this continuing contempt by concealing the identity of the current owners of the Liberian Judgment.

II.   **Respondents' "Agreement" Not to Pursue the Liberian Claims Provides No Excuse For Their Failure to Comply with the Court's May 10 Discovery Order**.

The discovery ordered by the Court on May 10 is relevant to each of the three reasons that this action must go forward in order to afford CWW relief. *First,* unless Respondents have conceded that they are subject to the Court's jurisdiction for purposes of the fee award that CWW seeks, discovery remains relevant for all the reasons raised by CWW in briefing the motion to compel that was resolved by this Court's May 10 Order.

*Second,* because Senesie, Lohman and Sesay have not in fact cured their contempt in any respect, the discovery ordered by the Court remains as relevant for this proceeding as it was the day it was ordered by the Court. *Third,* discovery remains essential because, after over two years of litigation, the identity of the parties ultimately responsible for the contempt, who own the Liberian Judgment and have directed the actions of Lohman, Senesie and Sesay, remains unknown. Until Lohman, Senesie and Sesay identify their principals, there can be no assurance that the contemptuous efforts to enforce the Liberian Judgment have ended.

### III.     Respondents' Request For an Extension Should Be Denied.

Respondents' request in the alternative for an extension of their time to respond to the May 10 Order should be denied. *First,* the request is untimely, coming on the date that Respondents' responses to the Requests were due; Respondents have thus already defaulted. *Second*, CWW originally served the Requests in October 2010, and Respondents have had nearly seven months to prepare their response. There is no reason they should require yet additional time to comply. *Third,* Respondents' counsel have made clear that they do not intend to abide by the Court's May 10 Order. At Respondents' request, CWW offered to agree to a two-week extension of Respondents' time to comply with the Court's discovery order, on the condition that Respondents comply with the May 10 Order. Respondents said they could not agree to that condition. Hawthorne Decl. ¶¶ 8-9. The Court has ordered, and CWW is entitled to, "**full and complete** responses" to the Requests. Respondents should be compelled to provide those responses without further delay.

**CONCLUSION**

For the foregoing reasons, CWW respectfully requests that this Court deny Respondents' motion in its entirety and compel Respondents to immediately provide a full and complete response to CWW's Discovery Requests, in accordance with the Court's May 10, 2011 Order.  CWW further requests that the Court award CWW its legal fees and costs incurred in responding to this motion.

Dated: May 25, 2011
      Philadelphia, Pennsylvania

DEBEVOISE & PLIMPTON LLP

By:   /s/ Donald W. Hawthorne
     Donald Francis Donovan
     Donald W. Hawthorne
COZEN O'CONNOR                 Matthew S. Hackell
     919 Third Avenue
Stephen A. Cozen                   New York, NY  10022
Richard J. Bortnick               (212) 909-6000
1900 Market Street
Philadelphia, Pennsylvania 19103     *Attorneys for Defendant CIGNA Worldwide*
(215) 665-2000                     *Insurance Company*