IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 91-6785 |

**NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S MOTION FOR PROTECTIVE ORDER**

Non-party Respondent, Samuel M. Lohman, Esquire ("Lohman"), by and through his counsel, respectfully moves this Court to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c), substantially in the form attached hereto, providing that all discovery produced by Mr. Lohman, including his discovery responses, documents produced, privilege log, and his deposition transcript, be marked confidential and be prohibited from being distributed to any third party (including ACE Limited), or used outside of this litigation. For the reasons provided in the accompanying Memorandum of Law, this Motion should be granted.

Dated: June 6, 2011

Respectfully submitted,

/s/ William H. Pillsbury
Mark E. Gottlieb, Esquire
William H. Pillsbury, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA 19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Samuel M. Lohman, Esquire*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>        Defendant. | Civil Action No. 91-6785 |

## NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PROTECTIVE ORDER

Non-Party Respondent Samuel M. Lohman, Esquire ("Lohman"), by and through his counsel, submits this Memorandum of Law in Support of His Motion for Protective Order (the "Motion"). Pursuant to Federal Rule of Civil Procedure 26(c), a protective order should be granted in this case because good cause exists and CWW has admitted that it intends to use this discovery improperly. For the reasons discussed below, the Motion should be granted.

## I. PRELIMINARY STATEMENT

Initially, the confidentiality is essential because Defendant CIGNA Worldwide Insurance Company ("CWW") admits in a June 5, 2011 letter that its purpose in obtaining this discovery is to provide the documents to a third party, ACE Limited, for use in the Cayman Islands action as a means to gain advantage over claims CWW calls the "Elegant" claims.[1] The "Elegant" claims are twenty-two claims aggregating approximately US$40 million in value which underpin what is left of the Receiver's indemnity enforcement action against ACE Limited in the Cayman Islands. (The "Elegant" claims have been generally referred to in this litigation as the claims of

---

[1] A copy of the June 5, 2011 letter from Donald Hawthorne, counsel for CWW, to Mark Gottlieb, counsel for Mr. Lohman, along with the enclosures thereto is attached hereto as Exhibit A.

the "Group of 22" or of the "G-22"). The G-22's claims on the Receivership estate that the Commissioner of Insurance of Liberia is administering did not arise from, and in no way relate to, the litigation before this Court. Accordingly, the G-22's claims are not barred in any manner by 2001 the Anti-Enforcement Injunction, which is the alleged reason for this entire aiding and abetting of contempt proceeding before this Court. As such, CWW is openly and brazenly admitting that, without a confidentiality agreement in place, CWW will abuse this discovery process to provide a collateral litigation advantage to a third party, ACE Limited ("ACE"), in defending an indemnity enforcement case relating to wholly unconnected Liberian liabilities of CWW, and in a jurisdiction, the Cayman Islands, where virtually none of the confidential and/or privileged material sought in the discovery proceedings before this Court would be discoverable.

Furthermore, as discussed in detail below, the factors set up by the United States Court of Appeals for the Third Circuit in determining whether good cause exists for the issuance of a protective order weigh greatly in favor of issuing a protective order substantially in the form attached. Specifically, first, disclosure would violate foreign laws on confidentiality and Mr. Lohman, his firm's and his clients' rights to privacy over Attorney-client billing and invoices. Second, Mr. Lohman has been ordered to produce discovery in this contempt proceeding for the limited purpose of determining the real parties in interest so as to resolve the issue of common law sovereign immunity. See, e.g., The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co., 391 Fed. Appx. 173, 179-80 (2010). CWW has gone far beyond this purpose and has explicitly made clear that it intends to use the discovery to achieve improper collateral purposes. Third, disclosure of the documents sought by CWW includes personal business information of Mr. Lohman and his firm, as well as information which is protected under foreign confidentiality laws. Disclosure of this information would not only embarrass Mr.

