**7IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 91-6785 |

## **ORDER**

AND NOW, this _____ day of June, 2011, upon consideration of Non-Party Respondent Samuel M. Lohman, Esquire's Motion to Find Relief Sought in Emergency Motion of Defendant CIGNA Worldwide Insurance Company for Contempt Fully Satisfied as to Mr. Lohman, and the responses thereto, it is hereby ORDERED:

That the Motion is GRANTED and Samuel M. Lohman, Esquire is DISMISSED from this proceeding.

BY THE COURT:

_____
PAUL S. DIAMOND, JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No. 91-6785 |

**NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S MOTION
TO FIND RELIEF SOUGHT IN EMERGENCY MOTION OFDEFENDANT CIGNA
WORLDWIDE INSURANCE COMPANY FOR CONTEMPT, FULLY SATISFIED AS
TO MR. LOHMAN**

Non-party Respondent, Samuel M. Lohman, Esquire ("Lohman"), by and through his counsel, respectfully moves this Court to issue an order finding the relief sought by Defendant CIGNA Worldwide Insurance Company in its Emergency Motion for Contempt fully satisfied as to Mr. Lohman and dismissing Mr. Lohman from this contempt proceeding. For the reasons provided in the accompanying Memorandum of Law, this Motion should be granted.

Dated: June 10, 2011

Respectfully submitted,

/s/ William H. Pillsbury
Mark E. Gottlieb, Esquire
William H. Pillsbury, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA  19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Samuel M. Lohman, Esquire*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 91-6785 |

**NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO FIND RELIEF SOUGHT IN EMERGENCY MOTION OFDEFENDANT CIGNA WORLDWIDE INSURANCE COMPANY FOR CONTEMPT FULLY SATISFIED AS TO MR. LOHMAN**

Non-Party Respondent Samuel M. Lohman, Esquire ("Lohman"), by and through his counsel, submits this Memorandum of Law in Support of his Motion to Find Relief Sought in Emergency Motion of Defendant CIGNA Worldwide Insurance Company for Contempt Fully Satisfied as to Mr. Lohman and, as a result, Mr. Lohman should be dismissed from this proceeding. For the reasons discussed below, the Motion should be granted.

**I.  PRELIMINARY STATEMENT**

In Defendant CIGNA Worldwide Insurance Company's ("CWW") Emergency Motion for Contempt and to Enforce the Court's Anti-Suit Injunction Order dated November 18, 2008 ("Motion for Contempt") as it pertains to Samuel Lohman, Esquire, it requests the Court issue an order requiring Mr. Lohman to pay daily fines of $5,000 until he submits an affidavit to this Court in which he makes specific statements. On June 10, 2011, Mr. Lohman filed a Declaration

(the "Lohman Declaration" is Docket No. 253).[1] In the Lohman Declaration, Mr. Lohman specifically affirms all of the relief sought by CWW in both its Motion for Contempt and the Memorandum of Law in Support of the Motion for Contempt.

In addition, in the Motion for Contempt, CWW seeks an order requiring Mr. Lohman, amongst others, "to pay CWW's attorney's fees and costs incurred to investigate Respondents' violations of the Anti-Suit Injunction and to prepare and prosecute CWW's Motion for Contempt." (Lohman Decl., Ex. 1 (Mot. for Contempt) ¶6.) CWW has represented to this Court and opposing counsel that it has not in fact incurred any fees or costs. As CWW concedes, ACE Limited ("ACE") has opted to pay for all fees and costs of this action and, therefore, CWW is not entitled to any award for fees and costs.

In light of the relief sought by CWW having been fully and completely satisfied in the case of the coercive relief and being non-existent in the case of the compensatory relief, Mr. Lohman should be dismissed from this contempt proceeding. Further action against Mr. Lohman does not have any prospective effect or serve any interest of justice, but would be punitive in nature and simply designed to harass Mr. Lohman.

