IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Civil Action No. 91-6785 |

# ORDER

AND NOW, this _____ day of _____, 2011, upon consideration of Defendant CIGNA Worldwide Insurance Company's Cross-Motion to Compel Discovery and the responses thereto, it is hereby:

ORDERED that the Motion to Compel Discovery is DENIED.

.

　　　　　　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　PAUL S. DIAMOND, JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Civil Action No. 91-6785 |

**NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S BRIEF IN OPPOSITION TO DEFENDANT CIGNA WORLDWIDE INSURANCE COMPANY'S CROSS-MOTION TO COMPEL DISCOVERY AND REPLY TO MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

Non-party Respondent, Samuel M. Lohman, Esquire ("Mr. Lohman"), by and through his counsel, hereby responds to Defendant Cigna Worldwide Insurance Company's ("CWW") Memorandum of Law in Opposition to Respondent Lohman's Motion for a Protective Order and in Support of CWW's Cross-Motion to Compel (the "Brief").

CWW's Brief ignores, as it must, that the claim against ACE Limited ("ACE"), which was grounded in the October 4, 2000 Liberian judgment in favor of Abi Jaoudi & Azar Trading Corporation ("the AJA claim"), has been irrevocably withdrawn by the Liberian Receiver of CWW's Liberian branch ("the Receiver") from the Receiver's indemnity enforcement action against ACE Limited in the Cayman Islands.[1]  Therefore, this Court's Anti-Suit Injunction is being honored by the Receiver and Mr. Lohman.  The subject and basis for the alleged contempt has been resolved.  CWW attempts to utilize the discovery process to achieve the improper

---

[1]  While twenty-two claims remain in the Receiver's indemnity enforcement action against ACE in the Cayman Islands, none of these claims were the subject of this Court's 2001 Anti-Enforcement of the AJA Liberian Judgment Injunction Order, nor the subject of the instant Emergency Motion for Contempt.

1

collateral purpose of furthering the litigation goals of ACE, a non-U.S. person, in an independent foreign-based action.  CWW, as ACE's surrogate, plows ahead, attempting to convince the Court to allow discovery, and, in the process, ignores or misstates the following:

- CWW ignores that Mr. Lohman filed a declaration (Docket No. 253) that fully satisfies all of CWW's requested relief as to Mr. Lohman.

- CWW ignores that the Receiver went so far as to withdraw the AJA claim in order to spare Mr. Lohman the ordeal of a potential Contempt proceeding by placing him in compliance with this Court's Anti-Injunction Order, despite bona fide sovereign immunity and jurisdictional defenses to the Emergency Motion for Contempt.

- CWW ignores that the sole remaining liabilities underpinning the Cayman Islands indemnity enforcement action involve twenty-two claims of the 'Group of 22' Liberian commercial enterprises (the "G-22") that have no connection to this Court or the 2001 Anti-Enforcement of AJA Liberian Judgment Injunction Order, which is ostensibly the basis for this civil contempt proceeding.

- CWW misstates that the AJA action in the Cayman Islands can be revived.  As discussed in Mr. Lohman's motion to find the relief satisfied (Docket No. 254), not only has the Receiver taken all actions to fully and completely dismiss the AJA claim, but has made representations to this Court stating that it has been dismissed and would be legally barred from reviving the claim.[2]

- CWW ignores the fact that, to the extent that there is any doubt regarding the termination of the AJA claim in the Cayman Islands, it exists solely because ACE has delayed the Case Management Conference in the Cayman Islands in order to help CWW mislead this Court by casting dispersions upon the Receiver's withdrawal of the AJA claim as somehow not genuine or permanent.  ACE's recent actions in the Caymans are yet further evidence that this contempt

---

[2]   CWW's attempt to claim this discovery is needed to ensure the withdrawal of the AJA claim in the Cayman Islands, or elsewhere, is a red herring.  The prior declaration of Mr. Lohman and the letter of the Receiver to this Court, as well as the declaration of Nicholas Dunne, counsel for the Receiver in the Cayman Islands, provide more than sufficient evidence to provide to any court that the Receiver has abandoned the AJA claim.  The only reason that CWW disingenuously protests that it may not be over, is because they hope to abuse the discovery process in this action to obtain information not otherwise available to ACE in the Cayman Action.  Certainly, CWW has propounded no evidence to the contrary from a Cayman Islands lawyer or otherwise.

proceeding is intended solely to achieve the improper collateral objective of helping ACE in derailing the Cayman Action.[3]

- CWW ignores that the Third Circuit, in vacating and remanding this matter, ordered that discovery, if considered necessary, be for the limited purpose of determining if Liberia is the "real party in interest" and for this Court to make a final determination on the issues related to sovereign immunity. See The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co., 391 Fed. Appx. 173, 179-80 (2010).

