**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION, | Civil Action No. 91-6785 |
| Plaintiff, | |
| v. | |
| CIGNA WORLDWIDE INSURANCE COMPANY, | |
| Defendant. | |

**NON-PARTY RESPONDENT SAMUEL M. LOHMAN, ESQUIRE'S RESPONSE TO**
**THE GOVERNMENT'S STATEMENT OF INTEREST**

Non-party Respondent, Samuel M. Lohman, Esquire ("Mr. Lohman"), by and through his

counsel, pursuant to the Court's Order of December 6, 2011, hereby submits this Response to the

Government's Statement of Interest (Doc. No. 290).  Based on the Government's Statement of

Interest and the undisputed facts concerning Liberian law in this case, this Court should dismiss

CIGNA Worldwide Insurance Company's ("CWW") Emergency Motion for Contempt and all

pending motions against Mr. Lohman, as well as Foday Sesay and Josie Senesie, the current and

former Commissioners of Insurance of Liberia and the Court-Appointed Receivers over the

assets, undertakings, and liabilities of the insolvent estate of the Liberian branch of CWW

(collectively, the "Commissioners" or "Receivers"), who are also non-party respondents in this

matter.[1]  As Mr. Lohman and the Commissioners have consistently argued, the Commissioners,

as officials of Liberia acting in their official capacity, are entitled to immunity under the doctrine

of common-law foreign sovereign immunity, and Mr. Lohman, as an attorney and agent to the

officials, is entitled to the same immunity.  The Statement of Interest by the United States of

---

[1] Mr. Lohman herein incorporates by reference the Commissioners' Pro Se Response to the Government's Statement of Interest.

America has confirmed this argument and further proceedings would be a waste of judicial resources and an unfair burden on Mr. Lohman, as well as the Commissioners and the Republic of Liberia.[2]

## I.   INTRODUCTION

On December 5, 2011, the United States of America, through the Department of Justice, issued a Statement of Interest regarding the question of sovereign immunity for the Commissioners and Mr. Lohman.  In this Statement of Interest, the Executive Branch suggests that the Commissioners "are immune to suit to the extent the Court finds that, under Liberian law, they acted in their official capacities when they took the acts that are the basis for Defendant's contempt motion against them."  (Gov't Statement of Interest at 1.)  The Executive Branch further clarified that immunity should exist unless this Court determines that, under Liberian law, the Commissioners were acting "solely in their capacities as representatives of the estate and thus outside of their official capacity."  (Gov't Statement of Interest at 14.)  The record in this case demonstrates that under Liberian law, the Commissioners were necessarily acting in their official capacities as the Commissioners of Insurance of Liberia and never "solely in their capacities as representatives of the estate."  As such, the Commissioners should be found to be immune from suit and be dismissed from this matter.

Similarly, the Executive Branch recommended that Mr. Lohman is entitled to the same immunity as the Commissioners "[t]o the extent the claims against [Mr. Lohman] arise from his conduct on behalf of" the Commissioners.  (Gov't Statement of Interest at 1-2.)  Furthermore, "any immunity to which Lohman is entitled derives from and cannot exceed the immunity to

---

[2] In filing this Response, Mr. Lohman is not waiving his previously made procedural arguments related to personal jurisdiction and lack of service.  Mr. Lohman reserves the right to challenge the Court's earlier decision on these issues on appeal if necessary.  Furthermore, Mr. Lohman requests that, in light of the statements by the Executive Branch regarding personal jurisdiction, this Court reconsider its previous finding of personal jurisdiction.  (See Gov't Statement of Interest at 15-16 n.8.)

which [the Commissioners are] entitled for such acts as were taken in his official capacity."
(Gov't Statement of Interest at 15.)  As discussed above and in more detail below, the
Commissioners are entitled to immunity from suit.  Therefore, Mr. Lohman is also entitled to
immunity from suit for any and all actions taken as counsel for the Commissioners, which would
encompass all actions taken from the Order of appointment of the Receiver on April 24, 2007
and concurrent retention of Mr. Lohman as counsel to the present date.  Given that the primary
claim for contempt is the prosecution of the Cayman Islands litigation, which was not begun
until August 2008, Mr. Lohman should be found immune from suit and be dismissed from this
matter.

Finally, while the Executive Branch deferred to this Court for the determination of the
factual question at issue, it did note that "there is at least some evidence in the current record
bearing on this question."  (Gov't Statement of Interest at 14.)  As discussed in depth below, the
"evidence in the current record bearing on this question" all supports the conclusion that the
Commissioners were always acting in their official capacities and never "solely in their
capacities as representatives of the estate and thus outside of their official capacity."  As such,
there is no basis for this Court to allow discovery and not to make a determination based on the
current, uncontroverted record demonstrating that the Commissioners were acting in their official
capacity.

