Stephen A. Cozen
Richard J. Bortnick
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

Donald Francis Donovan
Donald W. Hawthorne
Matthew S. Hackell
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
(212) 909-6000

*Attorneys for Defendant CIGNA Worldwide Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------------------x
                                                                       :
THE ABI JAOUDI AND AZAR TRADING CORP.,                                 :
                                                                       :
                                   Plaintiff,                          :
                                                                       :
     -against-                                                         :  Civil Action No. 91-6785
                                                                       :
CIGNA WORLDWIDE INS. CO.,                                              :
                                                                       :
                                   Defendant.                          :
                                                                       :
-----------------------------------------------------------------------X

**REPLY OF CIGNA WORLDWIDE INSURANCE COMPANY TO RESPONDENTS SENESIE AND SESAY'S "PRO SE" MEMORANDUM OF LAW**

In its Response to the Statement of Interest of the United States of America of December 21, 2011 ("CWW Response") *(Doc. 293)*, Cigna Worldwide Insurance Company (CWW) explained that (i) the Statement of Interest provides no reason for the Court to defer discovery from Lohman and no reason for the Court to permit Senesie and Sesay to participate in these jurisdictional proceedings without submitting to

jurisdictional discovery, as the Third Circuit requires; (ii) based on the relevant law before the Court, the State Department's proposed test for immunity – whether Senesie and Sesay were acting in an "official" capacity when serving as receiver – must be answered in the negative; (iii) even if Senesie and Sesay were, for whatever reason, deemed to be acting in an official capacity, their conduct as receiver would not be immune because the commercial exception to immunity would apply; and (iv) Lohman is a United States citizen and, for part of the time in question, was the attorney for the Abi Jaoudi & Azar Trading Corp. ("AJA"), a concededly private party. He is therefore not immune in any case, and the contempt proceeding should go forward against him on the merits.

Messrs. Sesay and Senesie have now purported to submit their own "*pro se*" response to the Statement of Interest. At the outset, the Court should strike this submission. Sesay and Senesie concede that they are before the court in a capacity as *representatives* of the purported Liberian estate. It is black-letter law that parties proceeding in a representative capacity are not entitled to proceed *pro se*.

Even were the Court to entertain Sesay and Senesie's submission, it fails entirely to cite any relevant Liberian *law* – as opposed to bald pronouncements – supporting the proposition that their actions as receiver were conducted in an "official" capacity. Nor does it provide any reason to delay discovery against Lohman, or even hint at a reason to excuse Sesay and Senesie from the jurisdictional discovery that the Third Circuit has found appropriate to require of parties asserting claims to immunity. The relevant law in the record uniformly supports the conclusion that Senesie and Sesay were not acting in an

official capacity when they were acting as receiver, and it also supports CWW's request for jurisdictional discovery in these circumstances.

Finally, Senesie and Sesay's representation that Sesay has initiated a proceeding in Liberia to seek to obtain a ruling on the question of Liberian law identified by the State Department provides no reason for the Court to delay its decision or defer discovery here. CWW has not been served in connection with any such proceeding. In any event, even if the Court follows the State Department's suggestion concerning the resolution of the immunity issue,[1] it is clear, and the United States emphasizes, that it is for *this* Court to determine the question of whether Senesie and Sesay were proceeding in an "official" capacity as receiver. That decision should not be usurped by a foreign court – least of all by a judicial system that agencies of the United States government, including the State Department itself – characterize as "corrupt", "subject to political social, familiar and financial pressures," filled with judges who are "susceptible to bribes," and issuing "judgments [that] can be purchased."

Accordingly, CWW respectfully renews its request that the Court (i) proceed with discovery from Lohman, his lawyer Mr. Gottlieb, Senesie and Sesay; (ii) thereafter reject Senesie and Sesay's immunity defenses, or require further evidence of Liberian law, as it deems appropriate; and (iii) if necessary, request briefing on whether the Court is bound to follow the Statement of Interest.

---

[1] As previously noted, the Court need not decide now whether it is bound by the State Department's suggestion. *See* CWW Response at 25. CWW again requests the opportunity to brief that question if the Court concludes that the State Department's position would compel it to grant Senesie or Sesay any immunity.

I. **Senesie and Sesay Cannot Appear *Pro Se* in Their Representative or Official Capacity, and Their Memorandum Should Accordingly Be Stricken.**

The Court should strike the "Pro Se" Memorandum Of Law in Response to the Court's December 6, 2011 Order submitted by Respondents Josie Senesie and Foday Sesay, dated Dec. 21, 2011 ("Mem."). Senesie and Sesay appear before this Court in their capacity as representatives of the estate. Senesie and Sesay's Memorandum of Law in Response to the Court's August 19, 2011 Order, dated Sept. 16, 2011 ¶ 4 & n.1. As representatives of a receivership estate, however, they cannot appear *pro se*.

