# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

February 2, 2012

BY ELECTRONIC COURT FILING

The Hon. Paul S. Diamond
United States District Court for the
   Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA  19106

**The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Insurance Co.
Index No. 91-6785**

Dear Judge Diamond:

      We write on behalf of Defendant CIGNA Worldwide Insurance Co. ("CWW") to (i) provide to the Court Diplomatic Notes from the Republic of Liberia to the U.S. State Department relating to this matter, which we received from the State Department last week; (ii) inform the Court about recent developments in a related action in the Cayman Islands in the matter captioned *CIGNA Worldwide Insurance Co. (by and Through its Court Appointed Receiver, Josie Senesie, and in Respect of the Assets, Undertakings and Affairs of its Licensed Liberian Branch and Business) v. ACE Limited*, Cause no. FSD 96 of 2011 (PCJ) (the "Cayman Litigation"); and (iii) point out that, in the "Pro Se Memorandum of Law" submitted by Respondents Senesie and Sesay on January 24, 2012 (the "Sur-Reply"), Messrs. Senesie and Sesay have conceded that they should not be permitted to proceed in this matter as representatives of a purported Liberian estate without retaining counsel in this District.

**Liberia's Diplomatic Notes to the U.S. State Department**

      Enclosed are two Diplomatic Notes apparently sent by representatives of the Republic of Liberia to the U.S. State Department on October 12, 2010 (attached as Exhibit A) and November 15, 2010 (attached as Exhibit B).  We received these Notes from the State Department on January 24, 2012, in response to our request for the diplomatic correspondence from Liberia mentioned in the State Department's letter to the Department of Justice, attached as an exhibit to the United States' Statement of Interest dated December 5, 2011.  We submit these materials to the extent that they provide

The Hon. Paul S. Diamond                 2                 February 2, 2012

background to the Statement of Interest. The letter of October 12, 2010 recites that Mr. Lohman and a Mr. Kenney appeared with a Liberian delegation for a meeting at the U.S. State Department in Washington, D.C. on September 29, 2010. We find it surprising that Mr. Lohman, a U.S. citizen, who has refused to comply with the orders of a U.S District Court, feels no inhibition in traveling to Washington D.C. to lobby the U.S. State Department on behalf of the Liberian government.

**Developments in the Cayman Islands**

A hearing was held in the Cayman Litigation on January 16-17, 2012, before Justice Cresswell of the Grand Court of the Cayman Islands. On January 27, 2012, Justice Cresswell issued a Judgment (attached as Exhibit C) and an Order (attached as Exhibit D). Among other things:

- Justice Cresswell entered an order on consent dismissing Mr. Sesay's "claim arising out of or in connection with the AJA Claim" with prejudice. Ex. D at ¶ 1.[1]

- Mr. Sesay was ordered to pay ACE's costs associated with the AJA Claim. Ex. D at ¶ 2. Justice Cresswell ordered that these costs be calculated on the "indemnity basis" for the period after May 20, 2011, a higher measure of recovery than the "standard basis," because "I do not consider that the Plaintiff has taken the steps it should have taken to comply with what was in effect a promise to the EDPA." Ex. C at 21.

- Mr. Sesay was ordered to pay into court the sum of $850,000, to provide ACE with security that its costs will be paid if it is successful in its defense. Ex. D at ¶ 4. ACE had sought this security, in part, because it believed that neither Mr. Sesay nor his unidentified funders would pay an award of costs against Mr. Sesay. (Costs are typically paid by the losing party in Cayman Islands litigation). In ordering this amount, Justice Cresswell noted, "I do not consider that the Plaintiff has made full and frank disclosure. Nor do I consider that the Plaintiff has given anything approaching a complete account to the Court." Ex. C at 30.

---

[1] This does not resolve Respondents' contempt, for several reasons, as discussed in CWW's Memoranda of May 25, 2011 (Dkt. #243) and June 21, 2011 (Dkt. #257). *First*, as the Court has already recognized, CWW is entitled to "seek [compensatory] sanctions for what has transpired before" the dismissal, including its attorneys' fees incurred "in uncovering and establishing" the contempt. *AMG Nat'l Trust Bank v. Ries*, 319 Fed. Appx. 90, 92 (3d Cir. 2008). *Second*, it is CWW's understanding that AJA retains an interest in any recovery obtained by Mr. Sesay, possibly in the form of an ownership interest of CC International Ltd., which it received in exchange for its contribution of the AJA claim. AJA thus still stands to benefit from its strategy (and the efforts of its aiders and abettors) to enforce the AJA claim in violation of Judge O'Neill's anti-suit injunction, and therefore remains in contempt.

The Hon. Paul S. Diamond                  3                  February 2, 2012

**Senesie and Sesay's "Sur-reply"**

       CWW's January 10, 2012 submission argued that Messrs. Senesie and Sesay cannot appear *pro se* in their representative capacity. In their "surreply," Messrs. Senesie and Sesay concede that only individuals may represent themselves *pro se*, and state that "we submit this Memorandum of Law in our personal capacities." Sur-Reply at 3. CWW has sought to hold Messrs. Senesie and Sesay in contempt in their representative capacity for their actions as "receiver" of the Liberian assets of CWW, and to hold Senesie in contempt in his personal capacity for his actions as a private individual, to the extent that he stands to benefit personally from any recovery as a result of the Cayman Litigation. The concession that Sesay and Senesie appear only in their personal capacities, therefore, means that no one is answering to the claims against them in their representative capacities (and that Sesay has no basis for appearing at all, since he is not a respondent in his individual capacity).

       Moreover, both the United States' Statement of Interest and Respondents' submissions are addressed to immunity only in respect of the actions of the "receiver." The United States does not suggest, and Respondents do not argue, that Mr. Senesie may be entitled to immunity for actions undertaken in an individual, non-representative capacity. The arguments that Respondents have advanced concerning immunity are therefore, in their entirety, irrelevant to the only capacity in which Senesie continues to appear before the Court.

       It is black letter law, which Senesie and Sesay do not dispute, that, insofar as they are appearing in this Court in a representative capacity, they must be represented by an attorney of the local bar. *See, e.g, C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Shattuck v. Bondurant (In re Shattuck)*, 411 B.R. 378, 383 (B.A.P. 10th Cir. 2009). The requirement to retain local counsel ensures that non-natural persons, which can act only through representatives, are represented in Federal Court by someone with professional and ethical responsibilities to the Court. Accordingly, their responses must be stricken insofar as they involve their actions in a representative capacity (the only capacity in which Mr. Sesay is now before this Court).

                                           Sincerely,

                                           /s/  Donald W. Hawthorne
                                           Donald W. Hawthorne

cc:     Henry F. Reichner, Esq.
         Mark E. Gottlieb, Esq.
         Thad J. Bracegirdle, Esq.