

**Offit | Kurman**
Attorneys At Law

*Mark E. Gottlieb, Esquire*
*(267) 338-1318 (direct dial)*
*(267) 338-1335 (facsimile)*
*mgottlieb@offitkurman.com*

February 13, 2012

<u>***Via Electronic Court Filing***</u>

The Honorable Paul S. Diamond
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA  19106

> Re: ***The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co.***, No. 91-6785

Dear Judge Diamond:

I am writing on behalf of Respondent Samuel M. Lohman, Esquire in the above-referenced matter to provide the Court with a copy of the order of the Civil Law Court, Sixth Judicial Circuit, Montserrado County, Liberia dated January 23, 2012, which I received today, and is attached hereto as Exhibit A.  This order follows the Motion for Declaratory Relief filed by Foday Sesay, Commissioner of Insurance of the Republic of Liberia, on his behalf and on behalf of Josie Senesie, the former Commissioner of Insurance.

As noted in the Court's order, CIGNA Worldwide Insurance Company ("CWW") rejected service originally in Liberia and the Court set a new date for CWW to appear following service.  A hearing was held on January 23, 2012, in which CWW did not appear.  Following that hearing and after reviewing the Motion for Declaratory Relief, the Liberian court determined that, based upon the relevant statutes of Liberia, that the acts of Commissioner Sesay and former Commissioner Senesie in:

> (a) recognizing the AJA Judgment as a liability of the estate of the Liberian branch of CIGNA WW and (b) initiating and continuing the Cayman Action *were, under Liberian law, taken by [Commissioner Sesay] and Mr. Senesie wholly in their respective official capacities as Commissioners for Insurance*, as it is only in such capacity and by virtue of holding such office that they are respectively entitled to be and were appointed to the position of Receiver of the debtor pursuant to § 5.13 of the Insurance Law, Title 16 of the Liberian Code of Laws Revised (1972).

(Ex. A, Liberian Court Order dated Jan. 23, 2012, at 6-7 (emphasis added).)



**Offit | Kurman**
Attorneys At Law

On December 21, 2011, Mr. Lohman filed a Statement in Response to the Statement of Interest of the United States of America. In his statement, Mr. Lohman noted that, under Liberian law, the actions of the Receivers were taken in their official capacities and, therefore, pursuant to the Statement of Interest of the United States of America, the Receivers and Mr. Lohman, as counsel to the Receivers, were entitled to sovereign immunity. The accompanying Order provides further support of this argument and Mr. Lohman requests that Your Honor incorporate this Order as further evidence of Mr. Lohman's position.

If you have any questions, please do not hesitate to contact me.

Respectfully yours,

Mark E. Gottlieb

MEG/whp

cc:   Donald W. Hawthorne, Esq.
      Richard J. Bortnick, Esq.
      Henry F. Reichner, Esq.

# EXHIBIT "A"



*Republic of Liberia*
*Montserrado County*

*Office of the Notary Public*
*Monrovia, Liberia*

# NOTARY CERTIFICATE

*Personally Appeared Before Me in My Office within the City of Monrovia, Montserrado County, Republic of Liberia this* ___23RD___ *day of* ___JANUARY___ *, A. D. 20 12 duly qualified Notary Public for and in the County of Montserrado and in the Republic Aforesaid the Parties to the attached documents:-*

IN THE MATTER OF SECTION 5.13 OF THE LIBERIAN INSURANCE LAW
AND
IN THE MATTER OF THE LIBERIAN BRANCH OF CIGNA WORLDWIDE
INSURANCE COMPANY (IN LIQUIDATION)
FODAY L. SESAY, COMMISSIONER OF          )
INSURANCE OF THE REPUBLIC OF LIBERIA     ) COURT'S FINAL RULING
.........................................MOVANT  ) MOTION FOR DECLARATORY RELIEF
VERSUS                                   )
CIGNA WORLDWIDE INSURANCE COMPANY )

*and did in my presence and in the presence of each other execute and signed their genuine signatures on the said Instruments (s) to be the person (s) they represent and that the same was made in my presence and declared by each of them to be their voluntary acts and in their own hand writing.*

*Therefore I Mary Mamie Howe, Notary Public aforesaid, have attached my Official Signature Notary Seal to avail when and where Necessary.*

*I have affixed my genuine Signature attesting to this transaction by the power vested in me this* ___23RD___ *day of* ___JANUARY___ *, A. D. 20 12*

**MARY MAMIE HOWE**
PROCESSED BY: CLLR. LLOYD B. KENNEDY
NOTARY PUBLIC, MONTSERRADO COUNTY, R.L.
$2.50 REVENUE STAMPS AFFIXED ON THE ORIGINAL.

