

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON

**Offit | Kurman**
Attorneys At Law

Mark E. Gottlieb, Esquire
(267) 338-1318 (direct dial)
(267) 338-1335 (facsimile)
mgottlieb@offitkurman.com

May 8, 2012

<u>*Via Electronic Filing*</u>

The Honorable Paul S. Diamond
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse, Room 6613
601 Market Street
Philadelphia, PA 19106

    Re: *The Abi Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co.*, No. 91-6785

Dear Judge Diamond:

  On behalf of Respondent Samuel M. Lohman, attached to this letter as Exhibit A is a Supplemental Declaration dated May 7, 2012, of Gilles Crettol, an expert in Swiss law consulted by Mr. Lohman regarding his legal obligations under Swiss law, which addresses certain misstatements of Swiss law set out in the letter to the Court from CWW's counsel dated April 24, 2012.

  Mr. Crettol is a senior partner at the Swiss firm of Monfrini Crettol & Associates with offices in Geneva. He is an expert in the fields of international commercial law and litigation. He is frequently consulted by Swiss and foreign lawyers on the application of the statutes and Bar regulations which are discussed in his Supplemental Declaration, and which he finds are binding upon Mr. Lohman in this action.

  We note that CWW's counsel have provided the Court with their opinions on Swiss law without any apparent knowledge, foundation, or training in Swiss jurisprudence. Furthermore, their opinions are neither supported by the relevant Swiss statutes or by expert opinion.

  We respectfully offer Mr. Crettol's Supplemental Declaration for the Court's consideration.

             Respectfully yours,

             */s/ MEG*

             Mark E. Gottlieb

Enclosure



Page **2** of **2**

cc: Donald W. Hawthorne, Esq. (via electronic mail)
Richard J. Bortnick, Esq. (via electronic mail)
Henry F. Reichner, Esq. (via electronic mail)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA WORLDWIDE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 91-6785 |

## SUPPLEMENTAL DECLARATION OF EXPERT WITNESS – GILLES CRETTOL
### PROOF OF FOREIGN LAW - SWITZERLAND

Pursuant to 28 U.S.C. § 1746, I, Gilles Crettol, of Monfrini Crettol & Associes, 3, place du Molard, CH - 1204 Genève, SWITZERLAND, declare the following:

### INTRODUCTION

The purpose of this Supplemental Declaration is to provide this Honorable Court with my opinion regarding certain aspects of the law of Switzerland and the Canton of Geneva, as they are applied to a series of assumed facts. My opinion concerns whether the disclosure to a third party, CIGNA Worldwide Insurance Company ("CWW") of confidential information obtained by Attorney Samuel M. Lohman in connection with his representation of certain clients, in a deposition held in the United States pursuant to an order of this Court, would give rise to a violation of law in Switzerland – and if so, what laws would be violated and what the consequences of those violations might be.

### THE DEPONENT

I refer the Court to my Declaration dated June 28, 2011, filed in this action as Document No. 262 (the "Declaration"), for details of my professional practice as an attorney admitted to the Bar of Geneva.

## STATEMENT OF ASSUMED FACTS

I assume that the following facts are true, for the purposes of the rendering of my opinion:

(a) All of the facts set forth as paragraphs (a) through (x) on pages 2 - 12 of the Declaration.

(b) That on March 21, 2012, this Honorable Court ordered Mr. Lohman to appear for a deposition to take place no later than April 19, 2012 in either Philadelphia, Pennsylvania, USA, or in Switzerland (the "March 21 Order").

(c) That on or about March 29, 2012, Mr. Lohman wrote a letter to his former clients The Abi Jaoudi and Azar Trading Corp ("AJA"), Mr. Josie Senesie, the Honorable Foday Sesay and CC International Ltd. ("CCI"), requesting that they release him from all obligations of confidence which he owes under (i) the Confidential Relationship Act (1985) of St. Christopher and Nevis, (ii) Swiss professional secrecy law and privilege and (iii) any other non-US form of confidentiality or privilege applicable to his relationship as a former lawyer of each of them, to enable him to disclose otherwise legally protected information and documentation to CWW.

(d) That as of the date hereof, Mr. Lohman has received written notice from each of AJA, Mr. Senesie and CCI refusing to release him from his obligations of confidence.

