
**Dechert**
LLP

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**JOSEPH A. TATE**

joseph.tate@dechert.com
+1 215 994 2350 Direct
+1 215 655 2350 Fax

May 8, 2013

**VIA HAND-DELIVERY**

The Hon. Paul S. Diamond
United States District Court, Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 6613
Philadelphia, PA 19106-1714

    Re:   *The Abi Jaoudi and Azar Trading Corp. v. Cigna Worldwide Insurance Co.*, No. 91-6785

Dear Judge Diamond:

We write on behalf of Non-Party Respondents Echemus Group, L.P., Echemus Investment Management Ltd., EF (USA) LLC (collectively, "Echemus"), and James Little to respectfully request that they and Defendant Cigna Worldwide Insurance Co. ("Cigna") (together, "the parties") be assigned to mediation in the above-referenced matter. As substantial discovery has now sharpened the disputes between the parties, we feel that it is appropriate for the Court to facilitate efforts to resolve those disputes now, without additional costly and burdensome litigation. On April 26, 2013, Echemus and Little sought Cigna's position on this request but have not received a response.

When Cigna first asked this Court to hold Echemus and Little in contempt, it alleged that Echemus had invested up to $3 million in CC International Ltd. ("CCI"), which Cigna contended was created to enforce the October 4, 2000 Liberian judgment issued against Cigna ("AJA judgment"), in violation of the Anti-Suit Injunction that this Court issued on April 10, 2001. *See* Dkt. No. 307-1 at 2, 16. Cigna claimed no ongoing violation by Echemus, Little, or anyone else; its claims related exclusively to past conduct. Cigna's claims about Echemus were based largely on the deposition testimony of former third-party marketing agent Kirk Huddles, even though Huddles testified that his agency relationship with Echemus terminated before Echemus raised any capital or made any investment decisions. *See* Dkt. No. 322 at 7. In fact, Echemus invested only about $200,000 in CCI, all between March and December 2011, and only to pursue a different judgment that is not subject to the Anti-Suit Injunction. *See* Dkt. No. 322 at 10-11.

Since then, Cigna has embarked on nine months of jurisdictional discovery. In light of that discovery, Cigna has now abandoned its initial claims in favor of a new theory based on different and much narrower allegations. Cigna now contends that Echemus and Little should be held in contempt because, according to Cigna, Echemus provided $102,123 to the law firm of Martin



The Hon. Paul S. Diamond
May 8, 2013
Page 2

Kenney to support the legal defense of the Commissioner of Insurance of Liberia ("Commissioner") and his lawyers, whom Cigna had sought to hold in contempt for pursuing litigation allegedly to enforce the AJA judgment in the Cayman Islands. *See* Dkt. No. 372-1 at 17-19. As part of this new theory, Cigna alleges that Echemus contributed to the Commissioner's defense in late 2010, prior to investing in CCI, an allegation that Echemus contests. *See id.* In short, instead of its original allegation that Echemus invested in CCI to fund its efforts to enforce the AJA judgment, Cigna's new claim hinges on the theory that Echemus's alleged contribution to the legal defense of the Commissioner constitutes enforcement of the AJA judgment.

The parties' dispute thus now centers on a controversy over an alleged $100,000 payment, which is a tiny fraction of the original amount Cigna alleged, and which is also a tiny fraction of the amount that others allegedly have contributed to the effort to enforce the AJA judgment. Yet the parties have spent far more than that amount to reach this stage. Echemus's costs alone exceed $1 million; Cigna has likely spent as much or more. And the litigation is far from over. The Court denied Cigna's motion for contempt without prejudice, *see* Dkt. No. 360, and the parties are now engaged in jurisdictional discovery, to be followed (if Cigna is permitted to proceed) by merits discovery, a new motion for contempt, motion practice, and eventually a hearing. Continuing down this mutually destructive road over such a modest amount will place unreasonable burdens on both the parties and this Court. Echemus thus respectfully requests the Court to appoint a mediator to help the parties arrive at a rational resolution of their dispute.

Mediation is likely to be fruitful because the parties disagree about a limited number of discrete factual and legal issues.

*First*, the parties disagree about whether this Court has personal jurisdiction over Echemus and Little. Cigna contends that the Court has personal jurisdiction solely because, according to Cigna, Echemus and Little aided and abetted a violation of the Anti-Suit Injunction. *See, e.g.*, Dkt. No. 325-1 at 36. Echemus and Little deny aiding and abetting any violation and, in any event, argue that this theory of jurisdiction is contrary to the Supreme Court's precedents regarding personal jurisdiction and Due Process. *See, e.g.*, Dkt. No. 322 at 12-15. The Third Circuit has not yet addressed this issue, which has created a split in the federal circuits.

*Second*, the parties disagree about the scope of the Anti-Suit Injunction. Echemus and Little argue that the Anti-Suit Injunction prohibits (a) The Abi Jaoudi and Azar Trading Corp. and Younis Brothers & Co. from engaging in litigation that collaterally attacks the lawsuit that resulted in a judgment for Cigna in this Court on September 15, 1995, and (b) The Abi Jaoudi and Azar Trading Corp. from engaging in litigation efforts to enforce the judgment entered against Cigna in Liberia on October 4, 2000. *See, e.g.*, Dkt. No. 351 at 14 n.12. Cigna argues that the Anti-Suit Injunction sweeps far more broadly. *See, e.g.*, Dkt. No. 348-1 at 19.



*Third*, the parties disagree about whether Echemus violated the Anti-Suit Injunction, even assuming Cigna could prove that Echemus provided funds to assist the Commissioner's defense of Cigna's contempt action against him in this Court. Echemus and Little maintain the Commissioner had a due process right to defend himself in the contempt action, and that supporting that defense could not itself violate the Anti-Suit Injunction. *See, e.g.*, Dkt. No. 378 at 3-4. Cigna asserts that, even if the Commissioner had a right to defend himself, Echemus and Little still could have violated the Anti-Suit Injunction if they helped finance that defense. *See, e.g.*, Dkt. No. 372-1 at 18-19.

*Finally*, the parties apparently disagree over the damages that Echemus and Little may be held liable to pay. Echemus and Little contend that if they are liable, which they deny, their potential damages exposure is limited, because Echemus was not formed (and did not even arguably provide any funding) until mid-2010, two years after the Commissioner brought his action in the Cayman Islands. Indeed, the Cayman action was already stayed at the time Echemus was founded, and no litigation steps were taken in the Cayman Islands with respect to the AJA judgment at any time after mid-2010. These factors will limit any monetary judgment that could be entered against Echemus and Little. Mediation can thus help the parties achieve a realistic assessment of the likelihood and amount of recovery, and thus facilitate resolving this matter without further burdening the Court.

For that reason, we respectfully ask the Court to order the parties to mediate this dispute.

Respectfully submitted,

*[signature]*

Joseph A. Tate

*Counsel for Non-Party Respondents Echemus Group, L.P., Echemus Investment Management Ltd., EF (USA) LLC, and James Little*

cc:    Counsel of Record (by electronic mail)