**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORP., | : CIVIL ACTION |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 91-6785-PSD |
| CIGNA WORLDWIDE INS. CO., et al., | : |
| | : |
| Defendants. | : |
| | : |

## DECLARATION OF MARTIN S. KENNEY IN SUPPORT OF HIS OPPOSITION TO CIGNA'S MOTION FOR A PROTECTIVE ORDER

Martin S. Kenney declares, based upon his personal knowledge, as follows:

1.      I am a former director of Echemus Investment Management Limited ("EIML"), a British Virgin Islands company, and was a director in 2009 and 2010 when Kirk Huddles ("Huddles") acted as a consultant to EIML under an agreement between EIML and Huddles' employer, Lynx Capital, LLC, as discussed below. EIML is the general partner of Echemus Group LP, a British Virgin Islands limited partnership ("Echemus Group"). EIML, Echemus Group, and the other Echemus-affiliated entities conducted their business in confidence

2.      I first met Huddles in June 2009. At the time, he was employed by Lynx Capital, LLC ("Lynx"), a registered broker under the Securities Exchange Act and a member of the National Association of Securities Dealers. I was aware at the time that

registered brokers like Lynx had confidentiality rules prohibiting their employees from revealing non-publicly available information to outsiders about clients or financial matters they were involved in.

3.      I understand that Huddles asserts he was provided with the Report to the Board of Directors of CC International, Limited ("CCI") dated October 29, 2009. That Report was prepared by Law Firm Lohman and my law firm, Martin Kenney & Co., Solicitors, in our joint capacity as co-counsel for the Liberian Commissioner of Insurance. The Report contains privileged information, including what I am told would be considered attorney work product in the United States. The document is privileged under both the litigation and common interest privileges applicable in English common-law jurisdictions such as the British Virgin Islands (where I reside and have my law office), Nevis (the jurisdiction where CCI is incorporated), and the Cayman Islands (the British Overseas Territory where the Commissioner's claim against ACE was brought) because (a) the dominant purpose of its creation was litigation, and (b) it was a

_____

¹

2

confidential communication between parties with a common interest in such litigation. CCI was the company that provided funding for the Commissioner's claim, although by the time of the issuance of the Report on October 29, 2009, the Cayman Islands case had been stayed and the portion of that case relating to the Liberian judgment in favor of Abi Jaoudi was not thereafter pursued again. The Report is also protected from disclosure under the St. Christopher and Nevis Confidential Relationships Act.

4.      I do not believe that I provided Huddles with the Report and I have been unable to determine how or when he actually obtained it.

I do not recall ever having given permission to anyone to provide it to Huddles.

5.      In his role as a consultant to EIML, Huddles was provided with information about claims that were being reviewed for possible inclusion. On several occasions in 2009 and 2010, I told Huddles that any information he received was, and should be kept, confidential, and that he was not to provide information identifying the claims or the details about the claims to potential investors. Any information about specific claims provided to potential investors was to be anonymized, as discussed further below. I explained to Huddles on several occasions in 2009 and 2010 why confidentiality was important to both Echemus and to its then-prospective funded clients. Most of Echemus' activities, as they were intended to be during the 2009–10 start-up phase of its existence, and since, relate to funding investigations designed to locate concealed assets of persons responsible for defrauding large-scale commercial enterprises that were bankrupted by reason of fraud. I explained to Huddles that the value of Echemus'

3

prospective investments, and the rights of its future clients to recover assets, could be destroyed if any leaks of confidential claim related information were to occur. Huddles acknowledged to me that he understood this risk, which was specific to Echemus' proposed area of funding.

6.      I also instructed Huddles that he was not to provide materials concerning Echemus and the placement of limited partnership interests without the prospective investor agreeing to preserve the confidentiality of all such materials.

7.

8.

4

Moreover, the directors of EIML, including me, were aware at the time that the Abi

Jaoudi portion of the ACE claim would not be pursued again unless allowed by a

favorable ruling in these contempt proceedings.

9.

10.     At meetings with potential investors that I attended with Huddles, I

emphasized the confidentiality of any information being provided and that it was not to

be revealed to outsiders.

11.

5

12.

13.

14.

15.     In sum, EIML and the related Echemus entities conducted their business in confidence.  I told Huddles that any information he was receiving was confidential.  I expected him to keep it confidential, because (among other reasons) I understood that was the practice and requirement of his employer Lynx, a registered broker.

16.     In submitting this declaration, I do not submit or attorn to this Court's jurisdiction, an issue the Court has not yet ruled on and which I have requested the Court to determine before addressing any issues of privilege.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of May, 2013 at Road Town, Tortola, British Virgin Islands.

_____
Martin S. Kenney

7

The Abi Jaoudi and Azar Trading Corporation
v.
Cigna Worldwide Insurance Company, et al.
U.S.D.C., E.D. of PA, No. 91-6785

# EXHIBITS
# FILED UNDER SEAL

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE ABI JAOUDI AND AZAR TRADING CORP., | : CIVIL ACTION |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 91-6785-PSD |
| | : |
| CIGNA WORLDWIDE INS. CO., et al., | : |
| | : |
| Defendants. | : |
| | : |

## DECLARATION OF MATTHEW C. WOLFE

I, Matthew C. Wolfe, verify under oath and state as follows:

1.      I am an attorney licensed to practice in the state of Illinois and an associate
at Grippo & Elden LLC. I have been admitted *pro hac vice* in this matter. I am one of
the attorneys representing non-party respondent Martin Kenney in this matter. I submit
this Declaration in support of Kenney's Opposition to CIGNA Worldwide Insurance Co.'s
Motion for a Protective Order.

2.      Attached hereto as Exhibit A is a true and correct copy of an email sent by
Donald A. Vogelsang, a principal at Grippo & Elden LLC and another of the attorneys
representing non-party respondent Martin Kenney in this matter, to Donald A.
Hawthorne, an attorney representing CIGNA in this matter, on April 25, 2013 at 3:22
p.m.

I declare under penalty of perjury that the foregoing is true and correct. Executed
this 10th day of May, 2013.

_____
Matthew C. Wolfe

# EXHIBIT A
# To
# Declaration of Matthew C. Wolfe

## Wolfe, Matthew C.

| From: | Vogelsang, Donald A. |
|---|---|
| Sent: | Thursday, April 25, 2013 3:21 PM |
| To: | 'Donald Hawthorne (dwh@avhlaw.com)' |
| Cc: | Wolfe, Matthew C. |
| Subject: | CIGNA |
| | |
| Client: | 004483 |
| Filed: | -1 |
| Matter: | 000030 |
| NRTID: | !nrtdms:0:!session:GEIMANAGE01:!database:Grippo_1:!document:1513114,1: |

Will you please provide to us copies of any documents that Kirk Huddles has provided to CIGNA or its counsel pursuant to subpoena other than those which were exhibits to his deposition or attached to his affidavit.

**Donald A. Vogelsang**
Direct Dial: 312.704.7790
dvogelsang@grippoelden.com

Grippo & Elden LLC • 111 S. Wacker Drive • Chicago, IL 60606 • Phone 312.704.7700 • Fax 312.558.1195 • www.grippoelden.com

1