Lohman, including hurting his business reputation, but also potentially expose him to criminal sanctions in Switzerland and/or Nevis and legal professional disciplinary sanctions in Switzerland. Fourth, the information sought has no connection to public health or safety, but is information related to private business transactions. Fifth, Mr. Lohman is not seeking to preclude disclosure to CWW, but only prohibit CWW from disclosing to other parties to achieve improper collateral objectives. As such, the limitations are not unfair and will not affect the efficiency of this aiding and abetting of contempt proceeding. Sixth, because Mr. Lohman is counsel for a Liberian state official, the discovery involved is a public official and that public official would benefit from this order of confidentiality. Finally, even if this contempt proceeding arguably has issues important to the public, this discovery is for a narrow issue and non-disclosure would have little impact on the public nature of this proceeding.

## II. <u>RELEVANT STATEMENT OF FACTS</u>

This matter originated in 1991 when Plaintiff, The Abi Jaoudi and Azar Trading Corporation ("AJA"), filed this action against its insurance company, CWW. The basic claim was that AJA was entitled to coverage for damage suffered to its property in Liberia in the summer of 2000. After a long and tortured history, this Court, in 1995, issued a judgment notwithstanding a jury's verdict in favor of CWW and, on October 4, 2000, a Liberian court had issued a judgment in favor of AJA. On April 10, 2001, upon CWW's request, this Court issued an order, frequently dubbed the "Anti-Suit Injunction[2]", which prohibited and enjoined AJA from "taking any action to enforce in any jurisdiction the Liberian judgment against Defendant CIGNA dated October 4, 2000." (April 10, 2001 Order at 1.) In response, in 2002, the Liberian court issued its own "anti-anti-enforcement" injunction, prohibiting and enjoining the

---

[2] In fact, the order is an injunction intended to restrain the enforcement of an existing foreign money judgment. It has thus also been called the "Anti-Enforcement Injunction".

enforcement of the Anti-Suit Injunction or any interference with the judgment creditor's efforts to seek satisfaction on its Liberian judgment of October 4, 2000.

In an effort to avoid the judgment of the Liberian court as to AJA, as well as the claims of other unrelated Liberian property and casualty policy holders, CWW removed its assets from Liberia (in violation of its local regulatory obligations) and refused to abide by, at least, twenty-three outstanding claims or judgments totaling approximately U.S.$120 million in value, including AJA's claim. After CWW's local Liberian branch and business was found to be insolvent and based on a series of local insurance regulatory infractions, the Liberian court, on April 24, 2007, appointed the Commissioner of Insurance of Liberia to serve as the Receiver on behalf of CWW to seek recovery, through an indemnification agreement between CWW and ACE, on twenty-three outstanding claims. That action was filed by the Receiver (in the name of CWW's Liberian Branch and Business) and against ACE in the Cayman Islands, in July 2008, where ACE was domiciled at the time.

On November 18, 2008, CWW filed an Emergency Motion for Contempt and to Enforce the Court's Anti-Suit Injunction Order (the "Motion for Contempt") seeking to have this Court find Mr. Lohman and others in contempt for aiding and abetting AJA in violating the Anti-Suit Injunction. Specifically, CWW contended that Mr. Lohman, as counsel for the Receiver in the Caymans Islands action, aided and abetted a violation of the Anti-Suit Injunction by supporting the Receiver's pursuit of the indemnity enforcement action against ACE (insofar as such action related to the Proof of Debt filed by AJA in the Receivership estate being administered by Mr. Lohman's client, the Receiver). The other twenty-two Proofs of Debt, which underpin what is left of the Cayman Islands indemnity enforcement action, did not stem from the matter before this Court and the pursuit of a recovery on the basis of them does not violate the Anti-Suit

Injunction. Nonetheless, despite the Receiver's recent withdrawal of the AJA claim as a part of the underlying foundation to the Cayman Islands action, CWW maintains that discovery in this contempt proceeding is necessary.