## II.   RELEVANT STATEMENT OF FACTS

This contempt proceeding arises from a dispute between Plaintiff The Abi Jaoudi and Azar Trading Corporation ("AJA"), a Liberian corporation, and CWW over AJA's claims that CWW, its property and casualty insurance company in the years leading up to 1990, owed AJA indemnification for property damage suffered in Liberia. Originally, AJA filed the above-captioned matter and this Court, in 1995, issued a Judgment Notwithstanding Verdict in favor of CWW after a jury, in April 1994, had found in favor of AJA. AJA pursued a subsequent action

---

[1]   Mr. Lohman's declaration is pursuant to 28 U.S.C. § 1746, which allows a party to submit a declaration in lieu of affidavit, so long as the affidavit is consistent with the language of that statute. As such, Mr. Lohman's declaration satisfies CWW's request for an "affidavit".

in Liberia and, after that jurisdiction rejected the JNOV of this Court (on the basis that a JNOV is incompatible with Liberia's constitutional guarantee to a trial by jury), on October 4, 2000, a judgment in favor of AJA was issued.  Prior to issuance of the Liberian judgment, CWW had removed all of its assets from Liberia and, in 1999, sold its domestic and international property casualty operations to ACE for $3.45 billion and for ACE's assumption of the duty to pay the "Assumed Liabilities" – including specifically all liabilities of CWW owed to any Liberian policyholder.

Upon request from CWW, this Court issued an order on April 10, 2001 that prohibited and enjoined AJA from "taking any action to enforce in any jurisdiction the Liberian judgment against Defendant CIGNA dated October 4, 2000." (Docket No. 172 at 1.)  On April 22, 2002, the Liberian court issued its own "anti-anti enforcement injunction", enjoining the enforcement of this Court's April 10, 2001 Order.  (A copy of the Liberian court's April 22, 2001 Order is attached hereto as Exhibit A.)

After efforts by AJA and the holders of twenty-two other unsatisfied judgments against CWW to otherwise collect on their judgments had failed, and following an investigation by the Liberian Minister of Justice which confirmed that CWW, among other foreign insurers, had committed multiple violations of Liberian Insurance Law both during its tenure in the country and when closing down its branch property and casualty business, the Liberian court, on April 24, 2007, appointed the Liberian Commissioner of Insurance to act as Receiver of and to Liquidate CWW's Liberian Branch.  (Lohman Decl. ¶16 & Ex. 4.)  As part of his obligations, the Receiver was "expressly empowered, authorized and directed . . . to initiate, prosecute and continue the prosecution of any and all legal or arbitral proceedings," to marshal value attributable to CWW's former Liberian branch operation into the Receivership estate.  (Lohman

Decl. ¶16 & Ex.4 at ¶3(h).)[2]  Pursuant to his authority under Liberian law, in July 2008, the Receiver filed a Writ of Summons and Statement of Claim in the Grand Court of the Cayman Islands against ACE seeking to enforce ACE's obligation to indemnify CWW for its "Assumed Liabilities" arising from ACE's 1999 acquisition of CWW's world-wide property and casualty business.  The basket of liabilities which the Receiver sought to have ACE pay included the proven liability arising from the AJA judgment.

Mr. Lohman had acted for AJA from 2003 and prior to the appointment of the Receiver on April 24, 2007.  Thereafter, Mr. Lohman has acted as one member of the legal team for the Receiver.  On November 18, 2008, CWW filed the Motion for Contempt seeking this Court find, amongst other requests, that Mr. Lohman be found in civil contempt for his alleged aiding and abetting of AJA in violating the April 10, 2001 anti-enforcement of AJA Liberian judgment injunction of this Court.  (See, e.g., Lohman Decl. ¶6.)  Specifically, as to Mr. Lohman, AJA sought an order imposing daily fines of $5,000 until Mr. Lohman filed an affidavit with this Court that stated "he will not represent, advance the interest of, counsel or otherwise assist any person or entity in seeking to enforce the [AJA] Liberian Judgment in any jurisdiction" and "that each of them disavows any right to, and shall not, seek to enforce, or assist or counsel in the enforcement of, the [AJA] Liberian Judgment in any jurisdiction, or assist in or fund efforts to do so, or otherwise initiate, maintain, continue or take any action that conflicts with, constitutes an attack upon, or seeks to nullify this Court's Order of April 10, 2001 in the present matter." (Lohman Decl. ¶¶7-8.)

---

[2]     The Order Appointing the Receiver expressly prohibited actions against the Receiver, such as the instant action, in the following terms: "**Error! Main Document Only.**THIS COURT ORDERS that no proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court."  (Lohman Decl. Ex. 4 at ¶8.)