- CWW ignores that portion of the Third Circuit's remand order which asked this Court to give the US Department of State time to weigh in on the debate on sovereign immunity. The State Department did so on January 21, 2011, with the filing of a formal Notice asking this Court to answer a threshold question on sovereign immunity. CWW ignores the necessity to focus discovery on this issue. Instead, it wishes to find new defendants to sue.

- CWW ignores that, despite its continued reference to Mr. Lohman and others as contemnors, that there has never been a finding of contempt and, in fact, CWW has made no effort to have this Court make such a finding (despite CWW's claims that it has ample evidence of such contempt).

- CWW misstates that Mr. Lohman is "stonewalling" or "delaying" by asserting valid and binding legal and ethical requirements to protect his client's privileged and confidential information and documents. CWW opted to bring Mr. Lohman, a known attorney, into this action and pursue discovery against him and was aware that Mr. Lohman would be required to assert privilege.

- CWW misstates that Lohman has not asserted attorney client and work product privileges under United States law. Lohman clearly objected to each interrogatory and document request on the basis that they were seeking discovery of confidential attorney client communications under the applicable laws and rules of the United States of America (Hackell Decl. Ex. F.2, p. 3 and Ex. F.3, pg. 3).

---

[3] ACE, through its local Cayman Islands Counsel, failed to respond substantively for over a month to the Receiver's requests for availability for a Case Management Conference in which a determination would be made regarding the withdrawal of the AJA claim. See Doc. No. 263, Second Declaration of Nicholas Dunne ("Dunne Decl.") ¶¶ 3-6, and the correspondence between Nick Dunne and Maples Calder, attached as Exhibits "A", "B" and "C" thereto. As an apparent reason for the delay, counsel for ACE cited "recent development in the US litigation," which implies that ACE's delay in responding to our requests is tied to the discovery propounded in the instant matter. See Dunne Decl. Ex. B at June 15, 2011 e-mail from Jan Golaszewski to Nick Dunne. When ACE finally responded to the repeated requests (yesterday, June 27, 2011), they again refused to provide availability, and stated that they would consent to the dismissal of the AJA claim only upon certain conditions. See Dunne Decl. Ex. C.

3

The sole purpose provided by CWW for this discovery is to assist ACE in connection with its dispute against the Liberian Receiver in his efforts to seek indemnification from ACE in respect of the rights of twenty-two Liberian property and casualty policyholders of CWW, the G-22, who filed proofs of claim in the Receivership estate of CWW's Liberian branch.  <u>The dispute relating to these twenty-two proven liabilities was never litigated before any judge or jury in the Eastern District of Pennsylvania.  Thus, the G-22's claims have no relationship to this Court's Order of 2001 which is allegedly the basis for this contempt proceeding.</u>

CWW continues to insist that its discovery to identify other "contemnors" is appropriate, when in fact, no <u>potential</u> contemnors exist because the AJA claim has been withdrawn.  The discovery that Mr. Lohman raised objections to has nothing to do with the enforcement of this Court's Order, but is simply a device to obtain names to assist ACE in conducting its own onerous actions throughout the globe with the intent to circumvent or undermine the ongoing indemnity enforcement litigation in the Cayman Islands on the basis of the remaining G-22 proven liabilities.[4]  Mr. Lohman has replied fully and completely to discovery requests while mindful of his ethical and legal obligations.  CWW continues to use misstatements, *ad hominem* attacks, and outright falsehoods in an attempt to confuse this Court into ignoring the mandatory requirement of its conducting the balancing test that must be completed before a United States court can order a person to violate a foreign law in aid of a private litigant's discovery agenda.