## II.    RELEVANT FACTUAL BACKGROUND

The Executive Branch in its Statement of Interest provides a thorough Factual and
Procedural Background to this matter.  (See Gov't Statement of Interest at 2-11.)  In order to
avoid needless repetition, Mr. Lohman incorporates by reference the Government's Statement of
Interest's "Factual and Procedural Background" and this Brief will focus on the issue before this
Court, namely whether the Commissioners acted "solely in their capacities as representatives of

the estate and thus outside of their official capacity", as well as Mr. Lohman's involvement in this matter.

In 2007, the Minister of Justice of Liberia petitioned the Liberian court for an order appointing the Commissioner of Insurance, at that time Mr. Senesie, as receiver over the assets and affairs of CWW's Liberian branch.  (See Gov't Statement of Interest at 3-4.)  Specifically, this request was made pursuant to Section 5.13 of the Insurance Law of Liberia.  Section 5.13 states:

> The Minister of Justice, at the request of the Commissioner [of Insurance], may apply to a court of competent jurisdiction on notice for an order appointing the Commissioner as a receiver and directing him to liquidate the business of a domestic insurer or the Liberian branch of an alien insurer upon any of the grounds specified . . .

(See Liberian Insurance Law (1973) § 5.13 (a copy of the relevant sections of the Liberian Insurance Law are attached hereto as Exhibit A).)

On April 24, 2007, the Liberian court granted the application of the Minister of Justice and appointed Commissioner Senesie to be the Receiver over the assets and affairs of CWW's Liberian branch.  (A copy of the April 24, 2007 Order is attached hereto as Exhibit B.)  This Order appointed the Commissioner of Insurance, at that time Mr. Senesie, "receiver, without security, of all the Debtor's assets, undertakings and properties of every nature and kind whatsoever, provided that same shall be limited to assets, undertakings and properties or deriving from the Liberian Branch of the Debtor including all proceeds thereof."  (April 24, 2007 Order at ¶2.)  The Liberian court outlined the powers of the Commissioner as Receiver, including the authority "to apply to . . . any foreign court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this order, or to institute or maintain any legal or arbitral proceedings abroad."  (April 24, 2007 Order at ¶21.)

4

On April 24, 2007, Commissioner Senesie retained legal counsel to assist in his role as Receiver, including Mr. Lohman.  (Aff. of Samuel M. Lohman, Esq. dated December 14, 2008 ¶19 (Ex. 1 to Lohman's Opp. to CWW's Emerg. Mot. for Contempt (Dkt. 189-3)).)  On July 9, 2008, Commissioner Senesie commenced proceedings before the Grand Court of the Cayman Islands in the name of CWW against ACE Limited (the "Cayman Action").  In the Cayman Action, which is still pending, Commissioner Senesie's successor is seeking indemnification and payment of the Liberian liabilities of CWW on its behalf from ACE Limited.  ACE Limited acquired CWW's Liberian assets and assumed its liabilities, pursuant to the Bill of Sale, Assignment and Assumption Agreement dated July 2, 1999 and the indemnification provisions in the Acquisition Agreement dated January 11, 1999.  Mr. Lohman is part of the legal team representing the Commissioners in the Cayman Action.

On November 18, 2008, CWW filed its Motion for Contempt against, amongst others, Mr. Lohman and Commissioner Senesie seeking an order finding Mr. Lohman, as well as Commissioner Senesie and others, liable for aiding and abetting contempt of this Court's Anti-Suit Injunction order dated April 10, 2001.  (See generally CWW's Emerg. Mot. for Contempt (Dkt. 174).)  Specifically, CWW alleges that Mr. Lohman aided and abetted Plaintiff The Abi Jaoudi and Azar Trading Corporation's ("AJA") violation of the April 10, 2001 order by representing Commissioner Senesie in the Cayman Action.  (See CWW's Emerg. Mot. for Contempt at 20-23.)  In addition, CWW asserts that Mr. Lohman also aided and abetted AJA when he, while representing AJA prior to being retained by Commissioner Senesie, sent two letters to CWW demanding payment of the amounts owed under Liberian law.  (See CWW's Emerg. Mot. for Contempt at 20-23.)