The right to appear *pro se* in Federal Court is established by statute. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel" authorized to practice under the rules of such court). It is well-established that the statute applies only to natural persons, and that parties other than natural persons, such as corporations, partnerships, limited liability companies and trusts, may appear only by counsel. *E.g.*, *Move Org. v. U.S. Dep't of Justice*, 555 F. Supp. 684, 693 (E.D. Pa. 1983) ("[C]orporations and other organizations must be represented by counsel."); *see Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-03 (1993) (statute at issue applied only to "'persons' who could petition courts themselves and appear *pro se*, that is . . . natural persons only"). The reason for limiting the right to appear *pro se* to natural persons is clear: while Section 1654 authorizes a nonlawyer to conduct **his own** case, "that privilege is personal to him. He has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987).

Applying that rule, the Bankruptcy Appeals Panel of the Tenth Circuit has squarely held that a court-appointed receiver cannot appear *pro se* in his representative capacity. *Shattuck v. Bondurant (In re Shattuck)*, 411 B.R. 378 (B.A.P. 10th Cir. 2009) (striking a motion filed *pro se* by the court-appointed receiver for a limited liability corporation). The Court explained:

> Nothing in the record . . . suggests that [the receiver], as an individual, had any personal claim . . . or that he was exclusively advocating his own personal rights and interests. Clearly, in filing and prosecuting the Motion to Dismiss, [the receiver] was acting in a representative capacity on behalf of the receivership estate of the LLC, and by extension, on behalf of creditors of that estate. A limited liability company is an artificial entity that cannot appear in federal court except through licensed counsel.

*Id.* at 383. Senesie and Sesay's actions in this proceeding, like those of the receiver in *Shattuck*, are similarly on behalf of the purported estate they represent and of the as-yet-unidentified investors in the claims against the estate. Like the receiver in *Shattuck*, they can only appear in this Court through counsel.[2]

Applying the same rule reflected in *Shattuck*, courts have regularly rejected attempts by fiduciaries and others acting in a representative capacity to proceed *pro se*:

- A motion by corporation's sole shareholder to represent the corporation *pro se*, *Nat'l Indep. Theatre Exhibitors, Inc.* v. *Buena Vista Distrib. Co.*, 748 F.2d 602, 609-10 (11th Cir. 1984);

- An action brought by not-for-profit corporation appearing through its nonlawyer president and founder, *Strong Delivery Ministry Ass'n v. Bd. of Appeals*, 543 F.2d 32, 34 (7th Cir. 1976);

---

[2] Even if Senesie and Sesay were before this court "as representatives . . . of the Government of the Republic of Liberia" (Mem. ¶ 10) – and they are not – they still could appear in this Court only through counsel, as they would still be representing not themselves but, in that event, the government, another artificial person.

- A complaint filed *pro se* in name of trusts by nonlawyer trustee, *C.E. Pope Equity Trust*, 818 F.2d at 697-98; *see also Knoefler v. United Bank*, 20 F.3d 347 (8th Cir. 1994) (dismissing appeals brought on trusts' behalf by trustees "acting pro se"); and

- An appeal filed *pro se* by the executrix of her husband's estate, where the estate had creditors and beneficiaries other than the executrix. *Pridgen v. Andresen*, 113 F.3d 391, 392-93 (2d Cir. 1997).

All of these attempts were rejected on the grounds that the representatives purporting to act *pro se* were "not the actual beneficial owner[s] of the claims being asserted," and so "cannot be viewed as a 'party' conducting his '*own* case personally'." *C.E. Pope Equity Trust*, 818 F.2d at 697.

The rule serves a salutary purpose: it ensures that the persons whose interests are actually at stake in a given litigation are represented by an attorney who is subject to the professional and ethical obligations of a member of the Bar of this Court. The need for such a rule is particularly salient here, where Senesie and Sesay have elected to discharge their counsel and abandon their defense rather than comply with the Court's discovery orders. Senesie and Sesay, who are not officers of this Court, cannot act in this Court in their representative capacity except through counsel duly qualified to practice in this Court.

II. **Senesie and Sesay's Memorandum Fails to Cite any Relevant Law Concerning the Question Framed by the State Department, and Underscores the Appropriateness of Further Discovery.**

The United States' Statement of Interest expressed the view that Senesie and Sesay would be entitled to immunity only to the extent that they were acting in their official capacities when they took the act that forms the basis of CWW's motion for contempt – namely, the act of bringing suit in the Cayman Islands to enforce the Liberian

6

Judgment.[3]  Statement of Interest of the United States of America, filed December 5, 2011, at 15 *(Doc. 290)* ("Statement of Interest").  Recognizing that that litigation was brought – and that this contempt action has been brought against Senesie and Sesay – in their representative capacity as receiver of the estate of CWW's "Liberian branch," *see* Letter of the Legal Adviser at 2 *(Doc. 290)*, the United States asked only whether such activities as receiver constitute "official capacity" acts under Liberian law.