REPUBLIC OF LIBERIA)    IN THE CIVIL LAW COURT, SIXTH JUDICIAL CIRCUIT,
MONTSERRADO COUNTY)  MONTSERRADO COUNTY, SITTING IN ITS DECEMBER
                              TERM, A. D. 2011

BEFORE HIS HONOUR:.......EMMANUEL M. KOLLIE.............. ASSIGNED CIRCUIT JUDGE

IN THE MATTER OF SECTION 5.13 OF THE LIBERIAN INSURANCE LAW

AND

IN THE MATTER OF THE LIBERIAN BRANCH OF CIGNA WORLDWIDE
INSURANCE COMPANY (IN LIQUDATION)

FODAY L. SESAY, COMMISSIONER OF      )
INSURANCE OF THE REPUBLIC OF LIBERIA
MOVANT                            ) MOTION FOR DECLARATORY RELIEF

        VERSUS                   )

CIGNA WORLDWIDE INSURANCE COMPANY )
RESPONDENT

<u>COURT'S FINAL RULING:</u>

      A Motion has been made by the Honourable Foday L. Sesay, Commissioner of Insurance of the Republic of Liberia and Movant in the above entitled cause of action, for an Order declaring that the acts of the Movant and of his predecessor in such offices, Mr. Josie Senasie, (a) recognizing a certain judgment of this Court dated October 4, 2000, in favour of the Abi Jaoudi & Azar Trading Corp. ("AJA") as against CIGNA Worldwide Insurance Company (the "AJA Judgment") as a liability of the Liberian branch of CIGNA Worldwide Insurance Company ("CIGNA WW"), and (b) initiating and continuing an indemnity enforcement action entitled *CIGNA Worldwide Insurance Company (By and Through its Court-Appointed Receiver, Foday Sesay, and in Respect of the Assets, Undertakings and Affairs of its Licensed Liberian Branch and Business) v. ACE Limited* (Cause No. 329 of 2008), before the Grand Court of the Cayman Islands (the "Cayman Action") were under Liberian law, taken by Mr. Senasie and the Movant wholly in their respective official capacities as Commissioners for Insurance and Court-Appointed Receivers over the assets, undertakings and liabilities of the insolvent estate of the Liberian branch of CIGNA WW, pursuant to s. 5.13 of the Insurance Law, Title 16 of the Liberian Code of Laws Revised (1992).

      UPON READING/the Notice of Motion for Declaratory Relief and the Affidavit of the Movant sworn to on the 2nd day of December 2011, and the Appendices thereto, and upon hearing the submission of Counsel for the Receiver,

      THIS COURT FINDS that Motion first came before the Court on January 10, 2012. Service on the Respondent, CIGNA WW, had been rejected by its Liberian counsel, David Jallah. Service was then effected by international courier on CIGNA WW in Philadelphia, Pennsylvania and care of its counsel in New York, Debevoise & Plimpton. The Court fixed a second hearing of this matter for January 23, 2012 to provide CIGNA WW with time to appear and to oppose the Motion of Movant. The Respondent did not appear at the hearing of January 23, 2012. The Court proceeded to hear Movant's representations through counsel and now issues this judgment.

a.    THIS COURT FINDS that this Motion first came before the Court on January 10, 2012. Service on the Respondent, CIGNA WW, had been rejected by its Liberian counsel, David Jallah. Service was then effected by international courier on CIGNA WW in Philadelphia, Pennsylvania. Service was then effected by international courier on CIGNA WW in Philadelphia, Pennsylvania and care of its counsel in New York, Debevoise & Plimpton. The Court fixed a second hearing of this matter for January 23, 2012 to provide CIGNA WW with time to appear and to oppose the Motion of Movant. The Respondent did not appear at the hearing of January 23, 2012. The Court proceeded to hear Movant's representations through counsel and now issues this judgment.

b.    The facts underlying the appointment of former Commissioner of Insurance, Mr. Josie Senasie, as the Receiver of all of the assets undertakings and liabilities of the former licensed Liberian branch and business of CIGNA WW, and of his succession in such offices by the Movant, are set forth in the Orders of this Court dated 24 April 2007 and 16 February 2010, respectively.