(e) That as of the date hereof, Mr. Lohman has not received any notice from Mr. Sesay, written or otherwise, rescinding or altering in any way Mr. Sesay's

2

refusal to release Mr. Lohman from his obligations of confidence as set forth in that certain letter from Mr. Sesay to Mr. Lohman dated 27 June 2011.

(f) That, from the date of the Declaration to the date hereof, Mr. Lohman has continued to raise issues pertaining to Swiss law in argument against scope or breadth of discovery ordered against him by this Court; and that to date this Court has not yet indicated its acceptance of the application of foreign law privileges or duties of confidence that may be imposed on Mr. Lohman as a consequence of his being a member of the Foreign Lawyers Section of the Geneva Bar.

## INDEPENDENCE OF EXPERT

I re-affirm to the Court that I have no interest in the litigation presently before the Court in any respect. I represent no party to the litigation that is before this Court (or in any of the related proceedings in Delaware, the Cayman Islands, Liberia or elsewhere). I confirm that I have no stake or interest in CCI, AJA or any of the other vehicles or entities that may be associated with this matter. I confirm that I do not act as lawyer or advocate for any party associated with this matter. I therefore can confirm that I am independent and am able and willing to provide this Court with an objective opinion about the application of relevant Geneva cantonal and Swiss federal principles of law and legal professional ethics.

In preparing this Declaration, I examined (i) Article 31, 271 and 321 of the Swiss Penal Code, (ii) Articles 2, 13 and 17 of the Federal Law on the Free Movement of Lawyers of 23 June 2000, (iii) Articles 34, 35 and 42B of the Articles of Association of the Geneva Bar Association, (iv) Article 6 of the Rules governing the Foreign Section of the Geneva Bar Association (v) Article 3 of the Usages and Customs of the Geneva Bar Association, and (vi) Articles 41, 97 and

398 of the Swiss Code of Obligations. Copies of such statutes and regulations, both in their official French version, together with an unofficial true translation into English, are attached hereto as Exhibit A.

In preparing this Declaration I also examined copies of all of the documents listed on Exhibit B.

This expert report is limited to matters of Swiss law, as I am not an expert in US law.

## APPLICATION OF ARTICLE 321 TO DISCLOSURE OF CONFIDENTIAL INFORMATION OUTSIDE OF SWITZERLAND

As stated in the Declaration, the main provision under Swiss law on the criminalization of the breach of professional secrecy is contained at article 321 of the Swiss Penal Code ("SPC").

Under article 321 SPC, *"any person who in his capacity as a (...), lawyer, judicial defender, (...), as well as their auxiliaries, discloses confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession shall be, upon complaint, liable to a prison sentence not exceeding three years or to a monetary penalty"*.

As stated in the Declaration, article 321 SPC provides three possible waivers to the obligation of secrecy:

1. the client's consent;

2. an authorization issued by a superior authority or supervisory authority; and

3. federal and cantonal provisions on the duty to testify and on the obligation to provide information to an authority.

As stated in the Declaration, in the event that the beneficiary of the right to secrecy abusively refuses to grant an authorization to disclose the secrecy, the lawyer may apply in

4

writing to his supervisory authority for authorization to disclose the information. However, the Federal Act on the Free Movement of Lawyers does not apply to foreign lawyers who are not registered with a cantonal bar and, consequently, there exists in Switzerland no authority who may authorize a foreign lawyer who is not registered with a cantonal bar to disclose professional secrets.

Further, the reference to *"federal and cantonal provisions"* in section 3 of article 321 expressly excludes foreign law provisions.

As stated in the Declaration, the prosecution of a breach of article 321 SPC requires a criminal complaint to be lodged by the victim of the breach within 3 months from learning of the breach. The consequence of a breach of article 321 SPC is a prison sentence not exceeding three years or a monetary penalty. In addition, the victim of the breach may claim damages in the context of the criminal proceedings.

## ANALYSIS AND OPINION –
## THE APPLICATION OF THE LAW TO THE ASSUMED FACTS

Based on the statement of assumed facts as evidenced by the documents submitted to me listed on Exhibit B, my analysis of the application of article 321 SPC on Mr. Lohman is unchanged from my opinions in the Declaration. As a lawyer admitted to the Bar of Oregon practicing in his law firm in Geneva, Mr. Lohman is a "lawyer" in the meaning of article 321 para. 1 SPC.