On June 3, 2011, Mr. Lohman's counsel sent a letter with a proposed stipulation and confidentiality order to counsel for CWW seeking to enter into a confidentiality agreement.[3] On June 5, 2011, CWW, via the letter attached as Exhibit A, rejected the language of the Mr. Lohman's proposed confidentiality agreement, but proposed a similar confidentiality agreement that included a specific carve out allowing CWW to disclose discovery to ACE Limited and for the discovery to be used in the Cayman Islands action as well as other proceedings. On June 6, 2011, Mr. Lohman's counsel sent a letter responding to the June 5, 2011 letter refusing to enter into CWW's proposed confidentiality agreement and noting that the stated purpose of the discovery by CWW constitutes an abuse of process.[4] Due to the failure to reach an agreement, Mr. Lohman filed this Motion at the same time as he responded to the outstanding discovery requests.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 26(c), a court "for good cause shown" may, in certain circumstances, enter a protective order in the context of discovery. See, e.g. Shingara v. Skiles, 420 F.3d 301, 305-06 (3d Cir. 2005) ("'[I]t is well-established' that good cause must exist to obtain a protective order over discovery materials.") (citation omitted). Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." Id. at 306 (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994).

---

[3] A copy of the June 3, 2011 letter from Mark E. Gottlieb to Donald Hawthorne is attached hereto as Exhibit B.

[4] A copy of the June 6, 2011 letter from Mark E. Gottlieb to Donald Hawthorne is attached hereto as Exhibit C.

In making this determination, a court must balance the interests of the public and the parties and provide a reason behind its balancing conclusion. Id. (citing Pansy, 23 F.3d at 789).

In performing this balancing test, the Third Circuit identified seven factors that should be considered:

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

**IV.    DISCUSSION**

    **A.    If The Protective Order Is Not Issued, Mr. Lohman Will Suffer A Clearly Defined, Specific, And Serious Injury.**

The discovery produced by Mr. Lohman includes invoices from Mr. Lohman's law offices, responses to interrogatories that include confidential business information about parties with interest in the Cayman Island actions, responses to the document requests, and privilege logs which contain confidential information about Mr. Lohman's clients.[5] All of these documents were either produced or obtained while Mr. Lohman was counsel to the Receiver and various other entities. Because Mr. Lohman is a member of the Geneva bar foreign lawyers section, he is bound to act under Swiss law, which sets out the risk of serious consequences being visited on Mr. Lohman for any failure to maintain professional confidentiality and secrecy.

    Specifically, Article 321 of the Swiss Penal Code states:

---

[5] Mr. Lohman recognizes that the responses and document production that he has produced raises privilege objections under both domestic and foreign law. Accordingly, while the substantive responses and document production are not as substantial due to the privilege as CWW will undoubtedly claim it is entitled, the need for this protective order nevertheless exists. Contained within the responses is information regarding clients and documents are referred to and indentified, which is, in and of itself, confidential.

7

> 1. Any person who in his capacity as a member of the . . . lawyer . . . discloses confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession shall be liable to a custodial sentence not exceeding three years or to a monetary penalty.

Similarly, Article 13 of the Swiss Federal Law of the Free Movement of Lawyers states:

> 1. The lawyer is submitted to professional secrecy for all matters which are entrusted by his clients in the exercise of his profession; this obligation is not limited in time and is applicable toward third parties. The fact of having been released from professional secrecy does not compel the lawyer to divulge the facts which have been entrusted to him.

Article 17 of the Swiss Federal Law of the Free Movement of Lawyers provides that:

> the monitoring authority may order the following disciplinary measures: a. the warning; b. the blame; c. a fine of up to 20,000 Swiss francs; d. the temporary prohibition from practicing law for a maximal duration of two years; e. the definitive prohibition from practicing law.

> The fine may be added to a prohibition from practicing.

Article 398 of the Swiss Code of Obligations imposes a civil liability for damages in favor of clients of lawyers who violate either Article 321 of the Penal Code or Article 13 of the Federal Law of the Free Movement of Lawyers.

As these laws demonstrate, by producing any of the confidential information, Mr. Lohman risks serious penalties under Swiss law, including having his law license suspended and incarceration of up to three years.