Similarly, in its Memorandum of Law in Support of its Motion for Contempt, CWW sought for Mr. Lohman to "withdraw[] the demand for the Liberian Judgment sent April 18, 2006, and disclaim[] any right to enforce the [AJA] Liberian Judgment on behalf of himself or any other persons or entities in any jurisdiction." (Lohman Decl. ¶9.)  Finally, CWW sought that the Court order Mr. Lohman, amongst others, "to pay CWW's attorneys' fees and costs incurred to investigate Respondents' violations of the Anti-Suit Injunction and to prepare and prosecute CWW's Motion for Contempt."  (Lohman Decl. ¶10.)

In response to this Motion for Contempt, the Receiver agreed to stay the Cayman Islands action in its entirety pending the outcome of Mr. Lohman's and the Receiver's interlocutory appeals on jurisdiction.  After two and a half years with this matter still pending, in May of this year, the Receiver authorized his counsel in the Cayman Islands to fully and completely abandon the AJA judgment and to request the stay be lifted in the Cayman Islands so the Receiver's claims for indemnity and payment of the other twenty-two (22) proven and admitted liabilities of the Receivership estate can be addressed.  (Lohman Decl. ¶¶ 13-16.)  On May 26, 2011, the Receiver's counsel filed the paperwork with the Grand Court of the Cayman Islands, which was needed to fully and finally discontinue the AJA related indemnification claim against ACE.  (See generally Lohman Decl. Ex. 2.)  By letter dated June 6, 2011, the Receiver made a representation to this Court that he has "instructed Cayman counsel to ensure that such amendment to the pleading is permanent – or with prejudice to the Estate that I administer." (Lohman Decl. Ex. 3 at p. 2.)

### III.  DISCUSSION

#### A.  The Coercive Relief Sought By CWW In Its Motion For Contempt Has Been Fully Satisfied By Mr. Lohman's Declaration Attached Hereto.

CWW's requested coercive relief in the Motion for Contempt related to Mr. Lohman was that Mr. Lohman provides an affidavit making specific statements regarding the AJA Liberian judgment. The attached declaration of Mr. Lohman makes the specific representations requested by CWW in both its Motion for Contempt and the Memorandum of Law in Support Thereto. (Lohman Decl. ¶17.) As such, CWW's requests for coercive sanctions after a finding of civil contempt have been fully satisfied.

In addition, even assuming *arguendo* that the relief sought against Mr. Lohman included the complete abandonment of the AJA Liberian judgment, such abandonment has occurred. The Receiver's Cayman Islands counsel has filed a re-amended Writ of Summons, an Amended Statement of Claim, a draft interlocutory Summons to the Court, and a proposed for of undertaking from the Receiver to the Cayman Islands court. (See Lohman Decl. Ex. 2 at ¶6.) These documents were filed after the Receiver instructed his Cayman Island counsel to "abandon the Abi Jaoudi Claim on a permanent and irrevocable basis." (Lohman Decl. Ex. 2 at ¶8; see also Lohman Decl. Ex. 3.) Specifically, the undertaking filed with the Cayman Islands court "is as solemn, binding and effective as an order of the court in like terms" and "upon the giving of the undertaking, the abandonment of the Abi Jaoudi Claim will become for practical purposes final and absolute." (Lohman Decl. Ex. 2 at ¶¶9-11.)

Finally, there are legal reasons why, even if AJA or another party wanted to revive the AJA Liberian judgment it would be impossible. First, the judgment was issued on October 4, 2000. It is now more than 10 years since that date and under almost all foreign jurisdictions, including all relevant jurisdictions – i.e. Liberia, Cayman Islands, Bermuda (where ACE was

formerly domiciled), and Switzerland (where ACE is currently domiciled) – the claim is barred by those jurisdictions' respective statutes of limitations. <u>See, e.g.</u>, The Foreign Judgments Reciprocal Enforcement Law of Cayman Islands (32 of 1967) (1996 Revision) Part II.4(1) (imposing a 10 year limitation on suits on foreign money judgments). Second, even if the matter could be revived in Liberia, CWW and ACE have withdrawn all assets from Liberia making an enforcement of judgment a wholly meaningless activity. Third, the order appointing the Receiver specifically prohibits the commencement or continuance of any proceeding related to CWW's former Liberian operations anywhere in the world against CWW without the Receiver's permission or leave of court. (Lohman Decl. Ex. 4 at ¶¶8-9.) Also, the fact is the Receivership has shut down the ability of individual credits of the estate to launch their own actions due to the presence of an insolvency stay. (<u>See generally</u> Lohman Decl. Ex. 4.)