CWW has now gone even further and seeks to force Mr. Lohman to violate his client's privileges not only under foreign law, but also under United States rules and laws.  Despite

---

[4]   Furthermore, the individuals and corporations whose identity ACE seeks are shareholders in the Nevis company, CC International Limited ("CCI"), and as such their liability for the actions of the corporation is limited under both Pennsylvania and Nevisian law.  See, e.g., Section 15 and 16 of the Nevis Business Corporation Ordinance, 1984, as amended 1999 attached to Doc. No. 261, 6/28/2011 Declaration of Samuel M. Lohman ("Lohman Decl."), filed simultaneously herewith, as Ex. "F" thereto.

CWW's attempt to characterize this Court's prior decisions, to date, there has not been any analysis of the interests of the United States and Switzerland or other foreign nations in the production of this discovery. Before the Court places Mr. Lohman into the untenable position of either following this Court's discovery order or adhering to his legal and ethical obligations, this Court should perform such an analysis to determine whether any United States interests exist which would outweigh the foreign interests in maintaining confidentiality and privilege against disclosure of confidential information and documentation held by attorneys in their jurisdiction. The law also requires the Court to be especially vigilant when conducting the necessary balancing test when a private litigant, in contrast to an arm of the U.S. Government, is inviting this Court to reject comity for applicable foreign laws and to force a lawyer located abroad to violate local penal laws prohibiting the disclosure of confidential client-related information (in contrast to, for instance, the same quandary being posed by a U.S. Grand Jury subpoena in a criminal case).[5]

---

[5] In Reporter's Note 9 to §442 <u>Restatement of the Law, Third, The Foreign Relations Law of the United States</u>, it is said under the caption "<u>Private Litigation</u>" that: "In balancing respective national interests in ruling on requests for discovery of documents located abroad, it has been suggested that requests by private parties, particularly private plaintiffs, should be scrutinized more carefully than requests initiated by the United States government. It has been argued that when the United States government convokes a grand jury, issues a civil investigative demand, or brings a law suit, a decision has already been made that the matter is important to the national interest, whether it concerns an antitrust violation, securities fraud, or tax evasion. In many instances, before such action is undertaken, it is subject to inter-agency review, and sometimes also to international consultation. Private litigants cannot be expected to have comparable concern for the national interest or for abiding by international undertakings. Accordingly, as this section provides, requests for discovery by private plaintiffs ought to come before the court at the outset, rather than being served directly on opposing parties."

I.   **ARGUMENT**

   A.   **Mr. Lohman's Privilege Objections Founded in Foreign Law Should Be Sustained.**

   **1. The Laws and Rules of Switzerland Governing Professional Secrecy**

Mr. Lohman has responded to discovery requests, and raised appropriate objections, *inter alia*, where the requests sought information and/or documents protected from disclosure by the laws and rules of Switzerland governing professional secrecy.[6]  Specifically, Mr. Lohman asserted Swiss privilege and redacted all information he received from his current or former clients in the course of representation of those clients.  The basis of this objection is set forth in further detail in correspondence dated June 17, 2011 from David A. Lawson ("Dr. Lawson"), one of the Swiss authorities whom Mr. Lohman contacted to determine whether the information requested is protected by Swiss confidentiality laws, and whether he is bound by those laws.  See Doc. No. 261, 6/28/2011 Declaration of Samuel M. Lohman ("Lohman Decl."), filed simultaneously herewith, ¶ 3 and Ex. "B" thereto.  In determining the applicability of those laws to the proceedings at bar, Dr. Lawson noted: "[o]ne of the primary legal duties on every lawyer practicing in Switzerland, whether locally qualified or from another jurisdiction, is the respect of *secret professionnel* (professional secrecy) . . . [which] requires the lawyer to hold safe **all** information about **every** client matter and **all** information or documents received from a client in the course of representation by the lawyer of the client."[7] (emphasis added).  Id.  In addition to

---

[6]  Further, the Federation of St. Christopher and Nevis, where the former Lohman client CC International Limited is domiciled, punishes violations of the similar Confidential Relationship Act (1985) CAP.21.02 by a criminal sanction that may include a term of imprisonment for up to twelve months.