Commissioner Senesie and Mr. Lohman opposed the Motion for Contempt on procedural grounds.  Specifically, Commissioner Senesie and Mr. Lohman argued that this Court lacked personal jurisdiction, that the non-party respondents were entitled to sovereign immunity, and that service was improper.  (See generally Lohman's Mem. of Law in Opp. to CWW's Mot. for Contempt (Dkt. 189) and Comm. Senesie's Opp. to CWW's Mot. for Contempt (Dkt. 190).) This Court rejected these arguments.  (See Jan. 12, 2009 Order (Dkt. 200).)  Commissioner Senesie and Mr. Lohman appealed the decision.[3]

On February 2, 2009, Mr. Lohman filed a substantive response to CWW's Motion for Contempt.  (See generally Lohman's Subsantive Mem. of Law in Opp. to CWW's Mot. for Contempt (Dkt. 209).)  To date, this Court has not addressed the substantive defenses raised by Mr. Lohman.

In October 2009, while the appeal was pending, Commissioner Senesie retired as Insurance Commissioner of Liberia and was succeeded by Commissioner Sesay, the current Commissioner of Insurance and current Receiver.  (See Liberian Ct. Order dated February 16, 2010.  A copy of the February 16, 2010 Order is attached hereto as Exhibit C.)  In this Order, the Liberian court noted that the Commissioner of Insurance had "statutory responsibility and powers" as the Receiver, pursuant to Liberian insurance law section 5.13.  (See Feb. 16, 2010 Order (Ex. C) at ¶2.)  Furthermore, of significance here, the Liberian court noted that Commissioner Sesay "**by virtue of his succession to the statutory office of Commissioner of Insurance of Liberia, succeeded Mr. Senesie automatically as Receiver of the Debtor** as of the moment in time when he, the Movant, was appointed as Commissioner of Insurance on October 12, 2009.  (Feb. 16, 2010 Order (Ex. C) at ¶3 (emphasis added).)

---

[3] This Court is familiar with the results of the appeal and the numerous filings following the remand and, therefore, Mr. Lohman will not discuss those filings as they are not directly related to the sole issue before this Court.

On September 22, 2010, Commissioner Sesay sought to substitute himself for retired Commissioner Senesie in this action.  (See Suggestion to Substitute Name of Resp. (Dkt. 217).) This substitution was partially opposed by CWW, which is seeking to continue the action against both of the Commissioners (despite Mr. Senesie having retired from his position as Commissioner of Insurance of Liberia and thus having no involvement in this matter).  (See Def.'s Mem. in Response to Court's Aug. 19, 2011 Order at 2 n.1 (Dkt. 275).)  Specifically, CWW asserts that its claims against former Commissioner Senesie were "in both his representative capacity and his personal capacity."  Def.'s Mem. in Response to Court's Aug. 19, 2011 Order at 2 n.1.)  Furthermore, CWW asserts that it has not sought relief against Commissioner Sesay in his personal capacity, but reserves the right to do so.  (Def.'s Mem. in Response to Court's Aug. 19, 2011 Order at 2 n.1.)

Throughout this litigation, the non-party Respondents and the Republic of Liberia have made clear that pursuant to Liberian law, the Liberian Civil Law Court appointed the Liberian Commissioner of Insurance as Receiver over the assets, liabilities and affairs of CWW's Liberian Branch.  Thus, when they took the actions which are the basis for the instant contempt motion, the Commissioners were acting in their official capacities and fulfilling their official duties.  This is highlighted by both the order confirming the succession of Commissioner Senesie as Receiver by Commissioner Sesay and the original order appointing Commissioner Senesie as Receiver.

In addition, and by way of example, in March 2011, the Embassy of the Republic of Liberia sent a Note Verbale to the United States Department of State, which states, in relevant part, that the Republic of Liberia confirms it is not the real party in interest, but that "one of its former State officials and his current successor in that office (and one of their agents) have been sued personally and in respect of activities undertaken by them in furtherance of their Liberian

statutory and Court-mandated duties." (Note Verbale dated March 2011 at 1 (emphasis added). A copy of the Note Verbale is attached hereto as Exhibit D.)

In another document from the Embassy of the Republic of Liberia to the United States Department of State, on August 8, 2011, the Republic of Liberia noted that the Commissioners were "at all times relevant to the Proceedings . . . acting in their respective official capacities and fulfilling their official duties as Officers of the Government of Liberia." (See August 8, 2011 note from Republic of Liberia at 1 (emphasis added). A copy of the August 8, 2011 note is attached hereto as Exhibit E.)

On August 18, 2011, the Liberian court declared and confirmed the decisions of Commissioner Sesay in withdrawing the Liberian judgment in favor of AJA from the quantum of damages sought from ACE Limited in the Cayman Action, and also confirmed that the decisions of both the current and former Commissioners to not "attorn to [the] jurisdiction of [this Court] were directed and instructed by the Government of the Republic of Liberia." (See Liberian Court Order dated August 18, 2011 at b, d, e, f, and i.   A copy of the August 18, 2011 Order is attached hereto as Exhibit F.)