CWW is the only party that has submitted relevant evidence of Liberian law on this issue.  Specifically, CWW has submitted evidence, supported by the testimony of Senesie's own expert, that Liberian law looks to U.S. precedent in construing its own law.  Affidavit of Cllr. Oswald Tweh, dated Dec. 12, 2008 ("Tweh Aff.") at ¶ 37 *(Doc. No. 190)*.[4]  And CWW has submitted abundant case law holding that under analogous U.S. laws an insurance commissioner does *not* act in an official capacity when he acts as the receiver or conservator for an insurer.  *See generally* CWW Response at 16-19.

By contrast, Senesie and Sesay have submitted no evidence concerning Liberian law, apart from the conclusory pronouncements, unsupported by cases or relevant statutes, of their expert Cllr. Tweh (Mem. ¶ 41), whom, in violation of an order of this Court, they have refused to produce for deposition.  Senesie and Sesay point to no statute, case law, or any other authority under Liberian law to support their *ipse dixit* that bringing a lawsuit in the name of CWW in the Cayman Islands constitutes an act taken in

---

[3]   The Statement of Interest incorrectly suggests that CWW also seeks to hold Senesie and Sesay in contempt for recognizing claims against the Liberian "estate" in the context of the Liberian receivership proceeding.  As CWW has repeatedly clarified, it is the extra-territorial acts of Senesie and Sesay outside Liberia that are the basis for this contempt proceeding.

[4]   *See also* Reception Statute, Liberian Code of Laws Revised, Title 15, Ch. 3, § 40.

an official capacity. *See*, *e.g.*, Mem. ¶¶ 15-16, 35. *See also* Tweh Aff. ¶¶ 40-41 ("[M]y research has been unable to unearth any Liberian case law or judgments relative to the insolvency of a domestic insurance company or an alien insurance company authorized to do business in Liberia.")

Senesie and Sesay ultimately rely on nothing more than broad and conclusory assertions that the "regulation of banks and insurance companies is a government function," Mem. ¶ 13, that "only the Commissioner of Insurance . . . is allowed by [Liberian] law to be appointed as the liquidating receiver of a domestic or alien insurer," *id.* ¶¶ 13-14, or that as receiver they act at the direction of a Liberian court. *See id.* ¶¶ 27-35. These circumstances also are features of American law in all or nearly all States, and none of them suffices to make the receiver's actions official actions on behalf of the State itself, as has been well-recognized in American jurisprudence. *See, e.g., Excess & Cas. Reins. Ass'n v. Ins. Comm'r*, 656 F.2d 491, 493, 498 (9th Cir. 1981) (Florida Department of Insurance appointed as receiver by Florida court not immune for actions in its capacity as receiver); *N.C. ex rel. Long v. Blackburn*, 492 F. Supp. 2d 525, 528, 533-34 (E.D.N.C. 2007) (Where North Carolina law provided that only the insurance commissioner could be appointed as liquidator, commissioner appointed by North Carolina court was not "alter ego" of North Carolina). If Senesie and Sesay were correct, essentially *every* insurance receiver would be entitled to sovereign immunity for *all* his actions – a view contrary to the clear weight of U.S. authority. *See* CWW Response at 17-18.

If anything, Senesie and Sesay's arguments only underscore the relevance of further discovery here. Senesie and Sesay repeatedly argue that their purported

8

entitlement to immunity is based on the claim that they are acting "in . . . the public interest" or "to protect the citizens of Liberia." Mem. ¶¶ 12-13, 15-16.  They claim that their actions are immune because they were acting in a disinterested manner "to protect the public interest . . . and to ensure that alien insurers . . . comply with the relevant insurance regulations." *Id.* ¶ 16.  While CWW contends that such generic claims to act in the public interest cannot transform a private activity into an official action, it is certainly appropriate, at this stage of the litigation, and before any appeal again proceeds to the Third Circuit, to put Senesie and Sesay to their proof and test their assertions by discovery.

In particular, to have a complete record on this issue, there should be discovery as to the extent to which Senesie and Sesay have been acting all along in the interest, and at the behest, of private "vulture" investors, and the extent to which their claims to have proceeded in the "public interest," or merely to ensure that "alien insurers . . . comply with the relevant insurance regulations," are a sham.  Relevant discovery on such issues is well within the scope of the jurisdictional discovery that the Third Circuit has held appropriate in considering a claim of immunity.  *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993).