1

c.   In or about November 2008, CIGNA WW commenced certain civil contempt proceedings before the U.S. District Court, Eastern District of Pennsylvania (the "District Court"), within the previously closed action *The Abi Jaoudi And Azar Trading Corp. v. CIGNA Worldwide Ins. Co.*, Civil Action No. 91-6785 (the "Contempt Proceedings") against (i) Mr. Senesie, both in his personal capacity and in his then-capacity as Receiver of CIGNA WW's Liberian branch and business, and (ii) Samuel M. Lohman ("Mr. Lohman"), an American attorney with a legal practice based in Switzerland who had previously represented AJA and who has acted as the Receiver's counsel and as a member of the Receiver's legal team from 25 April 2007 for allegedly violating an injunction issued by the District Court in 2001 against AJA taking any actions that would conflict with the District Court's 2000 judgment in favour of CIGNA WW notwithstanding the jury verdict in favour of AJA (the "Anti-Suit Injunction") (*Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 167 F. Supp. 2d 743 (E.D. Pa. 2001)).

d.   Following his appointment as Commissioner of Insurance and confirmation of his automatic succession as Commissioner to the office of Receiver of CIGNA WW's Liberian branch, Commissioner Sesay has sought to be substituted for former Commissioner Senesie in the Contempt Proceedings. To date, Commissioner Sesay has apparently been accepted as an additional respondent in such proceedings, but Mr. Senesie also remains a respondent.

e.   This Court takes notice that the Contempt Proceedings appear to violate the Order of this Court dated 22 April 2002 enjoining any person from interfering with the enforcement of the AJA Judgment, although this issue has not been briefed by the Movant.

f.   On the 5th day of December 2011 the United States Department of State (the "State Department") issued a Statement of Interest in the Contempt Proceedings (the "Statement of Interest") determining that that "Respondents Josie Senesie and Foday Sesay, the past and current Insurance Commissioners for the Republic of Liberia, are immune from suit to the extent the Court finds that, under Liberian law, they acted in their official capacities when they took the acts that are the basis for Defendant's contempt motion against them." Statement of Interest, p. 1.

g.   In the Statement of Interest, The State Department has concluded that as Commissioners of Insurance at the time of the conduct that is the basis of the contempt proceedings, Mr. Senesie and the Movant were officials of the Republic of Liberia and thus are generally entitled to immunity while acting in that capacity. Although the character of an act under the law of the foreign state is not the only relevant factor in making immunity determinations, based upon the particular facts of this case, the State Department has also concluded that Mr. Senesie and the Movant would be immune from suit to the extent that the District Court finds that their actions in recognizing the AJA Judgment and initiating and continuing Cayman Action, under Liberian law, taken in their official capacities as Commissioners of Insurance.

h.   Following the publication of the Statement of Interest the Honourable Judge Diamond in the Contempt Proceedings issued an Order directing that "all interested parties" file a response to the Statement of Interest on or before December 21st, 2011. Commissioner Sesay and Mr. Senesie have filed pro se memoranda of law with the District Court in response to this Order.

i.   The Movant has requested this Court to address the distinct legal issue of whether under Liberian law, a legal separation can be said to exist between the roles and responsibilities of Commissioners of Insurance when acting as regulator and when acting as Court-appointed Receiver.

### COMPARISON OF LIBERIAN AND DELAWARE INSURANCE LAWS.

j.   In the instant Motion we are asked to determine whether under Liberian law, the Liberian Commissioner of Insurance, when acting as Receiver of a delinquent alien insurer, is acting as a public or state official or as an individual solely acting in the capacity of Receiver. In analyzing this issue we have had regard to the provisions of the Liberian Insurance Law and relevant practice and procedure. Where the Statute is silent on a particular issue we have had regard to the Insurance Code of the State of Delaware in the United States for the purposes of a comparative law analysis, considering the fact that the debtor, CIGNA WW, was incorporated in Delaware and in light of the common legal tradition between the laws of Liberia and of the United States.