All the information demanded from Mr. Lohman by the Interrogatories and all the documents demanded from Mr. Lohman by the Requests for Production of Documents are *"confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession"* in the meaning of article 321 para. 1 SPC.

5

Mr. Lohman has not been released from professional secrecy by his clients in the meaning of article 321 para. 2 of the Swiss Penal Code.

As Mr. Lohman is a foreign lawyer who is not registered with the Geneva Bar, neither the Geneva Bar Commission, nor any other authority in Switzerland have jurisdiction to authorize him to disclose professional secrets in the meaning of article 321 para. 2 of the Swiss Penal Code. In any event, should Mr. Lohman have been a lawyer registered with the Geneva Bar, the conditions for authorizing him to disclose professional secrets would not have been met.

If Mr. Lohman were to appear for a deposition in any jurisdiction outside Switzerland, including (without limitation) in this Honorable Court, and if he were to disclose in such deposition professional secrets within the meaning of article 321 of the Swiss Penal Code, either voluntarily or under compulsion of this Court, he would breach article 321 of the Swiss Penal Code.

Should any of his clients whose secrets would be disclosed file a criminal complaint within three months from learning of the offence, Mr. Lohman would be prosecuted in Switzerland by the Attorney General of Geneva and would be convicted for breach of professional secrecy. As a consequence of a breach of article 321 of the Swiss Penal Code, Mr. Lohman would be sentenced to a prison term not exceeding three years or a monetary penalty.

**ANALYSIS OF CWW'S COUNSEL'S STATEMENTS ON THE APPLICABILITY OF SWISS LAW**

I have reviewed the letter dated April 24, 2012, from Donald W. Hawthorne of Debevoise & Plimpton, LLP ("CWW's Counsel") addressed to this Honorable Court (the "April 24 Letter"). In the second paragraph on page 1 of the April 24 Letter, CWW's Counsel states that Mr. Lohman's explanation that he is unable to comply with the Court's order of March 12,

2012 because he is bound by the restrictions of article 321 of the Swiss Penal Code is based on a "false" claim.

I strongly disagree with this statement of CWW's Counsel on an issue of Swiss law. As a Swiss attorney with substantial experience litigating and providing advice on issues of professional secrecy of lawyers under the SPC, the Federal Act on the Free Movement of Lawyers, Usages and Customs of the Geneva Bar Association and the Swiss Code of Obligations, I re-affirm to this Honorable Court that Mr. Lohman is bound by the Swiss laws applicable to professional secrecy as provided under Article 321 of the SPC. Mr. Lohman is also bound to preserve his clients' confidences under article 3 of the Usages and Customs of the Geneva Bar Association and of article 398 of the Swiss Code of Obligations, as discussed in the Declaration.

The April 24 Letter sets forth four (4) purported reasons for why article 321 of the SPC does not prohibit Mr. Lohman from appearing for deposition in Philadelphia. None of these "reasons" discuss the specific terms of article 321 or provide any analysis, from a Swiss legal perspective, of the effect of the article on a member of the Foreign Lawyers Section of the Geneva Bar Association, such as Mr. Lohman.

The first "reason" cited in the April 24 Letter is that this Court had already "heard and rejected" Mr. Lohman's position that he is bound by Swiss laws concerning professional secrecy when it issued its Order of May 10, 2011. However, that Order was issued more than six (6) weeks before the Declaration was filed with the Court on June 28, 2011, providing the Court with an expert opinion in Swiss law in support of Mr. Lohman's position, so the Court had not had the opportunity to review all of the evidence supporting Mr. Lohman's position when it issued that Order.

7

The second "reason" cited in the April 24 Letter, that article 321 "does not prevent anyone from sitting for a deposition" is plainly disingenuous and avoids discussion of the profound conflict which may confront Mr. Lohman if he appears for a deposition in Philadelphia, that is, he may be forced to choose between revealing his clients' confidential information in breach of Swiss law or disobeying a direct order from a Federal Judge.

The third reason cited in the April 24 Letter, that Mr. Lohman "has failed to show that he is bound by Section 321 in this instance" is clearly incorrect. The Declaration was filed in this Court on June 28, 2011 for the express purpose of providing this Court with a Proof of Foreign Law affidavit analyzing from a Swiss legal perspective the effects of all potentially applicable statutes and regulations governing professional secrecy and finding specifically that Mr. Lohman is bound by article 321 SPC in this instance. This Supplementary Declaration is being filed with the Court to clarify that issue for the Court's consideration.