Similarly, Mr. Lohman represented a company formed under the Laws of St. Christopher and Nevis which has been included within the broad scope of discovery framed by CWW. Under the Confidential Relationships Act (1985) of the Laws of Saint Christopher and Nevis CAP 21.02 (as published on 31 December 2002),[6] a foreign or domestic attorney who obtains "confidential information with respect to a business of a professional nature which arises in or is

---

[6] A copy of the Confidential Relationships Act is attached hereto as Exhibit D.

brought into Saint Christopher and Nevis" is bound by this law. CAP 21.02(3)(1). If an attorney discloses that confidential information, he or she "shall be liable, on summary conviction, . . . to a fine of five thousand dollars or to imprisonment for twelve months or to both such fine and imprisonment." CAP 21.02(4)(3)(a). As with the Swiss law, disclosure of the confidential information exposes Mr. Lohman to potential imprisonment, which falls within the definition of "clearly defined, specific, and serious injury."

Furthermore, even if the recent discovery orders of this Court are to be read to reject the applicability of Swiss and other foreign privilege or confidentiality laws, Mr. Lohman is still bound by them and risks that injury. This Court should take a moderate or proportionate course and be mindful of the risks. In considering the issue of discovery involving foreign law, the United States Supreme Court instructed district courts to "exercise special vigilance." Société Nationale Industrielle Aérospatiale v. United States District Court, 482 U.S. 522, 546 (1987). Similarly, in In re Anschuetz & Co., GmbH, 838 F.2d 1362 (5th Cir. 1988) (herinafter "Anschuetz II") modifying 754 F.2d 602 (1985) (hereinafter "Anschuetz I"), vacated sub nom. Anschuetz & Co., GmbH v. Mississippi River Bridge Auth., 483 U.S. 1002 (1987) (mem. op.) (remanding in light of *Aérospatiale*), the Fifth Circuit concluded that "many foreign countries, particularly civil law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may even be offended by our pretrial procedures." Anschuetz II, 838 F.2d at 1364. In this case, in order to protect Mr. Lohman, a protective order should be granted.

Such an approach is consistent with the careful nature American courts should take in handling matters such as this which touch upon other countries' laws. "American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign

9

litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." Aérospatiale, 482 U.S. at 546; see also Anschuetz II, 838 F.2d at 1364 ("We would note, however, as the Supreme Court noted, that sensitive interests of sovereign powers are involved and that it would be a serious mistake for the District Court not to respect properly such interests in the course of deciding the appropriate discovery techniques to be applied."). According to the Supreme Court, in exercising the discretion to order discovery on foreign parties, a district court should remain mindful that possessing the "power to impose discovery under the Federal Rules" does not mitigate their responsibility to show "self-restraint" in using that power. Aérospatiale, 482 U.S. at 553 n.4 (Blackmun, J., concurring in part and dissenting in part) (emphasis removed); see also Anschuetz I, 754 F.2d at 614 ("[T]o say what is proper and permitted as an exercise of power by an American court acting under the federal rules is not necessarily to say that such power should always be employed. Particularly in the realm of international discovery we believe the exercise of judicial power should be tempered by a healthy respect for the principles of comity."). As such, even if this Court were to not agree that foreign confidentiality and privilege law should apply,[7] it should recognize that Mr. Lohman is bound by it and temper its judgment as to provide Mr. Lohman some protection.

Finally, as discussed above, CWW has already stated that it intends to use the discovery from this contempt proceeding as a collateral litigation advantage for a third party with no connections to the United States, ACE, to assist in ACE's defense to what is left of the Cayman Islands action related to the G-22 or non-AJA claims. (See June 5, 2011 letter, Ex. A, at 2.) Such an abuse of process would expose Mr. Lohman's clients to, at a minimum, the cost of a collateral action responding to CWW's allegations and the material given to ACE. In addition,

---

[7] Although it must be said that virtually all of the confidential and/or privileged communications sought to be disclosed by the use of this Court's powers originated in, and passed between, parties located in jurisdictions outside of the United States.

the disclosure of this information to the Cayman Islands court could constitute a waiver/loss of privilege through publication. Specifically, the Cayman Islands is an overseas territory of the United Kingdom of Great Britain and Northern Ireland. As such, it applies and follows the common law of England and Wales. Unlike Pennsylvania, the Cayman Islands applies not only its variation of attorney-client privilege (called solicitor-client privilege), but also a broader species of privilege called the litigation privilege. The basic rule of the litigation privilege is set out as follows:

> **E - Litigation Privilege - The Basic Rule.**
>
> **11.31.** Confidential communications made, after litigation is commenced **or even contemplated**, between (a) a lawyer and his client, (b) a lawyer and his non-professional agent, or (c) **a lawyer and a third party**, for the sole or dominant purpose of such litigation (whether for seeking or giving advice in relation to it or for obtaining evidence to be used in it, or for obtaining information leading to such obtaining), are privileged from production. (Emphasis added.)