Therefore, the AJA Liberian judgment has been fully abandoned and Mr. Lohman has made all of the statements confirming this abandonment, as demanded by CWW in its Motion for Contempt.

**B.   CWW Has Incurred No Legal Fees And, Therefore, Has No Right To A Compensatory Award Of Legal Fees.**

To date, Mr. Lohman, nor any other alleged contemnor, has been found in civil contempt by this Court. In light of Mr. Lohman's execution of the Lohman Declaration (as well as, the abandonment of the AJA Liberian judgment by the Receiver), the sole relief that CWW can seek at this point for the alleged aiding and abetting of civil contempt by Mr. Lohman is compensatory sanctions. <u>See, e.g.</u>, <u>Latrobe Steel Co. v. United Steelworkers of Am.</u>, 545 F.2d 1336, 1344 (3d Cir. 1976). Initially, Mr. Lohman disputes that this Court should hold him in civil contempt and, even if civil contempt is granted, that CWW is entitled to compensatory damages from Mr. Lohman. This issue, however, need not be addressed because CWW is only

9

entitled to <u>compensation</u> for reasonable attorneys' fees and costs, as well as costs incurred in uncovering and establishing the contempt that it incurred.  See, e.g., <u>AMG Nat'l Trust Bank v. Ries</u>, 319 Fed. Appx. 90, 92 (3d Cir. 2008).

CWW has represented to this Court and to Mr. Lohman that it has not in fact incurred any legal costs, but all costs were paid for by ACE.  (Resp. to Motion to Declare the Discovery Moot (Docket No. 243) at 9-10 (CWW and "ACE, pursuant to its indemnification obligations under the Acquisition Agreement" has suffered great losses); Declaration of Donald W. Hawthorne dated May 25, 2011 (Docket No. 244) at ¶7 ("ACE has paid legal fees and costs"); Letter dated June 5, 2011 from Donald W. Hawthorne to Mark E. Gottlieb, Esquire at 3 ("ACE has paid essentially all the costs of the efforts to enforce Judge Fullam's [sic] anti-suit injunction.")  A copy of the June 5, 2011 letter is attached hereto as Exhibit B.)

Generally, a third party should not be awarded compensatory damages in a contempt proceeding.  See, e.g., <u>National Labor Relations Board v. Local 3, Int'l Brotherhood of Electrical Workers</u>, 471 F.3d 399, 408 (2d Cir. 2006) (finding that payment to third parties for compensatory sanctions was inappropriate); <u>Northside Realty Assoc., Inc. v. United States</u>, 605 F.2d 1348, 1355-56 (5th Cir. 1979) (denying right to third parties to obtain compensatory sanctions in civil contempt matter).  CWW blurs this issue by asserting that ACE had an obligation under the indemnification provision in the Acquisition Agreement to pay the subject fees and costs.  However, the indemnification provision provides that ACE shall "indemnify, defend and hold harmless [CWW] from and against any and all Losses resulting from: . . . the Assumed Liabilities." (Lohman Decl. Ex. 2 at Ex. ND1 at 19.)[3]  CWW is attempting to expand

---

[3] Section 1.5 of the Exhibits to the Acquisition Agreement, in subsection IV (4), specifically provides that the Assumed Liabilities include "[t]he assets, liabilities and obligations pertaining to CIGNA Worldwide Insurance Company's run-off business in Liberia,"  (A copy of Section 1.5 of the Exhibits to the Acquisition Agreement is attached hereto as Exhibit C.)

this indemnification to include the decision to pursue "offensive" claims, not just defend "Assumed Liabilities". There is no basis in law or in the Acquisition Agreement for this interpretation.[4]

Furthermore, the Order that has allegedly been violated was not even in place at the time this Acquisition Agreement was executed. As such, CWW is attempting to say that ACE had an obligation to indemnify CWW for "Assumed Liabilities" that are not liabilities of its former Liberian branch business (which was shut down and abandoned in 1990), and which arise from its enforcement of an Order which did not even exist until over a year after the Acquisition Agreement was executed.

This Court should note that in July, 2008, at the commencement of the pending Cayman Islands action, ACE was in the process of migrating its place of domicile from the Cayman Islands to Zurich, Switzerland. To satisfy the Cayman Islands court that it would not quit the jurisdiction without addressing the Receiver's indemnification claim, ACE undertook to the Cayman Islands court that its Swiss-incorporated successor would submit to the jurisdiction of the Cayman Court and would pay any sum of money to the Receiver which that Court might finally order be paid. (See Order of the Grand Court of the Cayman Islands, Smellie, C.J., dated July 17, 2008, attached hereto as Exhibit D.)