[7]  Dr. Lawson debunks CWW's contention that this requirement does not extend to Mr. Lohman because he is a United States citizen, not barred in Switzerland:   "It is clearly established in Swiss law that the scope of this penal provision extends to all members of the Section, and indeed to all foreign lawyers who are established and practicing law in

6

seeking clarification from the relevant authorities in Switzerland, Mr. Lohman contacted his clients to determine if they would waive the relevant privilege and confidentiality requirements and they have declined to do so.  See Lohman Decl. ¶¶ 5-6, and Exs. D and E thereto.

### 2. The factors weigh in favor of not requiring Mr. Lohman to breach his ethical and legal duties.

In determining whether to overrule these objections in defiance of foreign law, the United States Supreme Court has instructed trial courts to weigh the following factors:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the requests would undermine important interests of the state where the information is located.

Aérospatiale, 482 U.S. at 544 n.8 (quoting what is now Restatement (Third) of Foreign Relations § 442(1)(c) (1987)); see also Devon Robotics v. Gaspar Deviedma, 2010 U.S. Dist. LEXIS 108573, at *11 (E.D. Pa. Oct. 8, 2010) (quoting the same language).

In conducting this balancing test, this court should both "take care to demonstrate special care . . . for any sovereign interest expressed by a foreign state" (Societe Nationale Industrielle Aérospatiale v. United States District Court for the District of Iowa, 482 U.S. 522, 544-546 (1987)), and should consider the legitimate fear of prosecution as "…it is hardly debatable that

---

Switzerland." Lohman Decl. Ex. B at 2 (emphasis added).  As support, Dr. Lawson cites the definition of "lawyer" (*"avocat"*) as used in Article 321 of the Swiss Penal Code, which is: "any physical person having juridical knowledge and the authorization to exercise professionally and in an independent manner the activity consisting of giving legal advice, of defending the interests of another and of appearing before the tribunals of a jurisdiction to assist or represent his client. The activity must be exercised in an independent manner or as an employee of a law firm (or an analogous structure). **It does not matter whether it is a lawyer of another canton or even of another country."** Id. quoting B. Corboz, Infractions under Swiss Law, Vol. II Staempfli Editions SA, Bern, 2002, p. 645 (emphasis added).

7

fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign" (Societe Internationale pour Participations Industrielles et Commerciales S.A. v. Rogers, 357 U.S. 197, 211 (1958)[8]).

A review of the Aérospatiale factors show they weigh heavily in favor of sustaining Mr. Lohman's objections on the basis of Swiss privilege. Simply put, there is no U.S. interest that weighs in favor of overruling Mr. Lohman's objections. The only U.S. interest that CWW cites is the United States interest "in enforcing its judgments."[9] See CWW Brief at 11. However, as explained above and contrary to CWW's persistent efforts to claim otherwise, NO ONE is pursuing the AJA claim in any proceeding anywhere in the world, and Mr. Lohman and the Receiver have disavowed any future action.

In contrast to the undeniable fact that there is no U.S. interest weighing in favor of overruling Mr. Lohman's objections, there are weighty considerations on the other end of the scale, which favor upholding Mr. Lohman's claims of privilege. While CWW ignores the

---

[8] See also In re Sealed Case, 825 F.2d 494, 498-99 (D.C. Cir. 1987) ("We have little doubt, for example, that our government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders. The legal expression of this widespread sentiment is found in basic principles of international comity.") Also, in Federal Maritime Commission v. DeSmedt, 366 F.2d 464 (2d Cir), *certiorari denied*, 385 US 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966), the Court of Appeals for the Second Circuit upheld a subpoena for shipping documents located in various foreign countries. When the foreign party later made the required showing of (i) the applicability of the prohibition; (ii) a good faith effort to secure a waiver; and (iii) the continued refusal of the foreign government concerned to permit disclosure, a motion to hold them in contempt was denied.

[9] It is noted that no person in the United States has an interest in this litigation. CWW, by its own admission, has paid no money out in legal fees in the instant proceedings and has effectively lent its name to be used as a shill or nominal plaintiff for ACE. CWW has, since July 2, 1999, had no interest in the underlying dispute, as ACE agreed to indemnify it for all of its Liberian related liabilities as a part of ACE's acquisition of CWW's worldwide property and casualty business.