## III.   DISCUSSION

### A.   The Commissioners Have Acted In Their Official Capacities And Are Entitled To Immunity From Suit, Pursuant To The Government's Statement Of Interest.

In its December 5, 2011 Statement of Interest, the United States Government suggests that the Commissioners are entitled to immunity unless this Court finds that the Commissioners acted, under Liberian law, "solely in their capacities as representatives of the estate and thus outside of their official capacities." (Gov't Statement of Interest at 14.) In determining whether immunity over a foreign sovereign is appropriate, courts should defer to the Executive Branch's suggestion of immunity. (See Gov't Statement of Interest at 11 (citing Republic of Mexico v.

Hoffman, 324 U.S. 30, 34 (1945).)  As noted by the Executive Branch in its Statement of Interest, this deference is rooted in the Constitutional separation of powers and "it is . . . not for the courts to deny an immunity which our government has seen fit to allow."  (See Gov't Statement of Interest at 12 (citing Hoffman, 324 U.S. at 35).)  In the recent Supreme Court decision, Samantar v. Yousuf, 130 S. Ct. 2278 (2010), the Supreme Court found that the determination of immunity of individual foreign officials remains with the Executive Branch and there is "no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determinations regarding individual official capacity."  130 S. Ct. at 2291.

In light of this Constitutionally-grounded deference, the sole remaining question before this Court is whether, under Liberian law, the Commissioners acted "solely in their capacities as representatives of the estate and thus outside of their official capacities."  Frankly, to ask the question is to answer it: Liberian law, as reflected by the relevant statutory law of Liberia manifestly shows that the Commissioners have acted in their official capacities.  This has been confirmed in the record by the Civil Law Court of Liberia appointing the Commissioner of Insurance of Liberia as Receiver.  This is further highlighted by the Civil Law Court of Liberia noting that upon Commissioner Sesay's succession to the office of Commissioner of Insurance, Commissioner Sesay, as successor to Commissioner Senesie, "automatically" assumed the duties and responsibilities as Receiver of the CWW Liberian branch.  The Government of Liberia has further confirmed this official capacity in its diplomatic notes to the United States Department of State.  All of which was reviewed and not disputed by the Executive Branch of the United States of America.[4]

---

[4] It should be noted that CWW by and through its counsel had an opportunity to present its viewpoint to the Executive Branch through filings to the Department of State, which Mr. Lohman has not been privy to.

Furthermore, a review of the controlling law, the Liberian Insurance Law, further demonstrates that the actions of the Commissioners were official actions.  First, only the Commissioner of Insurance of Liberia can be appointed a receiver of a foreign insurance company under Liberian law.  See Liberian Ins. Law (Ex. A) §5.13.  Similarly, once appointed the Commissioner "shall have all power, authority and title necessary to obtain and liquidate the available assets and property of the delinquent insurer, but shall administer such assets and the proceeds therefrom under the court's supervision and control."  Liberian Ins. Law (Ex. A) §5.13(3).  Under the controlling Liberian law, the actions of the Commissioner as "Receiver" are indistinguishable from his official capacity as Commissioner of Insurance.  All of the actions taken by the Commissioners in this case were pursuant to this statutory and Court-appointed powers reserved exclusively for the Commissioner of Insurance and, therefore, all of the Commissioners' actions as Receivers were taken in their official capacity as the Commissioner of Insurance of Liberia.  Accordingly, the Commissioners are entitled to immunity from suit.

Moreover, as discussed above, the undisputed facts in this case demonstrate that the Commissioners have consistently and continually acted in their official capacity in their efforts to enforce the various Liberian Court orders and in prosecuting the Cayman Action.  (See supra Section II.)  Repeatedly, the Liberian Courts and the government of Liberia, who are best suited to speak on Liberian law, have stated to both this Court and the United States Department of State that the Commissioners were and are acting in an official capacity.  In the factual summary above, Mr. Lohman outlines some of the numerous examples of this consistent position.  A full review of the lengthy and comprehensive record demonstrates that there is no dispute that the Commissioners have consistently acted as officials of the Republic of Liberia are required to act under Liberian law.