### III.    Any Statement by the Liberian Court in Response to Sesay's Motion Should Carry No Weight and Provide No Reason Further to Defer Discovery.

In their response to the Statement of Interest, Senesie and Sesay have advised that Sesay has asked the Liberian trial judge to provide him with a declaration that the actions he and Senesie undertook in their capacities as receiver of the estate of CWW's "Liberian branch," were taken "in their official capacities as State officials."  Mem. ¶ 43 & Ex. 17.

CWW has not been served with this motion. Sesay's motion and supporting affidavit recite the same arguments he has made here, but, as here, cite no relevant Liberian statute, case law, or other legal authority.

The Court should not further prolong this action by awaiting the Liberian court's decision. *First*, as the United States states, it is for *this Court* to decide whether Sesay is entitled to sovereign immunity, and to decide the ancillary question whether he is acting in an "official capacity" when serving as receiver. Statement of Interest at 14. It would be an usurpation of the powers of the federal courts to delegate these questions to a foreign court. *See id.* at 13 ("[T]he views of the foreign state on whether an act was taken in an official capacity are not dispositive.").

*Second*, the U.S. Government continues to report that corruption and bias are endemic in the Liberian judicial system, especially in cases involving foreign companies like CWW:

> Investors cannot rely on the court system as a fair arbiter of disputes. Judges and other judicial officers are poorly paid, courthouses are in disrepair, and administrative support is weak. *Judgments can be purchased, and foreign firms tend to be at a disadvantage*.

U.S. Dep't of Commerce, Doing Business in Liberia: 2011 Country Commercial Guide for U.S. Companies (2011) at 33, http://www.buyusainfo.net/docs/x_119119.pdf (prepared by the U.S. Embassy in Liberia and the U.S. Commercial Service) (emphasis added). Likewise, as the State Department reports in its most recent Human Rights Report on Liberia:

> [T]he judicial system was corrupt and functioned slowly . . . . Judges were subject to political, social, familial, and financial pressures . . . .
>
> Judges were susceptible to bribes from damages that they awarded in civil cases. Judges sometimes requested bribes to try cases, release detainees from prison, or find defendants not guilty in criminal cases . . . . Jurors were also susceptible to bribes . . . .

U.S. Dep't of State, 2010 Human Rights Report: Liberia (Apr. 8, 2011), http://www.state.gov/g/drl/rls/hrrpt/2010/af/154354.htm.

The history of this case, and related cases, confirms the United States' concerns. In 2002, the United States District Court for the District of Delaware granted judgment for CWW against a group of Liberian claimants advancing essentially the same claims as AJA (and whose claims are also asserted in the Caymans action). *CIGNA Worldwide Ins. Co. v. Elegant, Inc.*, No. CIV.A. 01-0438 GMS, 2002 WL 1402348 (D. Del. June 25, 2002). The Delaware District Court determined that *in rem* jurisdiction existed because the relevant policy was issued in Delaware and because "the Liberian judicial system is incapable of guaranteeing sufficient due process of law to parties as required by the United States Constitution." *Id.* at *3. The recent guidance offered by the U.S. Commerce Department and U.S. State Department, quoted above, makes clear that the Liberian judiciary has not yet sufficiently addressed the challenges facing it – and that its pronouncements remain an unreliable basis for resolving a U.S. litigation, much less a U.S. contempt proceeding involving influential Liberian citizens.

For all these reasons and others, any decision that the Liberian court might render will be entitled to no weight in this Court. There is no reason further to delay these

11

proceedings – already frozen for months by the State Department – waiting for a Liberian court order that should have no bearing on this Court's decision.

## CONCLUSION

Accordingly, CWW respectfully renews its request that the Court – again – order that Lohman, Gottlieb, Senesie and Sesay promptly provide the discovery previously ordered by the Court. Because Lohman has no immunity defense with respect to his representation of AJA, CWW requests that contempt proceedings on the merits against Lohman proceed immediately. CWW also requests that at the completion of discovery, the Court order such further briefing as it deems necessary regarding Respondents' assertion of immunity, including with respect to any issues of Liberian law or the effect of the Statement of Interest of the United States.

Dated: January 10, 2012
      New York, New York

DEBEVOISE & PLIMPTON LLP

By:   s/ Donald W. Hawthorne
     Donald Francis Donovan
     Donald W. Hawthorne

COZEN O'CONNOR           Matthew S. Hackell
     919 Third Avenue
Stephen A. Cozen            New York, NY 10022
Richard J. Bortnick          (212) 909-6000
1900 Market Street
Philadelphia, PA 19103     *Attorneys for Defendant CIGNA Worldwide*
(215) 665-2000             *Insurance Company*