2

k.  For example, § 514 of the Delaware Insurance Code r e q u i r e s  that an alien insurer operating through a branch in Delaware must maintain minimum deposits within the jurisdiction that are held in trust for the benefit and security of all the alien insurer's policyholders and creditors in the United States or of all the alien insurer's policyholders in the United States, as follows:

> *"The Commissioner shall not authorize an alien insurer to transact insurance in this State unless it makes and thereafter continuously maintains on deposit in this State through the Commissioner, or in another state, a surplus of assets in cash or securities eligible for such deposit under the laws of this State or such other state of a value not less than the combined capital and surplus initially required of a like foreign insurer transacting like kinds of insurance in this State. The deposit shall be held in trust for the benefit and security of all the insurer's policyholders and creditors in the United States or of all the insurer's policyholders in the United States. (§514 Delaware Insurance Code)*

l.  The Liberian Insurance Law requires a foreign insurer to likewise retain in Liberia at least ten percent (10%) of its gross annual premiums derived from policies pertaining to risks or undertakings in Liberia (§ 5.3 L i b e r i a n Insurance Law.)

m.  In relation to the liquidation of alien insurers the relevant provisions of the Delaware Code are as follows:

> *§ 5908. Same [Grounds for Conservation] – Alien Insurers.*
> *The Commissioner may apply to the court for an order appointing the Commissioner as receiver or ancillary receiver and directing the Commissioner to conserve the assets within this State of any alien insurer upon any of the following grounds:*
> *(1)    Upon any of the grounds specified in§ 5905 or § 5906 of this title ;*
> *(2)    Upon the ground that the insurer has failed to comply within the time designated by the Commissioner with an order made by the Commissioner to make good an impairment of its trusted funds; or*
> *(3)    Upon the ground that the property of the insurer has been sequestrated in its domiciliary sovereignty or elsewhere.*

n.  Most notably among the grounds for rehabilitation of a domestic insurer in Delaware (also a ground for liquidation of an alien insurer) a r e  the following provisions that correspond with those in §5.13(c) and §4.7(l) of the Liberian Insurance Law:

> *§ 5905. Grounds for rehabilitation; domestic insurers.*
> *(2) Has refused to submit any of its books, records, accounts or affairs to reasonable examination by the Commissioner; . . .*
>
> *(5) Has transferred or attempted to transfer substantially its entire property or business or has entered into any transaction the effect of which is to merge substantially its entire property or business in that of any other insurer without having first obtained the written approval of the Commissioner; . . .*
>
> *(10) Has failed to pay a final judgment rendered against it in this State upon any insurance contract issued or assumed by it within 30 days after the judgment became final or within 30 days after the time for taking an appeal has expired or within 30 days after dismissal of an appeal before final termination, whichever date is the later.*

o.  In addition, grounds for liquidation of a n  i n s u r e r  u n d e r  § 5 9 0 6  of t h e  D e l a w a r e  I n s u r a n c e  C o d e  include "(1) [if such insurer] [h]as ceased transacting business for a period of 1 year."

p.  The Liberian Insurance Law contains provisions which are similar to those cited from the Delaware Insurance Code. For example, §4.7 of the Liberian Insurance Law provides that an insurer's certificate of authority shall be subject to cancellation if the insurer, inter alia, (a) fails to retain in Liberia at least 10% of its gross annual premiums derived from policies pertaining to risks or undertakings in Liberia pursuant to § 5.3 of the Insurance Law; (b) ceases to carry on business in this country; or (c) fails to satisfy a final judgment obtained against it in any Liberian court of competent jurisdiction within thirty (30) days after such judgment is entered. These are also grounds upon which the Commissioner of Insurance can be appointed as a receiver and the assets liquidated of the Liberian branch of an alien insurer.