The fourth reason cited in the April 24 Letter appears to be an opinion of CWW's Counsel based on U.S. law, and as such, I am not qualified to opine on its validity.

As a practitioner of Swiss and international law, with a practice that frequently involves the adjudication of issues relating to the protection of professional secrecy under Swiss law, I hereby inform the Court that CWW's Counsel is incorrect as to the matters of Swiss law on which he has opined in the April 24 Letter, without reference to any treatises or legal opinions discussing the effect of article 321 SPC on foreign lawyers who practice law in Switzerland, either inside or outside the nation's borders, and apparently without the guidance of Swiss counsel.

Mr. Lohman is in fact bound under article 321 SPC, article 3 of the Usages and Customs of the Geneva Bar Association and article 398 of the Swiss Code of Obligations to preserve the

8

secrecy of confidential information disclosed to him by his clients in the course of his professional duties as a foreign lawyer practicing law in Switzerland.

## CONCLUSION

Should Mr. Lohman disclose in a deposition, whether the deposition is held in Switzerland or the United States, any confidential information that has been confided to him or which has come to his knowledge in his professional capacity as a lawyer practicing law in Switzerland, including (without limitation) any of the information demanded from him by CWW's Interrogatories and Requests for Production of Documents dated October 25, 2010, he would be in breach of article 321 of the Swiss Penal Code, article 3 of the Usages and Customs of the Geneva Bar Association, as expression of custom and usage, and of article 398 of the Swiss Code of Obligations, and would be exposed to severe criminal, disciplinary and civil consequences.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of May, 2012.

_____
GILLES CRETTOL

9

EXHIBIT "A" TO DECLARATION OF GILLES CRETTOL

COPY OF RELEVANT LAWS

**Swiss Penal Code (unofficial English translation):**
**Art. 271 Unlawful activities on behalf of a foreign state**
1. Any person who carries out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official, any person who carries out such activities for a foreign party or organization, any person who encourages such activities, shall be liable to a custodial sentence not exceeding three years or to a monetary penalty, or in serious cases to a custodial sentence of not less than one year.

**Art. 321 Breach of professional confidentiality**
1. Any person who in his capacity as a member of the clergy, lawyer, judicial defender, notary, auditor subject to a duty of confidentiality under the Code of Obligations, medical doctor, dentist, pharmacist, midwife, as well as their auxiliaries, discloses confidential information that has been confided to him in his professional capacity or which has come to his knowledge in the practice of his profession shall be, upon complaint, liable to a prison sentence not exceeding three years or to a monetary penalty.
A student who discloses confidential information that has come to his knowledge in the course of his studies is also liable to the foregoing penalties.
A breach of professional confidentiality remains an offence following the termination of professional employment or of the studies.
2. No offence is committed if the person disclosing the information does so with the consent of the person to whom the information pertains or on the basis of written authorization issued in response to his application by a superior authority or supervisory authority.
3. The federal and cantonal provisions on the duty to testify and on the obligation to provide information to an authority are reserved.

**Code Pénal Suisse (French official version)**
**Art. 271 Actes exécutés sans droit pour un Etat étranger**
1. Celui qui, sans y être autorisé, aura procédé sur le territoire suisse pour un Etat étranger à des actes qui relèvent des pouvoirs publics, celui qui aura procédé à de tels actes pour un parti étranger ou une autre organisation de l'étranger, celui qui aura favorisé de tels actes, sera puni d'une peine privative de liberté de trois ans au plus ou d'une peine pécuniaire et, dans les cas graves, d'une peine privative de liberté d'un an au moins

**Art. 321 Violation du secret professionnel**
1. Les ecclésiastiques, avocats, défenseurs en justice, notaires, contrôleurs astreints au secret professionnel en vertu du code des obligations, médecins, dentistes, pharmaciens, sages-femmes, ainsi que leurs auxiliaires, qui auront révélé un secret à eux confié en vertu de leur profession ou dont ils avaient eu connaissance dans l'exercice de celle-ci, seront, sur plainte, punis d'une peine privative de liberté de trois ans au plus ou d'une peine pécuniaire.
Seront punis de la même peine les étudiants qui auront révélé un secret dont ils avaient eu connaissance à l'occasion de leurs études.