Matthews, P. and Malek QC, HM, Disclosure (being the 3rd edition of Discovery) 294 (London, Sweet & Maxwell 2007) ("*Disclosure*") (emphasis added).

Allowing CWW to improperly disclose this discovery and, as a result, stripping Mr. Lohman's client of his rights to the protections of foreign law governed principles of privilege is a clearly defined, specific, and serious injury that supports the issuance of a protective order. Such a protective order would protect Mr. Lohman and his client from a finding that they had waived the privilege in the Cayman Islands by a failure to preserve the confidentiality in the information or the documents. See Bourns Inc v. Raychem Corp., 3 All ER 154, 167 (Cayman Islands 1999) (*per* Aldous L.J.), (the "crucial consideration is whether the document and its information **remain confidential in the sense that it is not properly available for use**") (emphasis added).

11

Therefore, Mr. Lohman has shown that he, and his client, risk clearly defined, specific, and serious injury that warrants the issuance of a protective order.

### B. The Factors Weigh Heavily In Favor Of Issuance of A Protective Order.

As noted above, the Third Circuit identified seven factors to weigh in determining whether good cause exists to issue a protective order. In this case, all seven factors weigh in favor of issuance. The factors are:

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

#### a. Disclosure would violate foreign confidentiality laws and, thus, privacy interests of other states.

As discussed above, the discovery responses include confidential information as defined by both the laws of Switzerland and the Federation of Saint Christopher and Nevis. Under the relevant laws of both of these jurisdictions, disclosure of confidential information is prohibited. In the case of Swiss law, it is part of Switzerland's penal code, as well as the law governing the conduct of lawyers and the general law of obligations. Even if this foreign law is found to not be controlling in this situation, this Court should moderate its discovery obligations so as to impact the effects of any violations of foreign law as minimally as possible. The Restatement (Second) of Foreign Relations Law is instructive on this point:

> Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, **moderating the exercise of its enforcement jurisdiction**.

Restatement (Second) of Foreign Relations § 40 (1965).

As such, where privacy interests of a foreign state may be violated, this factor weighs in favor of issuance of the protective order.

### b. CWW has admitted it intends to use the discovery for an improper purpose.

As discussed above, CWW has admitted that it intends to use this discovery to achieve an improper collateral objective – namely, to hand the fruits of discovery in Philadelphia to ACE – so as to afford ACE a litigation advantage in its defense of what remains of the Cayman indemnity enforcement action (in respect of the claims of the G-22, which were pleaded as a part of a basket of Liberian liabilities which, until recently, included the AJA claim). Specifically, CWW states that it will produce the discovery to ACE and ACE will use it to show "the Receiver's basis for bringing the 'Elegant' claims [meaning the unrelated G-22 claims] that Mr. Lohman and his clients have indicated that they intend to continue to pursue in the Cayman Islands." (June 5, 2011 letter, Ex. A., at 2.) CWW provides no rational basis why discovery that was intended for a limited purpose related to subject matter jurisdiction in Philadelphia should be allowed to be used for a collateral litigation advantage for a third party in the Cayman Islands; and has admitted to planning to abusing the legal process in this litigation. Furthermore, this protection order will not limit CWW's ability to demonstrate who the real parties in interest in this litigation are. As such, this factor weighs heavily in favor of granting the protective order.

### c. Disclosure would not only subject Mr. Lohman to embarrassment, but, potentially, severe sanctions under foreign laws.