By its undertaking to the Cayman Island courts (a breach of which would be a contempt of court), ACE implicitly agreed to litigate its dispute with the Receiver in the Cayman Islands.

---

[4] CWW notes in Docket No. 243 that the Acquisition Agreement obliges CWW to "use its Reasonable Best Efforts to mitigate to the fullest extent practicable the amount of any Loss for which it is entitled to seek indemnification." (Docket No. 243 at 9 n.2.) It is unclear how the decision to pursue a collateral and costly litigation for the achievement of tactical advantages for ACE in the Cayman Islands constitutes a "Reasonable Best Efforts" to mitigate any Loss. Furthermore, this language does not support the argument that ACE had any obligation to pay for this collateral litigation. If anything, it would support the conclusion that CWW was obligated to pursue this contempt proceeding at its own cost in order to protect ACE from needing to defend the Cayman Islands action. CWW appears to be confused by what its own Acquisition Agreement with ACE says.

11

ACE's tactic, launched 4 months later, of using CWW as its proxy to attack the Receiver in this Court is a deliberate attempt to gain a litigation advantage against the Receiver in a different forum than the one which was selected and, in effect, agreed upon by the parties to resolve that dispute. It is a tactic which is incompatible with ACE's undertaking to the Cayman Island court. In this action, CWW has conspired with ACE to evade comity in international justice, which is a result this Court should reject. Attempting to obtain its counsel fees through this Court as a ways to circumvent the Cayman Islands court is further evidence that ACE, the only entity who has incurred attorneys' fees and costs in this action, has no right to recovery for compensatory fees in this matter.

ACE's decision to fund this contempt proceeding is a voluntary decision which has resulted in CWW not incurring any expenses or suffering any loss related to this contempt proceeding. Presumably, ACE felt that this decision was beneficial in its defense in the Cayman Islands action, but this does not provide any basis for it to be awarded compensatory sanctions, indirectly or through the aegis of CWW as a nominal plaintiff. Therefore, the relief sought for compensatory sanctions is non-existent and, even if Mr. Lohman is found in civil contempt, all of the relief sought by CWW has been satisfied. As such, there is no basis to maintain this contempt proceeding against Mr. Lohman and he should be dismissed.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, Mr. Lohman requests that this Court grant this Motion and find that the relief sought by CWW has been satisfied or is non-existent. In light of all relief sought by CWW being satisfied, Mr. Lohman should be dismissed from this contempt proceeding.

Dated: June 10, 2011

                                                    Respectfully submitted,

                                                    /s/ William H. Pillsbury  
                                                    Mark E. Gottlieb, Esquire  
                                                    William H. Pillsbury, Esquire  
                                                    OFFIT KURMAN, P.A.  
                                                    1801 Market Street  
                                                    Suite 2300  
                                                    Philadelphia, PA  19103  
                                                    267-338-1321  
                                                    267-338-1335 (facsimile)

                                                    *Attorneys for Non-Party*  
                                                    *Samuel M. Lohman, Esquire*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Non-Party Respondent Samuel M. Lohman, Esquire's Motion to Find Relief Sought in Emergency Motion of Defendant CIGNA Worldwide Insurance Company for Contempt Fully Satisfied as to Mr. Lohman was filed electronically, which constitutes service on all parties, and e-mailed on this date to:

>Richard J. Bortnick, Esquire
>COZEN O'CONNOR
>1900 Market Street
>Philadelphia, PA  19103
>
>Donald W. Hawthorne, Esquire
>DEBEVOISE & PLIMPTON LLP
>919 Third Avenue
>New York, NY  10022
>
>Henry F. Reichner, Esquire
>REED SMITH LLP
>500 One Liberty Place
>1650 Market Street
>Philadelphia, PA  19103-7301

Dated: June 10, 2011

>Respectfully submitted,
>
>/s/ William H. Pillsbury
>William H. Pillsbury, Esquire
>OFFIT KURMAN, P.A.
>1801 Market Street
>Suite 2300
>Philadelphia, PA  19103
>267-338-1321
>267-338-1335 (facsimile)
>
>*Attorneys for Non-Party*
>*Samuel M. Lohman, Esquire*