8

interests of Switzerland, its interest in protecting individuals and corporations who seek legal advice from attorneys practicing within its borders is paramount. Mr. Lohman's clients had the reasonable expectation that Mr. Lohman would be bound and adhere to the laws under which he was retained, which involve a broad mandate for an attorney to abide by confidentiality as to all matters learned by the attorney in the course and scope of this representation. This mandate clearly applies to the information sought in the interrogatories, which Mr. Lohman has objected to, and to the documents that are indentified in Mr. Lohman's privilege logs. See Doc. No. 262, Expert Declaration of Gilles Crettol, of Monfrini Crettol & Associes ("Crettol Decl."), filed simultaneously herewith. Specifically, Gilles Crettol, an expert retained by Mr. Lohman for guidance as to whether CWW's specific requests fell within the protections provided by Swiss law, has opined that "[a]ll of the information demanded from Mr. Lohman by the Interrogatories and all the documents demanded from Mr. Lohman by the Requests for Production of Documents are '*confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession*' in the meaning of article 321 para. 1 of the Swiss Penal Code." See Crettol Decl. at pg. 24.

     Switzerland's confidentiality laws are reflective of a strong national interest in maintaining the privacy and confidentiality in all professional dealings, including dealings with attorneys. Consequently, the penalties include the potential for fines and imprisonment, in addition to civil liability. See, e.g., Lohman Decl. Ex. "C", Expert Report of Dr. Alain B. Levy, at ¶3. Mr. Crettol opined, *inter alia*, that, "if Mr. Lohman should disclose any of the information demanded from him by the Interrogatories or any of the documents demanded from him by the Requests for Production of Documents, he would breach article 321 of the Swiss Penal Code" and that if "any of his clients whose secrets would be disclosed file a criminal complaint within

three months from learning of the offence, Mr. Lohman would be prosecuted in Switzerland by the Attorney General of Geneva and would be convicted for breach of professional secrecy" and "sentenced to a prison term not exceeding three years or a monetary penalty." Crettol Decl. at pg. 25.[10] While CWW tries to discredit any potential for criminal and civil consequences, this is not a mere rhetorical exercise--these are not the trite, meaningless laws of a country half way around the world to Mr. Lohman. Switzerland is his home base, where he has lived as a permanent resident and practiced law for twenty-four years. *See* prior 12/15/2008 affidavit of Samuel Lohman, attached as Ex. 1 to doc. no. 189 at ¶¶1, 5-8.[11]

      Finally, the disproportion between the relevance of the information sought by CWW in this action and the irreparable harm to Mr. Lohman, his clients, and the interests of Switzerland in the event of compelled disclosure is manifest. The documents and information requested have absolutely no relevance to a determination of whether Mr. Lohman should be held in contempt, but, as explained above, merely support CWW's attempt to achieve the improper collateral objective of funneling confidential and legally privileged information to ACE for other claims unrelated to this proceeding. In a long litany of outrageous actions on the part of CWW (acting as a nominal plaintiff for ACE), it has now become clear that ACE seeks to use this Court to gain access to a large volume of confidential material that it could never get through the rules of discovery in the Grand Court of the Cayman Islands (for example, pre-trial depositions of witnesses are not available to litigants in the Cayman Islands; the Cayman litigation privilege is

---

[10]    This is in addition to sanctions and fines by the Council of the Geneva Bar Association any of admonition, warning, blame or censorship (Crettol Decl. pg. 26) and civil liability on the basis of 97 and 398 of the Swiss Code of Obligations (*id.* at 27).

[11]    Mr. Lohman's strong ties to the country of Switzerland and his respect for and fidelity to his obligations under Swiss laws regarding confidentiality are equaled only by Mr. Lohman's ties and respect for the United States, where his family continues to reside.

broad; and the Cayman Islands has a very strong state interest in upholding confidentiality laws[12]). Therefore, in light of this disparity, Mr. Lohman's objections on the basis of the laws of Switzerland should be sustained.