10

**B.     Mr. Lohman Is Entitled To The Same Immunity As The Commissioners For His Actions.**

As discussed above, the Commissioners are entitled to immunity from suit, Mr. Lohman, as their attorney and agent, is entitled to the same immunity from suit.  Furthermore, CWW's claim for contempt focuses on the continued Cayman Action.  While CWW does reference earlier actions, it is clear from their initial and ongoing pleadings (as well as their far-reaching discovery requests) that the focus of this contempt proceeding is on blocking the prosecution by the Commissioners and their legal team, including Mr. Lohman, of the Cayman Action.

The Executive Branch explicitly states that "[t]o the extent the claims against Respondent Samuel Lohman arise from his conduct on behalf of [the Commissioners] when [they were] acting as a court-appointed receiver, any immunity to which Lohman is entitled derives from and cannot exceed the immunity to which Senesie is entitled for such acts as were taken in his official capacity."  (Gov't Statement of Interest at 1-2.)  As such, because the Commissioners were acting in their official capacity, they are entitled to full immunity from suit and Mr. Lohman is likewise entitled to such immunity for his actions taken after April 24, 2007, when he was retained by Commissioner Senesie.

To the extent CWW seeks a finding of contempt for Mr. Lohman's actions taken prior to April 24, 2007, there is no reasonable basis for such a finding.  Initially, the alleged contemptuous actions took place in 2006, two years prior to the filing of the Motion for Contempt.  Any claim for contempt was waived when CWW chose to respond mildly to Mr. Lohman's letters, noting that that "the best we can accomplish is to agree to disagree as to both the factual underpinnings of and legal matters presented by your clients' alleged claims." (August 30, 2006 letter from Richard J. Bortnick, Esquire to Mr. Lohman.  A copy of the August 30, 2006 letter is attached hereto as Exhibit G.)  If CWW truly viewed those acts as

11

contemptuous, it should have filed a Motion for Contempt at that time and allowed Mr. Lohman

an opportunity to cure the alleged contempt contemporaneously.[5]

CWW's own requested relief demonstrates that, while it references those letters in its

Memorandum of Law in Support of its Motion to Compel, it is not those letters that are the basis

for CWW seeking a finding of contempt.  In its Motion to Compel, it is the end of the Cayman

Action and an agreement not to seek to enforce the Liberian judgment in favor of AJA in other

courts that is sought.  As such, CWW's Motion to Contempt is intended to find Mr. Lohman in

contempt for actions taken as attorney for the Commissioners and not actions taken prior to that

date.

In addition, Mr. Lohman hereby incorporates his Substantive Memorandum of Law in

Opposition to CWW's Motion to Compel, which was filed on February 2, 2009, and notes that a

finding of contempt is improper in this case.

> ### C.    This Court Should Dismiss All Discovery Motions And Orders.

Regardless of the Court's determination on the ultimate issue, there is simply no reason

for discovery in this case.  First, as discussed above, the Commissioners and Mr. Lohman are

entitled to immunity from suit, which would include discovery.  Second, even if not immune, the

existing discovery requests have nothing to do with the sole issue before this Court, which is a

question of Liberian law and whether the actions of the Commissioners were performed in their

official capacities.  CWW's far-reaching discovery requests, seeking names of investors and

other information, provides no relevant information on that question.  The Executive Branch has

clarified and confirmed that an inquiry into whether Liberia is the "real party in interest" in this

---

[5] Moreover, the cost of responding to Mr. Lohman's impugned correspondence incurred by ACE Limited (as the party responsible for all expenses being incurred in these proceedings), must have been minimal.

case has been made moot by the positions taken by CWW and non-party Respondents in

accepting that it is not.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, Mr. Lohman should be dismissed from this matter and

all pending motions against him denied.

Dated: December 21, 2011

Respectfully submitted,

/s/ William H. Pillsbury
Mark E. Gottlieb, Esquire
William H. Pillsbury, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA  19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Non-Party*
*Samuel M. Lohman, Esquire*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Non-Party Respondent

Samuel M. Lohman, Esquire's Response to the Government's Statement of Interest was filed

electronically, which constitutes service on all parties, and e-mailed on this date to:

> Richard J. Bortnick, Esquire
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA  19103
>
> Donald W. Hawthorne, Esquire
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY  10022
>
> Henry F. Reichner, Esquire
> REED SMITH LLP
> 500 One Liberty Place
> 1650 Market Street
> Philadelphia, PA  19103-7301

Dated: December 21, 2011

> Respectfully submitted,
>
>
> /s/ William H. Pillsbury
> Mark E. Gottlieb, Esquire
> OFFIT KURMAN, P.A.
> 1801 Market Street
> Suite 2300
> Philadelphia, PA  19103
> 267-338-1321
> 267-338-1335 (facsimile)
>
> *Attorneys for Non-Party*
> *Samuel M. Lohman, Esquire*