3

q.   In addition, §5.13 of the L i b e r i a n  Insurance Law provides for the appointment of the Commissioner of Insurance as a receiver over, and the liquidation of, the Liberian branch of an alien insurer which has failed to, *inter alia*, comply with the requirements of §4.7 of the Insurance Law as described above, or if the insurer enters into a transaction the effect of which is to "transfer entirely" its entire property or business to another insurer without having first obtained the written approval of the Commissioner to such transfer.

r.   We have focused in particular upon the Delaware Insurance Code for the purposes of comparison considering the fact that the debtor, CIGNA WW, was incorporated in Delaware.  We find that in substance the provisions of the Delaware and Liberian Insurance Statutes insofar as the grounds for instituting delinquency proceedings are concerned are broadly similar.  However in terms of the mechanics of the receivership or liquidation carried out by a Commissioner of Insurance, there are a number of important distinctions that we find to be illuminating in the context of determining the issue now before the Court.

s.   For example, in Delaware the Commissioner may him or herself apply to the court for an order appointing the Commissioner as receiver (or as an ancillary receiver) of any alien insurer, but in Liberia the Commissioner must first apply to the Minister for Justice, who then in turn petitions the Court should he determine that the request is appropriate.  Further, under § 5913(d) of the Delaware Insurance Code the court may at any time require a bond from the Commissioner or the Commissioner's deputies if deemed desirable for the protection of assets taken under his control.  There is no such provision in the Liberian Insurance Law.

t.   Further, while the Liberian Insurance Law makes no provision for the reimbursement of expenses out of the assets of the estate being administered, §5913(f) of the Delaware Code specifically provides that the compensation of any special deputies, counsel, clerks or assistants and all expenses of taking possession of the insurer and of conducting the proceedings shall be fixed by the receiver, subject to the approval of the court, and shall be paid out of the funds or assets of the insurer. In Liberia, the Commissioner of Insurance can receive no compensation for his service as Receiver outside of the purview of his regular State salary as a civil servant. In fact, the Insurance Law prohibits him from having any interest in an insurer licensed to trade in Liberia. When the Commissioner is appointed as a receiver of an alien or domestic insurer, the State pays for his services as Receiver, and not the receivership estate. This is an objective indication reflecting the Commissioner's official capacity as a State official when he acts as a Receiver under § 5.13 of the Liberian Insurance Law.

u.   No distinction is made in the Liberian Insurance Law between the Insurance Commissioner's public duties and his duties as receiver.  The two are inextricably interrelated.  We note that there is no provision in the Liberian Insurance Law vesting exclusive original jurisdiction of delinquency proceedings in the Court.  §5.13 of the Insurance Law directs that when the Commissioner of Insurance believes that a receiver of a delinquent domestic or alien insurer should be appointed, he or she may request the Minister for Justice to petition the Court for appointment of the Commissioner as receiver for that insurer.  It provides that the Commissioner is vested with all power, authority and title necessary to obtain and liquidate the available assets and property of the delinquent insurer, and shall administer such assets and the proceeds thereof under the Court's supervision and control.  The administration of the assets of the delinquent insurer and the distribution of any proceeds constitutes the limit of the Court's involvement in the receivership.

v.   In addition to the above when examining the Liberian Insurance Law and comparing it with the Delaware Insurance Code in the United States, we find that there are a number of features that support a conclusion that the Insurance Commissioner when acting as Receiver of a delinquent alien insurer does so as an official of the State.  Notable features of the Liberian Insurance Law include the following:

•   The *General Provisions* include a provision for penalties for violation of any provision of the Code (§1.3);

•   The Commissioner is appointed by the President upon advice and consent of the Senate and holds office at his pleasure (§2.1);

•   The Commissioner must use an official seal on all notices, documents and reports and other official documents issued by his office (§2.1).  This requirement of formality applies also when the Commissioner acts as a receiver.;

•   The Commissioner carries out his functions, and exercise his powers subject to

4

the direction and control of the Minister for Commerce and Industry (§2.3, §2.4);

- The Commissioner is empowered to deal with the assets of an insolvent domestic or of the Liberian branch of an alien insurer (in which case only the Liberian assets) in his own name either as Commissioner for insurance or in the name of the insurer, as the Court may direct (§5.13 (2)). (We note that in this case the Court empowered the Commissioner to prosecute and defend proceedings either in the name of the Receiver or in the name of the Insurer); and

- The Commissioner is vested with all power, authority and title necessary to obtain and liquidate the available assets and property of the delinquent insurer; but he must administer such assets and the proceeds thereof under this Court's supervision and control. (§5.12(3)).