10

La révélation demeure punissable alors même que le détenteur du secret n'exerce plus sa profession ou qu'il a achevé ses études.
2. La révélation ne sera pas punissable si elle a été faite avec le consentement de l'intéressé ou si, sur la proposition du détenteur du secret, l'autorité supérieure ou l'autorité de surveillance l'a autorisée par écrit.
3. Demeurent réservées les dispositions de la législation fédérale et cantonale statuant une obligation de renseigner une autorité ou de témoigner en justice.

**Federal Law on the Free Movement of Lawyers of 23 June 2000 (free English translation)**

**Art. 2 Personal scope**
1. This law applies to lawyers who hold a cantonal bar examination certificate and practice, in the context of a monopoly, judicial representation in Switzerland.

**Art. 13 Professional Secrecy**
1 The lawyer is submitted to professional secrecy for all matters which are entrusted by his clients in the exercise of his profession; this obligation is not limited in time and is applicable toward third parties. The fact of having been released from professional secrecy does not compel the lawyer to divulge the facts which have been entrusted to him.
2 He ensures that his auxiliaries respect professional secrecy.

**Art. 17 Disciplinary Measures**
1 In case of breach of this law, the monitoring authority may order the following disciplinary measures:
a. the warning;
b. the blame;
c. a fine of up to 20'000 Swiss francs;
d. the temporary prohibition from practicing law for a maximal duration of two years;
e. the definitive prohibition from practicing law.
2 The fine may be added to a prohibition from practicing.

**Loi fédérale sur la libre circulation des avocats du 23 juin 2000 (official French version)**
**Art. 2 Champ d'application personnel**
1 La présente loi s'applique aux titulaires d'un brevet d'avocat qui pratiquent, dans le cadre d'un monopole, la représentation en justice en Suisse.

**Art. 13 Secret professionnel**
1 L'avocat est soumis au secret professionnel pour toutes les affaires qui lui sont confiées par ses clients dans l'exercice de sa profession; cette obligation n'est pas limitée dans le temps et est applicable à l'égard des tiers. Le fait d'être délié du secret professionnel n'oblige pas l'avocat à divulguer des faits qui lui ont été confiés.
2 Il veille à ce que ses auxiliaires respectent le secret professionnel.)

**Art. 17 Mesures disciplinaires**
1 En cas de violation de la présente loi, l'autorité de surveillance peut prononcer les mesures disciplinaires suivantes:
a. l'avertissement;

11

b. le blâme;
c. une amende de 20 000 francs au plus;
d. l'interdiction temporaire de pratiquer pour une durée maximale de deux ans;
e. l'interdiction définitive de pratiquer.
2 L'amende peut être cumulée avec une interdiction de pratiquer.

**Articles of Association of the Geneva Bar Association (free English translation)**

### Title VI Foreign lawyers Section
### Art. 34 Foreign lawyers Section

There exits, under the direct authority of the President of the Bar Association a Foreign Lawyers Section of the Geneva Bar Association. The Section has as a purpose to entertain and develop relations between its members, as well as between the Bar Association and the foreign lawyers practicing in Geneva, to defend common interests with them and study issues which are specific to them.

### Art. 35

The organization of the Section is set by a regulation adopted by its general meeting, which is its supreme power. It is managed by a Committee of which one member is the Chairman. The regulation of the Section may not be in contradiction with the Articles of Association of the Geneva Bar Association. It must be submitted to the agreement of the Council of the Bar Association.

### Title VII Disciplinary Powers
### Art. 42B Sanctions, competences of the Council

1 The Council decides on cases which are submitted by the President of the Bar Association based on article 39 para. 3 or which are transmitted by the disciplinary commission based on articles 40 para. 5 and 42A para. 4.
2 In cases where the disciplinary commission transmits a decision for final adoption (art. 42 A para. 4), the Council decides, in general, without further instructing the matter.
3 The Council of the Bar Association may issue the following sanctions:
- the admonition;
- the warning;
- the blame;
- the censorship;
- the exclusion.
4 The warning, the blame and the censorship may be combined with a fine of Frs. 100.- to Frs. 10'000.-.