The disclosure of the confidential documents and information sought by CWW has potentially both serious and purely embarrassing impacts on Mr. Lohman. More specifically, the disclosure of his invoices could embarrass him by making public his rates and related information. By way of example, if a client of Mr. Lohman's discovers that Mr. Lohman

charges one client more or less than another – a fairly common practice – that could serve to embarrass Mr. Lohman. On a more serious note, as discussed above, disclosure of this information could expose Mr. Lohman to severe penalties or disciplinary action in foreign jurisdictions and the potential waiver of his clients' litigation privilege. Given the risk involved in disclosure of the discovery information, this factor weighs in favor of issuing the protective order.

### d. The information sought is not related to public health and safety.

This matter originated from a contractual dispute between a policyholder and an insurance company which first arose in October 1990. Some twenty-one years later, it has evolved into an ancillary contempt proceeding involving complex questions of international law, but in no way does it involve issues related to public health and safety that would favor the disclosure of the discovery information.

### e. The information will be shared with CWW, so the requested protective order is not unfair or harmful to efficiency.

Mr. Lohman is not seeking to preclude CWW from reviewing or using in this contempt proceeding the discovery information. The sole purpose is to prevent CWW from disseminating confidential information obtained in this discovery, a purpose which is fully warranted given CWW's announced intentions for its collateral use as set out in its June 5, 2011 letter. Because CWW will have access to the documents or information, this protective order will not unfairly prejudice CWW or be harmful to the efficiency of this matter. In fact, Mr. Lohman believes that this unnecessary discovery process and CWW's far-reaching discovery has been far more harmful to the efficiency of this matter than any protective order will be.

### f. Mr. Lohman represents a foreign official, so the disclosure here does involve an agent of a public official.

Mr. Lohman is counsel to the Receiver, who was appointed by the Liberian courts and is the acting Commissioner of Insurance of Liberia. While Mr. Lohman is not personally a public official, he is the agent of a public official and the discovery requests seek information Mr. Lohman learned, in part, while the agent of the public official. Therefore, the disclosure does involve a public official and that public official would benefit from the protective order.

### g. The issues important to the public related to this matter will not be affected by this protective order.

Mr. Lohman does believe that this ancillary contempt proceeding involves important questions about the reach of a United States District Court and the efficacy of an 'anti-enforcement of a foreign judgment' injunction issued by a United States court in certain foreign jurisdictions. These substantive issues are ripe for resolution by this Court and the discovery sought by CWW is tangential to these issues. In fact, Mr. Lohman believes this discovery has actually delayed a determination on the issues important to the public.

## V. CONCLUSION

For the aforementioned reasons, Mr. Lohman requests that this Court grant this Motion and issue a confidentiality order substantially in the form provided.

Dated: June 6, 2011

Respectfully submitted,

/s/ William H. Pillsbury
Mark E. Gottlieb, Esquire
William H. Pillsbury, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA 19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Non-Party*
*Samuel M. Lohman, Esquire*

# RULE 26(c) CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 26(c), I hereby certify that we have conferred with counsel for Defendant CIGNA Worldwide Insurance Company through correspondence on June 3, 2011, June 5, 2011, June 6, 2011, and a second on June 6, 2011. We were unable to resolve the dispute without court action.

Dated: June 6, 2011

Respectfully submitted,

/s/ William H. Pillsbury
William H. Pillsbury, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA 19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Non-Party*
*Samuel M. Lohman, Esquire*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Non-Party Respondent Samuel M. Lohman, Esquire's Motion for Protective order was filed electronically, which constitutes service on all parties, and e-mailed on this date to:

>Richard J. Bortnick, Esquire
>COZEN O'CONNOR
>1900 Market Street
>Philadelphia, PA 19103
>
>Donald W. Hawthorne, Esquire
>DEBEVOISE & PLIMPTON LLP
>919 Third Avenue
>New York, NY 10022
>
>Henry F. Reichner, Esquire
>REED SMITH LLP
>500 One Liberty Place
>1650 Market Street
>Philadelphia, PA 19103-7301

Dated: June 6, 2011

>Respectfully submitted,
>
>/s/ William H. Pillsbury
>William H. Pillsbury, Esquire
>OFFIT KURMAN, P.A.
>1801 Market Street
>Suite 2300
>Philadelphia, PA 19103
>267-338-1321
>267-338-1335 (facsimile)
>
>*Attorneys for Non-Party*
>*Samuel M. Lohman, Esquire*