### B. There Is No Basis To Deprive Mr. Lohman of the U.S. Attorney-Client or Attorney Work Product Privileges.

In addition to the objections raised on the basis of the Swiss confidentiality laws to which Mr. Lohman is bound, Mr. Lohman raised objections to the interrogatories and document requests that requested information and documents, many of which are protected by the attorney client privilege and work product doctrine. Contrary to CWW's misrepresentations that Mr. Lohman has not asserted attorney client and work product privileges under any United States federal or state law, Mr. Lohman clearly objected to each interrogatory and document request at the outset of his Response on the basis that CWW was seeking discovery of confidential attorney client communications under the laws and rules of the United States of America (Hackell Decl. Ex. F.2, p. 3 and Ex. F.3, pg. 3).  In addition, while CWW misleadingly attempts to couch the objections in Mr. Lohman's privilege log as based solely on foreign law, a plain reading of the objection clearly claims foreign law privileges, <u>in addition</u> to asserting that the "document is of a confidential and privileged nature with respect to pending or contemplated litigation."

These objections are entirely appropriate. The work product doctrine protects "the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation," with the aim of promoting the adversary system "by enabling attorneys to prepare cases without fear that their work product will be used against their clients." <u>Westinghouse Elec. Corp. v. Republic of Phil</u>, 951 F.2d 1414, 1428 (3d Cir. 1991). The doctrine is expressed in Federal Rule of Civil

---

[12]   As more fully discussed in Mr. Lohman's Motion for a Protective Order (docket no. 248, pg. 8-9), the Cayman <u>Confidential Relationships (Preservation) Law</u> (1985) is very similar to the St Christopher and Nevis <u>Confidential Relationships Act</u>.

11

Procedure 26(b)(3), providing for the protection of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

CC International Limited ("CCI") is a Nevis company, which was formed for the specific purpose of holding the right to receive any proceeds arising under the G-22 and AJA claims against CWW. All of the documents and communications between CCI, AJA, the G-22 and the Receiver are protected by the common interest privilege in respect of the work product relevant to the noted litigation. Therefore, the documents in the privilege log in response to Request #4 that CWW identifies as having "no conceivable basis" are on their face work product, because all documents relating to the formation and operation of CCI (and its relationships with AJA, the G-22, and the Receiver) were prepared in anticipation of insolvency enforcement litigation against CWW in Liberia and the indemnity enforcement litigation against ACE in the Cayman Islands – indeed that was the sole purpose of the preparation of these documents. See Sharp v. Gov't of V.I., 77 Fed.Appx. 82, 85 (3d Cir. 2003) (Materials can be fairly identified as prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.")[13]

Furthermore, attorney client privilege[14] affords protection to the identity of parties other than CCI with an interest in the AJA recovery. While the identity of the client does not usually

---

[13] Similarly, most of the documents included in the log, including *inter alia*, the "Memorandum of Understanding", the "Strictly Privileged and Confidential Letter from the Law Firms to Commissioner Foday L. Sesay", and the Power of Attorney, detail the confidential plan to recover assets linked to the Liberian Branch of CWW, and are a virtual roadmap for litigation against ACE, prepared in anticipation of the current litigation that is now wholly unrelated to this Court's Anti-Enforcement of Liberian Judgment Injunction.

[14] It is well settled that where, as here, a federal court sits in diversity jurisdiction, the law of privilege is substantive, and not procedural. Kelly v. Ford Motor Co., 110 F.3d 954, 965 (3d

come within the attorney client privilege, the privilege will nevertheless apply where "identifying the client amounts to full disclosure of the communication." See e.g. United States v. Liebman, 742 F.2d 807 (3d. Cir. 1984). Here, the undisclosed individuals sought legal counsel and formed CCI as a joint enterprise between certain Liberian policyholders of CWW and certain confidential investors for the purposes referenced above, and thus the disclosure of their identities would constitute disclosure of the very substance for which these individuals sought counsel.

Moreover, the "crime fraud" exception is inapplicable as CWW has not and cannot meet its burden in establishing prima facie evidence that a crime or a fraud has been committed. CWW's contention that baseless litigation could constitute a basis for application of the crime fraud exception is rejected, and it is respectfully submitted that the case law CWW cites does not support its averments in this regard. [15]

More pointedly, there is absolutely no evidence to support the accusation that Mr. Lohman engaged in "fraudulent litigation," or otherwise pursued litigation without a factual

---

Cir. Pa. 1997) (abrogated on other grounds by Mohawk Indus. v. Carpenter, 130 S. Ct. 599 (2009)). Of note, in 1995, this Court did not find a conflict between the laws of Pennsylvania and Liberia when interpreting the insurance policies at issue, and thus no analysis of what substantive law applies has been made. See Younis Bros. & Co. v. Cigna Worldwide Ins. Co., 899 F. Supp. 1385 (E.D. Pa. 1995). It is respectfully submitted that under these facts, where a non-Party respondent against whom discovery is sought raises objections on the basis of attorney client privilege and privacy laws, this Court should apply the substantive law of Switzerland, the place where legal counsel was sought and with the only remaining interest in the outcome of these proceedings, as discussed above.