w.   We have also taken notice of the absence of any provisions providing that the Commissioner provide a bond; be entitled to be paid expenses, or to continue to employ officers and employers of the delinquent company, by way of example, in assessing the similarities or disparities between the functions and powers of the receiver of a private company and the Commissioner of Insurance as receiver.

x.   We find also that under Liberian law a receivership of an alien or domestic insurer conducted by the Commissioner of Insurance is not the functional equivalent of the receivership or insolvency of a private company for a number of reasons:

- Firstly, in contrast to the position under the Bankruptcy law of Liberia, claims for losses under policies held by Liberian residents shall be given first priority. §5.12(4);

- Secondly the Commissioner is not entitled to payment for his services by the estate over which he acts as Receiver. His compensation comes purely from his state salary as Commissioner of Insurance. His services as Receiver are thus costs which fall to the account of the Liberian Government;

- Thirdly there is no explicit provision for the Commissioner to continue employing officers and employees of the delinquent insurance company; and

- Fourthly the Court cannot require the Commissioner to post a bond.

y.   Having considered, *inter alia* (i) the manner of appointment of the Commissioner of Insurance to the office of Commissioner; (ii) the manner and exclusivity of appointment of the Commissioner to the position of Receiver of a delinquent insurer; (iii) the penal sanctions for failure to comply with provisions of the Liberian Insurance Law; (iv) the absence of any provisions (a) requiring the Commissioner to post a bond should the Court so require, or (b) entitling the Commissioner to be compensated or have expenses reimbursed out of the funds of the debtor; (v) the absence of any provision for the payment of any damages accruing from the conduct of the Insurance Commissioner as Receiver or any of the Receiver's employees from the assets of the insurer; (vi) the priority afforded Liberian resident policyholders in a receivership conducted by the Commissioner of Insurance; (vii) the fact that the Commissioner must, when acting as a Receiver or otherwise, use an official government seal of the Office of the Commissioner of Insurance on all notices, documents and reports and other official documents issued by his office and carries out his functions, and exercise his powers subject to the direction and control of the Minister for Commerce and Industry; and (viii) the fact that in the circumstances underling the instant Motion, the Commissioner and his predecessor have been directed by the Republic of Liberia not to attorn to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, we find that the Commissioner for Insurance acts as a public or state official when carrying out his duties as receiver of a delinquent alien insurer. Under Liberian law, it is, not possible to separate the two offices. Such a result would be artificial and without a rational basis.

z.   THIS COURT FINDS that the Movant is the Commissioner of Insurance of the Republic of Liberia. He is also the Court-appointed (successor) Receiver over the assets and affairs of the locally licensed branch and operation of CIGNA WW, here in Liberia. He and his predecessor, Mr. Senesie, were appointed by the President upon advice and consent of the Senate and hold office at his pleasure (§2.1 Insurance Law). The Commissioner of Insurance carries out his functions, and exercise his powers subject to the direction and control of the Minister for Commerce and Industry (§2.3, §2.4 Insurance Law).

aa.   THIS COURT FINDS that the Movant and his predecessor both operated as Commissioner and Receiver from the offices of the Ministry of Transport, Parker Building, Broad Street, Monrovia, Liberia.

bb.   THIS COURT FINDS that the Commissioner of Insurance is required by law to use an official seal on all notices, documents and reports and other official documents issued by his office (§2.1 Insurance Law). This requirement of formality applies also when the Commissioner acts as a receiver. Evidence placed before this Court shows that Commissioners Senesie and Sesay have issued all correspondence in connection with their roles as Receiver of CIGNA WW's Liberian branch on the official stationery of the Commissioner of Insurance of Liberia. Furthermore, the Commissioner has in all correspondence emanating from his office in connection with the receivership of CIGNA WW's Liberian branch, affixed the seal of his Office, bearing the words, "Bureau of Insurance – Office of the Commission – Ministry of Transport."

cc.   THIS COURT FINDS that both the current and the former Commissioner has asserted in all of his Affidavits filed in the District Court that his actions have been in his capacity as an Official of the Republic of Liberia acting as Court-appointed Receiver. In a number of those Affidavits he avers that at no time did he act for his own individual benefit or in any individual capacity.