**Statuts de l'Ordre des Avocats de Genève (official French version)**
### Titre VI Section des avocats étrangers
### Art. 34 Section des avocats étrangers

Il existe sous l'autorité directe du Bâtonnier une Section des avocats étrangers de l'Ordre des avocats de Genève. La Section a pour but d'entretenir et développer les relations entre ses membres ainsi qu'entre l'Ordre et les avocats étrangers pratiquant à Genève, de défendre les intérêts communs à ces derniers et d'étudier les problèmes qui leur sont spécifiques.

12

### Art. 35
L'organisation de la Section est fixée par un règlement adopté par son assemblée générale qui en est le pouvoir suprême. Elle est dirigée par un Comité dont l'un des membres est le Président. Le règlement de la Section ne peut être en contradiction avec les Statuts de l'Ordre. Il doit être soumis à l'agrément du Conseil de l'Ordre.

### Titre VII Pouvoir Disciplinaire
### Art. 42B Sanctions, compétences du Conseil
1 Le Conseil statue sur les cas qui lui sont soumis par le Bâtonnier en vertu de l'article 39 al. 3 ou qui lui sont transmis par la commission de discipline en vertu des articles 40 al. 5 et 42 A al. 4.
2 Dans les cas où la commission de discipline lui transmet une décision pour son adoption définitive (art. 42 A al. 4), le Conseil statue, dans la règle, sans nouvelles mesures d'instruction.
3 Le Conseil de l'Ordre peut prononcer les sanctions suivantes :
- l'admonestation;
- l'avertissement;
- le blâme;
- la censure;
- l'exclusion.
4 L'avertissement, le blâme et la censure peuvent être assortis d'une amende de Frs. 100.- à Frs. 10'000.-.

### Regulations of the Section of the Lawyers registered with a foreign bar of the Geneva Bar Association (free English translation)

### Art. 4 : submission to the Articles of Association, to the Usances and Customs and to the disciplinary procedures
By their adhesion to the Section, the layers members of the Section undertake to submit to the Articles of Association, to the Usances and Customs, and the deontology of the Association. They are, as such, submitted to the disciplinary monitoring of the President of the Association and the Council of the Association in the meaning of title VII of the Articles of Association.

The Council shall take into account according to circumstances, in its decision, of the rules and duties of the bar of origin of the concerned lawyer. It may apply for the advice of the Committee of the Section and decide, cumulatively or alternatively, to denounce the breach or to communicate its decision to the bar of origin of the concerned lawyer.

### Règlement d'organisation de la Section des avocats inscrits à un registre étranger de l'Ordre des Avocats de Genève (French official version)
### Art. 4 : soumission aux Statuts et aux us et coutumes et procédures disciplinaires
Par leur adhésion à la Section, les avocats membres de la Section prennent l'engagement de se soumettre aux Statuts, aux us et coutumes et à la déontologie de l'Ordre. Ils sont, à ce titre, soumis à la surveillance disciplinaire du Bâtonnier et du Conseil de l'Ordre au sens du titre VII des Statuts.

13

Le Conseil tiendra compte selon les circonstances, dans sa décision, des règles et devoirs du Barreau d'origine de l'avocat concerné. Il peut solliciter l'avis du Comité de la Section et décider, cumulativement ou alternativement, de dénoncer l'infraction ou de communiquer sa décision au Barreau d'origine de l'avocat concerné.

### Usances and Customs of the Geneva Bar Association (free English translation)
### Art. 3

The lawyer must scrupulously keep professional secrecy, which is attached to everything he learns in his professional practice or which is confided to him in his quality as a lawyer.
He must abstain from deposing as a witness on a fact that he learnt personally, even from the adversary or on the adversary in his professional practice.
He may only disclose a secret – without ever having the obligation to do so – with the express consent of his client, granted freely, or the authorization of the Bar Commission.
In the latter case, the lawyer shall first address his request to the President of the Bar Association who shall transmit the request with a notice to the Bar Commission.
The lawyer shall only apply for such authorization if superior public or private interests so request, notably when, if his honor is attacked, he could not defend himself other than by disclosing certain facts which he would have learnt in the practice of his profession.
Professional secrecy survives the end of the mandate, as well as the relinquishing of the lawyer.
It extends to all the staff of the law firm, to whom recommendations should regularly be made.