[15] The two cases cited by CWW are wholly inapplicable. In In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032 (2d Cir. N.Y. 1984), the Second Circuit held that the government presented a prima facie showing of fraud where the intervenor had sought legal counsel for the purpose of making a fraudulent conveyance in an effort to shield assets. No such allegations are present here. In Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 536 (N.D. Ill. 2003), the Northern District of Illinois held that even a showing of inequitable conduct before the Patent office did not rise to a showing that litigation was "fraudulently being pursued despite little or no factual basis."

13

basis.  Here, two courts of competent jurisdiction issued competing judgments based upon the law of each respective jurisdiction.  While Judge O'Neill granted judgment in favor of CWW not withstanding the jury's verdict in favor of AJA and issued an Anti Injunction Order,  the Court in Liberia issued a lengthy opinion in which it held that AJA "had an absolute right to secure enforcement of the obligations of these insurance contracts in a Liberian court [under] Insurance Law, Section 5.12(2) [and . . . ] that a judgment notwithstanding a verdict . . . is not recognized by Liberian law."  See Opinion of Justice Kaba of the Liberian Civil Law Court, dated April 2, 2002, pg. 3-4, attached to Lohman Decl. as Ex. "H".  Thereafter, Mr. Lohman, proceeding in good faith based on the Liberian Order of Court, and on the advice of counsel (see Lohman Decl. ¶¶ 8 - 18), contacted CWW in full candor regarding the Receiver's intention to enforce the judgment of the Liberian court.  Far from rising to the level of a crime, CWW's own counsel referred to the circumstances of two competing judgments as constituting an "agree[ment] to disagree."  See Lohman Decl. Ex. "I", August 30, 2006 letter from Richard J. Bortnick to Samuel M. Lohman.  It is respectfully submitted that CWW's own words betray the fallacy that the "crime fraud" exception somehow applies to this situation.

## II. CONCLUSION

For the foregoing reasons, CWW's Motion should be denied, this Court should issue an Order granting Mr. Lohman's Protective Order and upholding Mr. Lohman's objections on the basis of the rules and law of Switzerland and the United States.

Dated: June 28, 2011

                                        Respectfully submitted,

                                        /s/ Mark E. Gottlieb
                                        Mark E. Gottlieb, Esquire
                                        William H. Pillsbury, Esquire
                                        OFFIT KURMAN, P.A.
                                        1801 Market Street
                                        Suite 2300
                                        Philadelphia, PA  19103
                                        267-338-1321
                                        267-338-1335 (facsimile)

                                        *Attorneys for Non-Party*
                                        *Samuel M. Lohman, Esquire*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Non-Party Respondent Samuel M. Lohman, Esquire's Brief In Opposition to Defendant CIGNA Worldwide Insurance Company's Memorandum of Law in Opposition to Mr. Lohman's Motion for a Protective Order and in Support of CWW's Cross-Motion to Compel was filed electronically, which constitutes service on all parties, and e-mailed on this date to:

> Richard J. Bortnick, Esquire
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA  19103
>
> Donald W. Hawthorne, Esquire
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY  10022
>
> Henry F. Reichner, Esquire
> REED SMITH LLP
> 500 One Liberty Place
> 1650 Market Street
> Philadelphia, PA  19103-7301

Dated:  June 28, 2011

> Respectfully submitted,
>
> /s/ Mark E. Gottlieb
> Mark E. Gottlieb, Esquire
> OFFIT KURMAN, P.A.
> 1801 Market Street
> Suite 2300
> Philadelphia, PA  19103
> 267-338-1321
> 267-338-1335 (facsimile)
>
> *Attorneys for Non-Party*
> *Samuel M. Lohman, Esquire*