dd.   THIS COURT FINDS that one indicia of the control exercised over the Commissioner of Insurance by the Republic of Liberia is found in the Note Verbale from the Embassy of the Republic to the State Department dated March 2011, as confirmed by Diplomatic Note dated 8 August 2011, informing the State Department of the direction by the Republic to the current and former Commissioners of Insurance that they shall not to attorn to the jurisdiction of the District Court, with which the Commissioner and former Commissioner were obliged to and did comply.

ee.   THIS COURT FINDS that the Insurance Law of Liberia exclusively controls the liquidation process of a registered alien insurance company. The Supreme Court of Liberia has held that every insurance company conducting its business within the Republic must comply with all the requirements of the Insurance Law. *The Job Security Scheme Insurance Corporation v. Republic of Liberia,* 33 LLR 49 (1985).

ff.   THIS COURT FINDS that the Insurance Law is a regulatory statute, providing as it does in §1.3 for penalties for violation of any provision thereof.

gg.   THIS COURT FINDS that the Republic of Liberia has a vital interest in the liquidation of insolvent alien insurance companies which operate in the State. That interest is one of ensuring that its laws are complied with for the benefit of the public good and that violations of such laws are penalized and discouraged. Receivership proceedings are designed to protect firstly the public interest, and secondly creditors and policyholders, by providing a comprehensive and efficient means for collecting an insolvent or delinquent alien insurer's assets, and distributing those assets in an equitable manner to pay the claims of creditors under the supervision of this Court. The Liberian Commissioner of Insurance, as receiver of an insolvent or delinquent alien insurance company, collects and liquidates the assets and liabilities of the insolvent insurer in furtherance of the public good, and for the benefit of the insurer's creditors and policyholders.

hh.   THIS COURT FINDS that the Court-authorized actions taken by the Commissioner of Insurance as receiver of a delinquent alien insurer are acts reasonably related to the legitimate governmental objectives of the Liberian Insurance Law.

ii.   THIS COURT FINDS that the Commissioner of Insurance, when acting as a Court appointed receiver pursuant to §5.13 of the Insurance Law, is performing a traditionally governmental function, the primary purpose of which is to protect the public interest inherent in appropriate regulation of the insurance industry, and to ensure that alien insurers who wish to benefit from the facility of offering insurance products in the Liberian market, also comply with the relevant insurance regulations and carry out their responsibilities thereunder. The Insurance Commissioner does not operate as a separate entity from the State or from his ancillary office as receiver.

jj.   ACCORDINGLY, THIS COURT ORDERS AND FINDS that the acts of the Movant and Mr. Josie Senesie, his predecessor in the offices of Commissioner of Insurance and Court-Appointed Receiver over the insolvent estate of the debtor in (a) recognizing the AJA Judgment as a liability of the estate of the Liberian branch of CIGNA WW and (b) initiating and continuing the Cayman Action were, under Liberian law, wholly by the Movant and Mr. Senesie in their respective official capacities as Commissioners for Insurance, as it is only in such capacity and by virtue of holding such office that they are respectively entitled to be and were appointed to the position

6

of Receiver of the debtor pursuant to § 5.13 of the Insurance Law, Title 16 of the Liberian Code of Laws Revised (1972),

GIVEN UNDER MY HAND AND SEAL OF THIS COURT, THIS 23RD DAY OF JANUARY, A. D. 2012.

EMMANUEL M. KOLLIE
ASSIGNED CIRCUIT JUDGE PRESIDING, SXITH JUDICIAL CIRCUIT, MONTSERRADO COUNTY, REPUBLIC OF LIBERIA.

Seal of Court:

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Letter of February 13, 2012

from Mark Gottlieb, Esquire, counsel for Non-Party Respondent Samuel Lohman was filed

electronically, which constitutes service on all parties, and e-mailed on this date to:

Richard J. Bortnick, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103

Donald W. Hawthorne, Esquire
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022

Henry F. Reichner, Esquire
REED SMITH LLP
500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301

Dated: February 13, 2012

Respectfully submitted,

/s/ Mark E. Gottlieb
Mark E. Gottlieb, Esquire
OFFIT KURMAN, P.A.
1801 Market Street
Suite 2300
Philadelphia, PA  19103
267-338-1321
267-338-1335 (facsimile)

*Attorneys for Non-Party*
*Samuel M. Lohman, Esquire*