### Us et Coutumes de l'Ordre des Avocats de Genève (official French version)
### Art. 3

L'avocat doit scrupuleusement garder le secret professionnel qui s'attache à tout ce qu'il apprend dans l'exercice de sa profession ou qui lui est confié en qualité d'avocat.
Il doit s'abstenir de déposer comme témoin sur un fait qu'il a appris personnellement, même de l'adversaire ou sur l'adversaire, dans l'exercice de sa profession.
Il ne pourra révéler un secret - sans en avoir jamais l'obligation - qu'avec l'assentiment exprès de son client, qui l'aura donné librement, ou l'autorisation de la Commission du Barreau.
Dans ce dernier cas, l'avocat s'adressera en premier lieu au Bâtonnier, qui transmettra sa requête avec préavis à la Commission du Barreau.
L'avocat ne sollicitera cette autorisation que lorsque des intérêts publics ou privés supérieurs l'exigeront, notamment lorsque, son honneur étant attaqué, il ne pourrait se défendre autrement qu'en révélant certains faits qu'il aurait appris dans l'exercice de sa profession.
Le secret professionnel survit à l'achèvement du mandat, ainsi qu'au dessaisissement de l'avocat.
Il s'étend à tout le personnel de l'étude, auquel il est bon que des recommandations périodiques soient faites.

14

**Swiss Code of Obligations of 30 March 1911 (English unofficial translation)**
**Art. 41 Obligations in tort A. General principles I. Conditions of liability**
1 Any person who unlawfully causes loss or damage to another, whether willfully or negligently, is obliged to provide compensation.

**Art. 97 A. Failure to perform I. Obligor's duty to compensate 1. In general**
1 An obligor who fails to discharge an obligation at all or as required must make amends for the resulting loss or damage unless he can prove that he was not at fault.

**Art. 398 Faithful performance**
1 The agent generally has the same duty of care as the employee in an employment relationship.
2 The agent is liable to the principal for the diligent and faithful performance of the business entrusted to him.
3 He must conduct such business in person unless authorized or compelled by circumstance to delegate it to a third party or where such delegation is deemed admissible by custom.

**Code des obligations du 30 mars 1911 (French official version)**
**Art. 41 Des obligations résultant d'actes illicites A. Principes généraux I. Conditions de la responsabilité**
1 Celui qui cause, d'une manière illicite, un dommage à autrui, soit intentionnellement, soit par négligence ou imprudence, est tenu de le réparer.

**Art. 97 A. Inexécution I. Responsabilité du débiteur 1. En général**
1 Lorsque le créancier ne peut obtenir l'exécution de l'obligation ou ne peut l'obtenir qu'imparfaitement, le débiteur est tenu de réparer le dommage en résultant, à moins qu'il ne prouve qu'aucune faute ne lui est imputable

**Art. 398 Responsabilité pour une bonne et fidèle exécution**
1 La responsabilité du mandataire est soumise, d'une manière générale, aux mêmes règles que celle du travailleur dans les rapports de travail.1
2 Le mandataire est responsable envers le mandant de la bonne et fidèle exécution du mandat.
3 Il est tenu de l'exécuter personnellement, à moins qu'il ne soit autorisé à le transférer à un tiers, qu'il n'y soit contraint par les circonstances ou que l'usage ne permette une substitution de pouvoirs.

EXHIBIT "B" TO SUPPLEMENTAL DECLARATION OF GILLES CRETTOL

DOCUMENTS REVIEWED IN PREPARATION OF THIS OPINION

1. Order of U.S. District Court, Eastern District of Pennsylvania, Diamond J., dated 21 March, 2012.

2. Letter from Law Firm Lohman to the Honorable Foday L. Sesay, dated 29 March 2012.

3. Letter from Law Firm Lohman to Mr. Josie Senesie, dated 29 March 2012.

4. Letter from Law Firm Lohman to the Abi Jaoudi & Azar Trading Corp., dated 29 March 2012.

5. Letter from Law Firm Lohman to CC International Ltd., dated 29 March 2012.

6. Letter from the Abi Jaoudi & Azar Trading Corp. to Mr. Lohman, dated 17 April 2012.

7. Letter from Mr. Josie Senesie to Mr. Lohman dated 23 April 2012.

8. Letter from the Honorable Foday Sesay to Mr. Lohman dated 27 June 2011.

9. Letter from CC International Ltd. to Mr. Lohman, dated 3 May 2012.

10. Letter from Debevoise & Plimpton, LLP to the Honorable Paul S. Diamond, United States District Court for the Eastern District of Pennsylvania, dated 24 April 2012.